Thomas C. Horne
Attorney General

Michael K. Goodwin, Bar No. 014446
James E. Barton II, Bar No. 023888
Assistant Attorneys General
1275 W. Washington
Phoenix, Arizona 85007-2997
Telephone: (602) 542-7674
Facsimile: (602) 542-7644
Michael.Goodwin@azag.gov
James.Barton@azag.gov

Attorneys for State Defendants

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| UNITED FOOD & COMMERCIAL WORKERS LOCAL 99, et al., | Case No: 2:11-cv-921-PHX-GMS |
| Plaintiffs, | **STATE'S MOTION TO DISMISS** |
| v. | (Oral Argument Requested) |
| JAN BREWER, in her official capacity as Governor of the State of Arizona, et al., | |
| Defendants. | |

Pursuant to Fed. R. Civ. P. 12(b)(1) & (6), Defendants Jan Brewer, Tom Horne, Ken Bennett, and Randall Maruca hereby move to dismiss Plaintiffs' First Amended Complaint.

## I. FACTUAL BACKGROUND

### A. SB 1363

In April 2011, the Arizona Legislature passed SB 1363 and Governor Jan Brewer signed it into law. (FAC ¶ 13.) One provision of SB 1363 amends A.R.S. § 23-1322 by making it unlawful for organizations to encourage or engage in picketing "if the purpose of the picketing is to coerce or induce an employer or self-employed person to join or contribute to a labor organization." (FAC ¶ 79 & 2011 Ariz. Laws, Ch. 153 attached as

Ex. 1.)  Another provision amends A.R.S. § 23-1327 to make it unlawful for a person to "assemble other than in a reasonable and peaceful manner."  (FAC ¶ 84.)

The bill defines "concerted interference with lawful exercise of business activity," "trespassory assembly," "unlawful mass assembly," "unlawful picketing," and "defamation" in the context of this law, (Ex.1 at 9-13) and incorporates the unlawful picketing, secondary boycotts and defamation, into the definition of harassment, (*id.* at 5, 8).  It also requires the Secretary of State to maintain and publicize a list of "employers who have established private property rights to their establishment and any related real property in this state."  (*Id.* at 11.)  This list will provide notice of the employers' property rights to law enforcement officials and members of the public.  (*Id.* at 12.)

**B.     SB 1365**

In April 2011, the Arizona Legislature also passed and the Governor signed SB 1365.  (FAC ¶ 13.)  The measure adds A.R.S. § 23-361.02.  Section A provides that, "A public or private employer in this state shall not deduct any payment from an employee's paycheck for political purposes unless the employee annually provides written or electronic authorization to the employer for the deduction."  Section B provides that if a deduction is made from an employee's paycheck for multiple purposes, the entity to which the deductions are paid must provide a "statement indicating that the payment is not used for political purposes or a statement that indicates the maximum percentage that is used for political purposes."  Pending preclearance by the U.S. Department of Justice, these provisions go into effect on October 1, 2011.  (FAC ¶ 3.)

Section C of the new statute directs the Attorney General to adopt rules for "the acceptable forms of employee authorization and entity statements."  Section D provides for a $10,000 civil penalty for each violation when an employer improperly deducts payments form an employee's paycheck for political purposes, or when an entity submits an inaccurate statement; and it makes the Attorney General responsible for imposing and collecting the civil penalties.

### C.     This Action

Plaintiff United Food & Commercial Workers Local 99 ("UFCW") is a labor organization with over 40,000 members in Arizona. (FAC ¶ 8.) Plaintiff James McLaughlin is the president of the union and Plaintiff Roberta Colbath is one of its members. (*Id.*) Plaintiff United Association of Plumbers and Steamfitters Local 469 ("Local 469") is also a labor organization with approximately 2,500 members in Arizona. (*Id.*, ¶ 9.) Plaintiff Phillip McNally is the business manager for Local 469 and Plaintiff David J. Rothans is ones of its members. (*Id.*) The Plaintiffs have filed this civil rights action alleging that SB 1363 and 1365 are unconstitutional both on their face and as applied.

Specifically, Plaintiffs allege that SB 1365: (1) violates the contract clause of the federal and state constitutions; (2) is preempted by the National Labor Relations Act (NLRA), Labor Management Relations Act (LMRA), and Federal Election Campaign Act (FECA); (3) is unconstitutionally vague; (4) violates the rights of free speech and petition in the federal and state constitutions; and (5) violates due process, equal protection, the commerce clause, and excessive fines clause of the United States Constitution. They allege that SB 1363: (1) is preempted by the NLRA and LMRA; (2) violates the right to freedom of speech and assembly in the federal and state constitutions; and (3) violates the separation of powers as provided in the Arizona Constitution. Plaintiffs seek to permanently enjoin both enactments as well as declaratory relief. Additionally, they have moved for a preliminary injunction to block implementation of SB 1365. (Doc. 15.)

The Plaintiffs filed this action against Governor Jan Brewer, Attorney General Tom Horne, Secretary of State Ken Bennett, Industrial Commission Department of Labor Director Randall Maruca, and Maricopa County Sheriff Joe Arpaio. (FAC ¶¶ 11-12.) All are sued in their official capacities.

## II. LEGAL DISCUSSION
### A. Legal Standards

The question whether subject matter jurisdiction exists is one of law. *Kingman Reef Atoll Investments, LLC v. United States*, 541 F.3d 1189 (9th Cir. 2008). In a Rule 12(b)(1) motion, "the district court is not confined by the facts contained in the four corners of the complaint—it may consider facts and need not assume the truthfulness of the complaint." *Americopters, LLC v. FAA*, 441 F.3d 726, 732 n. 4 (9th Cir. 2006). On a motion to dismiss, the court is not required to assume the truth of legal conclusions. *Warren v. Fox Family Worldwide, Inc.*, 328 F.3d 1136, 1139 (9th Cir. 2003).

The Plaintiffs have the burden of establishing that this Court has jurisdiction. *Kokkonen v. Guardian of Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). At the pleading stage, they may satisfy this burden by alleging facts that, if proven, establish the court's jurisdiction. *Sacks v. Office of Foreign Assets Control*, 466 F.3d 764, 771 (9th Cir. 2006).

### B. Plaintiffs' First Amended Complaint Fails to Present a Claim that is Ripe for Adjudication.

To satisfy the Article III "case or controversy" requirement, the Plaintiffs must establish, among other things, that their claims are ripe for adjudication. *See Thomas v. Anchorage Equal Rights Comm'n*, 220 F.3d 1134, 1138 (9th Cir. 2000). Under Article III, a constitutional case or controversy sufficient to support federal court jurisdiction requires a dispute presenting issues that are "definite and concrete, not hypothetical or abstract." *Scott v. Pasadena Unified School District*, 306 F.3d 646, 663 (9th Cir. 2002). The ripeness doctrine "is peculiarly a question of timing." *Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1122 (9th Cir. 2009). The "'basic rationale' . . . is 'to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements.'" *Scott*, 306 F.3d at 662 (quoting *Abbott Lab. v. Gardner,* 387 U.S. 136, 148 (1967)). Plaintiffs present no claim that is ripe for judicial review because they do not allege an actual injury or a realistic danger of imminent injury.

"Neither the mere existence of a proscriptive statute nor a generalized threat of prosecution satisfies the "case or controversy" requirement. *Thomas*, 220 F.3d at 1139 (citation omitted). The constitutional component of ripeness requires that a plaintiff demonstrate "a realistic danger of sustaining a direct injury as a result of the statute's operation or enforcement." *Lopez v. Candaele*, 630 F.3d 775, 785 (9th Cir. 2010) (quoting *Babbitt v. United Farm Workers Nat'l Union,* 442 U.S. 289, 298 (1979)). The analysis of ripeness often "coincides squarely with standing's injury in fact prong," leading courts to characterize it as "standing on a timeline." *Stormans*, 586 F.3d at 1122. Accordingly, Plaintiffs must demonstrate injury in fact "to a legally protected interest that is both 'concrete and particularized' and 'actual or imminent,' as opposed to 'conjectural or hypothetical.'" *San Diego County Gun Rights Comm. v. Reno*, 98 F.3d 1121, 1126 (9th Cir. 1996). For purposes of a pre-enforcement challenge, the constitutional ripeness inquiry focuses on: (1) whether the plaintiffs have articulated a concrete plan to violate the law in question, (2) whether the prosecuting authorities have communicated a specific warning or threat to initiate proceedings, and (3) the history of past prosecution or enforcement under the challenged statute. *Thomas*, 220 F.3d at 1139. Plaintiffs fail to allege an injury that satisfies these requirements.

    **1.**    **Plaintiffs' claims that SB 1365 will burden the collection of dues to such an extent as to impair their contracts with employers, to conflict with the NLRA and LMRA and to burden speech are not ripe for adjudication.**

When a statute is challenged based on an alleged burden, the plaintiff must demonstrate that burden, which is impossible prior to the implementation of a statute. The United States Supreme addressed claims premised on an as yet undemonstrated burden in *Alabama State Federation of Labor, Local Union No. 103, United Broth. of Carpenters and Joiners of America v. McAdory*, writing

> Since petitioners' reliance is upon the burdensome operation of the statute on them, we are not bound to speculate upon the nature or extent of the burden. We can hardly make pronouncement on their contentions in a declaratory judgment proceeding where the record does not disclose the extent of

> the burden, if any. Whether the information demanded is so extensive, detailed, and therefore burdensome, as to pass the bounds of what the state may reasonably require can be determined only in the light of the circumstances in which the statute is to be applied.

325 U.S. 450, 469-70 (1945).

Plaintiffs allege that SB 1365 "will cost the unions significant sums of money to seek and obtain an annual signature from each member, and will cost the member additional time, money and effort to pay due[s] in another fashion[]." (FAC ¶ 35.) Based on this speculation, Plaintiffs claim that "[t]he result of SB 1365 is to reduce the amount of political spending substantially below that expected by Plaintiff Unions as a result of their existing contracts." (*Id.* ¶ 37.) Similarly, in their second claim, Plaintiffs allege that completing paperwork to authorize paycheck withdrawals "impermissibly burdens unions and employers for protected activities of entering into dues deduction agreements . . . ." (*Id.* ¶ 42.) Once assuming that the yearly paperwork burdens the collection of dues, Plaintiffs claim that the bill is preempted by the NLRA and LMRA. (*Id.*) Plaintiffs' fourth claim for relief relies on the same hypothetical burden on the collection of union dues, which would then theoretically result in less money for speech. (*Id.* ¶¶ 51-59.) Plaintiffs' fifth claim also assumes that the new paperwork will be a burden on dues collections, which they assume will result in collecting less in dues, which they assume will amount to a burden on their speech. (*Id.* ¶¶ 70-71.) Because Plaintiffs are unable to demonstrate at this time that the payroll paperwork at issue in this case is a burden to them, the first, second, fourth and fifth claims should be dismissed for lack of ripeness.

    **2.  Plaintiffs' speculation that SB 1365 will result in various Constitutional harms does not present a ripe controversy.**

Where claims of constitutional violation are attenuated as in this case, requiring the court to assume the presence of a burden that does not appear on the face of the statute, the development of facts that are impossible with premature adjudications is

6

1 essential.  For example, in *Socialist Labor Party v. Gilligan*, the political party
2 challenged an Ohio statute that required its candidates to sign a loyalty oath in order to
3 be on the ballot.  406 U.S. 583, 586 (1972).  The party claimed the requirement trampled
4 on many constitutional rights arguing:

> that the affidavit requirement violates the First and Fourteenth Amendments, but their pleadings fail to allege that the requirement has in any way affected their speech or conduct, or that executing the oath would impair the exercise of any right that they have as a political party or as members of a political party. They contend that to require it of them but not of the two major political parties denies them equal protection, but they do not allege any particulars that make the requirement other than a hypothetical burden.

*Id.* at 587.  Noting that, "[n]othing in the record shows that appellants have suffered any injury thus far, and the law's future effect remains wholly speculative," the Court rejected the challenged.  *Id.* at 589.  The Court explained that "[p]roblems of prematurity and abstractness may well present 'insuperable obstacles' to the exercise of the Court's jurisdiction, even though that jurisdiction is technically present" *Id.* at 588 (quoting *Rescue Army v. Municipal Court*, 331 U.S. 549, 584 (1947).

In *McAdory*, the Supreme Court wrote, "use of the declaratory judgment procedure to test the validity of a state statute for vagueness and uncertainty invites rather than avoids the unnecessary decision of the constitutional question."  325 U.S. at 470.  In their third claim, Plaintiffs assert that SB 1365 is impermissibly vague, suggesting that the term "political activity"

> might be read to include lobbying, reporting to members on new legislation of direct concern to them, complaining about the impact of some legislation such as some provisions of the Heath Care Reform, engaging in get-out-the-vote efforts, or polling on issues before legislative bodies of direct concern to members, or speaking with administrative official about working condition on public property where many members of Plaintiff Locals work such as the Phoenix Airport.

7

(FAC ¶ 47.) Plaintiffs' parade of horribles, however, betrays the speculative nature of their complaint. A law's constitutionality is not determined by assuming that the law will be enforced in an unconstitutional manner. Similarly, concerns such as "whether a member may reauthorize spending three months before their anniversary of membership expires" are explicitly related to implementation of the statute and are not ripe for adjudication. (*Id.* ¶ 50.)

In the catch-all sixth claim for relief, Plaintiffs allege that requiring union members to reauthorize payroll deductions each year treads on the freedom to associate and protections under the Due Process, Equal Protection and the Commerce Clause, as well as amounting to an excessive fine if the unions violate the provisions of the bill. (*Id.* ¶ 73-75.) This claim does little more than list articles of the Constitution under which Plaintiffs' hope to obtain relief. Just as Plaintiffs are unable to clearly articulate how these various provisions of the Constitution may be violating by requiring employees to authorize paycheck withdrawals, such a claim does not establish a sufficient case and controversy to be ripe for adjudication. Thus, the third and sixth claim should be dismissed for lack of ripeness.

### 3. Plaintiffs' predictions that SB 1363 will be enforced in an unconstitutional manner do not present a ripe controversy.

The seventh claim for relief is that "SB 1363 expands the remedies for an existing provision of Arizona Law, A.R.S. § 23-1322(1)." (FAC ¶ 79.) In fact, Section 5 of SB 1363 amends A.R.S. § 12-1322 by adding a subsection (B) that covers a more narrow set of circumstances than subsection (A). As the complaint alleges, subsection (A) "effectively provides that under all circumstances, and regardless of purpose, a union having less than a majority is prohibited from all peaceful picketing." (*Id.* (quoting *Baldwin v. Arizona Flame Restaurant, Inc.,* 82 Ariz. 385, 313 P.2d 759 (1957).) Subsection (B), on the other hand, makes it unlawful to picket "if the purpose of the picketing is to coerce or induce an employer or self-employed person to join or contribute to a labor organization." 2011 Laws, ch. 153, § 5. Whether this limitation on

the purpose of the picketing is sufficient to allow enforcing the statute to pass constitutional muster cannot be assessed prior to the amendments taking effect.

Likewise, their eighth claim for relief is predicated on Plaintiffs' prediction that the phrase "assemble other than in a reasonable and peaceful manner" will be applied in an unconstitutional fashion. (FAC ¶ 84-85.) This claim is peppered with suggestions that the statute would "likely" have a certain effect or "could violate rights." (*See, e.g.*, FAC ¶¶ 86-88.) Such speculative language is appropriate in the absence of any factual record on which to base these allegations, but also indicates that the controversy is not a ripe one. The ninth claim also rests on the notion that courts would enforce the provisions of A.R.S. § 23-1323 in such a way as to run afoul of the Supreme Court's jurisprudence on secondary boycotts. However, the Supreme Court has previously declined to review similar claims, even when there is a factual record, but where the NLRB has not yet determined whether the underlying conduct is proscribed. *Edward J. DeBartolo Corp. v. N.L.R.B.*, 463 U.S. 147, 158 (1983). The argument to abstain from premature review is stronger in this case where there are no facts at all.

In their eleventh claim, Plaintiffs first allege that it is "contrary to reality and accordingly violates due process" for A.R.S. § 23-1326 to establish a presumption that members of the public will be on notice of employers that assert a no trespass right over their property when (1) the list of employers is published in a newspaper of general circulation for four consecutive weeks twice a year, (2) the Secretary of State makes the list available to the public, and (3) the Secretary of State's Office publishes the list on its website. (FAC ¶ 109.) In support of their claim, the Complaint cites *Tot v. United States*, 319 U.S. 463, 467-68 (1943). (FAC ¶ 109.) *Tot*, however, merely requires that there be a "rational connection between the fact proved and the ultimate fact presumed," explaining that "if the inference of the one from proof of the other is arbitrary because of lack of connection between the two in common experience," the presumption cannot be sustained. 319 U.S. at 467-68. In *Tot*, the Court found that most states having laws requiring firearms to be registered could not support the presumption that a firearm's

9

"purchase or procurement was in interstate rather than in intrastate commerce." *Id.* at 468. The presumption found in A.R.S. § 23-1326 is much more rationally related to the fact of publication. Furthermore, before a court can adjudicate whether the provision violates any Due Process concerns, a court must have specific facts before it. For instance, it seems unlikely that a union organizing a demonstration would not be able to check the Secretary of State's website to determine whether the employer was on the list. Similarly, it is difficult to imagine circumstances in which providing guidance to the police on how they can establish the owner's property rights can violate the rights of Plaintiffs. (*See* FAC ¶ 110.)

Plaintiffs invite this Court to pass on the constitutionality of a defamation provision in A.R.S. § 23-1325 without an actual controversy. Plaintiffs speculate that courts will apply this section in a manner that contradicts the Supreme Court precedent and federal law. (FAC ¶ 118.) Similarly, in their final claim for relief Plaintiffs predict that courts will apply the ban on a "concerted interference with lawful exercise of business activity," as defined in A.R.S. § 23-1321(1), in such a way as to prohibit lawful picketing or consumer boycotts. (FAC ¶¶ 122-23.) Neither claim presents a cause of action unless a court interprets the statute in a manner which puts it in conflict with the Constitution. The possibility of such an interpretation does not present a ripe controversy. *Communist Party of U.S. v. Subversive Activities Control Bd.*, 367 U.S. 1, 71 (1961) ("Merely potential impairment of constitutional rights under a statute does not of itself create a justiciable controversy in which the nature and extent of those rights may be litigated.")

    **4.**    **Plaintiffs' remaining prediction about SB 1363 does not present a ripe controversy because it rests on their assumption that the statute will create a substantial burden on collecting union dues.**

In their tenth claim for relief, Plaintiffs suggest that some of their members will violate contractual agreements that the members have with the union and request to have dues deducted from their paychecks stopped even though the members are contractually obligated to continue to pay dues through the end of the year. (FAC ¶¶ 101-104.) Of

course, for unions that do not have such continuing withdrawal obligations, there is no constitutional violation. What is more, as Plaintiffs acknowledge, the amended A.R.S. § 23-352 recognizes that if a court orders the employer to continue to withhold an employee's wages based on an agreement with the union, the employer is required to do so. (*Id.* ¶ 104.) These are just two possible circumstances in which the statute can be implemented with no chance of violating the Constitution. As such, this claim is not ripe for adjudication.

The Court's role "is neither to issue advisory opinions nor to declare rights in hypothetical cases, but to adjudicate live cases or controversies consistent with the powers granted the judiciary in Article III of the Constitution." *Stormans*, 586 F.3d at 1122. Because of its reliance on speculation about contingent events that may never occur, the Complaint fails to establish a real and immediate threat to Plaintiffs of injury arising from operation of the bills and, therefore, presents no case or controversy ripe for judicial review.

**C.     Prudential considerations also support dismissing Plaintiffs' claims.**

Because the case fails to satisfy the constitutional requirements for ripeness, the Court need not reach the prudential components. Nevertheless, the prudential components also support dismissing this action. Ripeness provides "a tool that courts may use to enhance the accuracy of their decisions and to avoid becoming embroiled in adjudications that may later turn out to be unnecessary or may require premature examination of, especially, constitutional issues that time may make easier or less controversial." *Am. Sav. Bank* v. *UBS Fin. Servs.*, 347 F.3d 436, 440 (2d Cir. 2003). In applying the prudential ripeness doctrine, courts consider two factors: (1) the fitness of the issues for judicial decision, and (2) the hardship of the parties of withholding court consideration. *Stormans*, 586 F.3d at 1126.

This case does not involve purely legal issues because all of the claims are based on imagined situations and speculation about how SB 1363 and 1365 will be applied. For example, the Plaintiffs allege that they engage in "speech critical of employers" and

1 that this might be affected by the provisions of SB 1363 relating to defamation of
2 employer.  (FAC ¶ 117.)  First of all, SB 1363 does not impose liability for mere
3 criticism; there must be a <u>false</u> statement.  More to the point, this Court cannot begin to
4 analyze the claim Plaintiffs are making without concrete information concerning the
5 content and context of a statement and the speaker's knowledge or belief regarding the
6 truth of the statement.  Similarly, Plaintiffs' vague allegation that they might someday
7 engage in secondary boycott activity (FAC ¶ 97) is far too abstract for this Court to
8 assess the implications of SB 1363 on such conduct.  This Court should wait for an
9 actual, concrete dispute regarding these new laws before intervening.

10 Also, insofar as Plaintiffs seek declaratory relief, the Declaratory Judgment Act
11 provides that a federal court "may declare the rights and other legal relations of any
12 interested party seeking such declaration."  28 U.S.C. § 2201(a).  The statute "confers a
13 discretion on the courts rather than an absolute right upon the litigant."  *Wilton v. Seven*
14 *Falls Co.*, 515 U.S. 277, 287 (1995); *Public Svc. Comm'n v. Wykoff*, 344 U.S. 237, 241
15 (1952).  Emphasizing the discretionary nature of the statute, the Supreme Court held in
16 *Wilton* that district courts may decline to exercise their discretion to entertain an action
17 "even when the suit otherwise satisfies subject matter jurisdictional prerequisites."  515
18 U.S. at 282.  "The normal principle that federal courts should adjudicate claims within
19 their jurisdiction yields to considerations of practicality and wise judicial
20 administration."  *Id.* at 288.

21 Both the Supreme Court and the Ninth Circuit have said that district courts should
22 use caution when exercising their discretion.  "Especially where governmental action is
23 involved, courts should not intervene unless the need for equitable relief is clear, not
24 remote or speculative."  *Eccles v. Peoples Bank of Lakewood Village*, 333 U.S. 426, 434
25 (1948); *see also Washington Pub. Power Supply Sys. v. Pac. Nw. Power Co.*, 332 F.2d
26 87, 88 (9th Cir 1964) (repeating admonition against making declaratory judgment "upon
27 issues of public moment" unless the need is clear).  As discussed below, the need for
28 declaratory relief here is both remote and speculative.  To avoid "adjudications that may

later turn out to be unnecessary" this Court should dismiss the complaint on ripeness grounds.

### D. Even if there is a ripe controversy, the Eleventh Amendment limits the relief available.

Under the Eleventh Amendment, states are generally immune from suit in federal court, regardless of the relief sought. *Seminole Tribe of Fla. v. Florida*, 493 U.S. 44, 58 (1996). Plaintiffs have brought this action against four state officials—Governor Brewer, Attorney General Horne, Secretary of State Bennett, and Director Maruca—and one county official. A suit against a state official in his or her official capacity suit is no different from a suit against the State. *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989). Of course, *Ex parte Young*, 209 U.S. 123 (1908), created a narrow exception to Eleventh Amendment immunity for certain suits seeking prospective relief for an ongoing constitutional violation. Therefore, even if there is a ripe controversy here, this case can proceed against the four state officials only to the limited extent the claims and relief sought fit within the *Young* exception. The *Young* exception requires a "special relation" between the state officer and the challenged statute, such that the officer has some connection with the enforcement of the act. *Confederated Tribes & Bands of Yakama Indian Nation v. Locke*, 176 F.3d 467, 469 (9th Cir. 1999) (citations omitted). The required connection "must be fairly direct; a generalized duty to enforce state law or general supervisory power over the persons responsible for enforcing the challenged provision will not subject an official to suit." *Snoeck v. Brussa*, 153 F.3d 984, 986 (9th Cir. 1998).

#### 1. Governor Brewer

Although Governor Brewer is named as a Defendant, an examination of SB 1363 and 1365 reveals that the Governor has no role in the enforcement of those measures. The only allegation regarding the Governor is that "she is responsible for carrying out the laws enacted by the Legislature, including the enforcement of SB 1363 through the Department of Public Safety and overseeing the Labor Department of the Industrial

13

1  Commission which appears to be responsible for enforcing some of the provisions of SB
2  1363 and SB 1365." (FAC ¶ 11.) This allegation is insufficient as a matter of law to
3  permit an action against Governor Brewer under *Ex parte Young*.

4      The Ninth Circuit and this court have both held that state governors do not fall
5  within the *Young* exception by virtue of their general supervisory and administrative
6  powers. *See Nat'l Audubon Soc'y, Inc. v. Davis*, 307 F.3d 835, 846-47 (9th Cir. 2002);
7  *NAACP v. L.A. Unified Sch. Dist.*, 714 F.2d 946, 953 (9th Cir. 1983); *Sweat v. Hull*, 200
8  F.Supp.2d 1162, 1173-76 (D. Ariz. 2001). The Governor's alleged oversight of DPS and
9  the Industrial Commission does not establish a "special relation" between the Governor
10 and the challenged statutes. Because there is no "fairly direct correction" between
11 Governor Brewer and SB 1363 or 1365, the claims against the Governor should be
12 dismissed.

13     **2.    Attorney General Horne**

14     Attorney General Horne "is responsible under SB 1365 for rulemaking and
15 enforcing the penalty provision." (FAC ¶ 12.) But there is no allegation that the
16 Attorney General is responsible for enforcing SB 1363, and nothing in the enactment
17 indicates that he is responsible in carrying it out. Because there is no "fairly direct
18 connection" between the Attorney General and SB 1363, the claims against the Attorney
19 General should be dismissed to the extent they are based on SB 1363. *See Young v. State*
20 *of Hawaii*, 548 F.Supp. 2d 1151, 1164 (D. Hawaii 2008).

21     **3.    Secretary of State Bennett**

22     So far as appears in the complaint, the Secretary of State is given the
23 responsibility by SB 1363 of compiling and distributing a "No Trespass Public Notice
24 List" to law enforcement agencies. (FAC ¶ 12.) There is no suggestion that he has any
25 role in carrying out SB 1365. Consequently, the claims against the Secretary of State
26 should be dismissed to the extent they are based on SB 1365. The claims based on SB
27 1363 should also be dismissed except to the extent that they seek prospective relief
28 relating to the preparation of the no-trespass list.

#### 4. Director Maruca

Plaintiffs make no allegations regarding Director Maruca's involvement in enforcing either SB 1363 or SB 1365. As previously noted, Plaintiff's say only that the Labor Department of the Industrial Commission "appears to be responsible for enforcing some of the provisions of SB 1363 and SB 1365." (FAC ¶ 11.) But it is not at all apparent. The Labor Department is not mentioned in either enactment. The vague allegation that the Labor Department "appears" to have some enforcement responsibility does not establish that Director Maruca has a fairly direct connection with SB 1363 and SB 1365. The claims against Director Maruca should be dismissed.

#### 5. State Law Claims

Plaintiffs allege that SB 1363 and SB 1365 violate state as well as federal law. (*See* FAC ¶¶ 40, 59, 75, 81, 90, 105, 115.) But state-law claims against the State—or against state officials in their official capacity—are barred by the Eleventh Amendment. *Pennhurst State Sch. & Hosp. v. Halderman,* 465 U.S. 89, 106 (1984) ("It is difficult to think of a greater intrusion of state sovereignty than when a federal court instructs state officials on how to conform their conduct to state law."); *Cholla Ready Mix, Inc. v. Civish*, 382 F.3d 969, 973-74 (9th Cir. 2004). Accordingly, Plaintiffs' claims that SB 1363 and SB 1365 violated the Arizona Constitution or other provisions of Arizona law must be dismissed.

### III. CONCLUSION

For the foregoing reasons, Plaintiffs' First Amended Complaint should be dismissed or, at the very least, limited to those claims that fit within the *Ex parte Young* exception to the Eleventh Amendment.

Respectfully submitted this 21st day of June, 2011.

        Thomas C. Horne
        Attorney General

        s/ James E. Barton II
        Michael K. Goodwin
        James E. Barton II
        Assistant Attorneys General
        Attorneys for Defendant

1

2  I certify that I electronically
   transmitted the attached document
3  to the Clerk's Office using the
   CM/ECF System for filing and
4  transmittal of a Notice of Electronic
   Filing to the following, if CM/ECF
5  registrants, and mailed a copy of
   same to any non-registrants, this
6  21st day of June, 2011, to:

7  Andrew J. Kahn
   Elizabeth A. Lawrence
8  Davis Cowell & Bowe LLP
   2401 N. Central Avenue, 2nd Floor
9  Phoenix, Arizona 85004
   Attorneys for Plaintiffs UFCW Local 99,
10 McLaughlin and Colbath

11 Gerald Barrett
   Ward, Keenan & Barrett, P.C.
12 3838 N. Central Avenue, Suite 1720
   Phoenix, Arizona 85012
13 Attorneys for Plaintiffs UA Local 469
   and McNally

14
   J. Scott Dutcher
15 Maricopa County Attorney's Office
   Civil Services Division
16 222 N. Central Avenue, Suite 1100
   Phoenix, Arizona 85004
17 Attorneys for Joseph M. Arpaio

18  s/ Maureen Riordan
   Attorney General Secretary
19

20

21 #2032908

22

23

24

25

26

27

28

16