Andrew J. Kahn AZ. Bar # 15835
Elizabeth A. Lawrence AZ Bar #201537
DAVIS COWELL & BOWE LLP
2401 North Central Avenue 2nd Floor
Phoenix, Arizona 85004
Telephone:   800-622-0641
Facsimile:    602- 251-0459
E-mail:  ajk@dcbsf.com
*Attorneys for Plaintiffs UFCW Local 99,*
*McLaughlin and Colbath*

Gerald Barrett, AZ Bar #005855
WARD KEENAN & BARRETT, PC
3838 N Central Ave., Suite 1720
Phoenix, AZ 85012
Telephone:   602-279-1717
Facsimile:    602-279-8908
E-mail: gbarrett@wardkeenanbarrett.com
*Attorneys for Plaintiffs UA Local 469, McNally*
*& Rothans*

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| UNITED FOOD & COMMERCIAL WORKERS LOCAL 99; et al., | CASE NO.  CV-11-0921 PHX-GMS |
| Plaintiffs, | |
| vs. | **PLAINTIFFS' OPPOSITION TO DEFENDANT ARPAIO'S MOTION TO DISMISS** |
| JAN BREWER, in her capacity as Governor of the State of Arizona; et. al., | |
| Defendants. | |

## I.    INTRODUCTION

Defendant Arpaio has moved to dismiss this action because he has not yet arrested or threatened to arrest any of the Plaintiffs under the authority of SB 1363. The problem with this ripeness argument is that SB 1363 is already having real, concrete effects on

1

Plaintiffs' conduct, as the Legislature plainly intended it to have, changing how Plaintiffs operate their unions to avoid violating their new statutory obligations, as is specifically alleged in the FAC. Plaintiffs' fears of arrest are not idle. They allege (and can prove at the appropriate time) that they are actively engaged in group speech at or near workplaces in Maricopa County and in speech critical of employers in the County which draws claims of falsity by such employers.

SB 1363 creates criminal liability for defamation of employers and for unlawful mass assembly (defined to include assembly in an "unreasonable" manner). Further, it defines these offenses as forms of "workplace harassment" for which injunctions can issue without notice and upon a far lower than normal evidentiary burden; SB 1363 then enlists law enforcement officers such as Defendant Arpaio as the agent for enforcing such injunctions. "Defamation" is broadly defined by the statute to encompass negligent falsity (even though the U.S. Supreme Court has repeatedly held that the standard in labor disputes is the more rigorous standard of knowing or intentional falsity). This all places Plaintiffs at substantially-heightened risk of arrest and prosecution–and as a result has chilled Plaintiffs from engaging in the types of conduct they historically engaged in without fear of legal consequences.

A suit over violations of free speech rights is ripe for judicial review when the plaintiff reasonably censors himself rather than face arrest and prosecution. Because Plaintiffs' FAC alleges that the threat of prosecution by Defendant Sheriff "is deterring Plaintiffs . . . from engaging in a significant amount of [union] activities," FAC ¶ 112, there is no merit to Defendant's motions under Rule 12(b)(1) and (6).

If somehow there were insufficient detail in the FAC, Plaintiffs are entitled to leave to amend. The regularity of their speech and assembly conduct which would subject them to arrest can be spelled out in greater detail, as can the Sheriff's past history on these issues, as well as his duty to enforce the Legislature's dictates even if he were to harbor doubts of their constitutionality.

## II.   STATEMENT OF FACTS

The Plaintiffs are United Food & Commercial Workers Local 99, UA Plumbers and Steamfitters Local 469, and the top officer and an active member in each. Local 99 has 18,000 members and organizes in several different industries, having members not only in the food industry, but also museum technicians, legal aid attorneys, parking lot cashiers, and janitors. See www.ufcw99.org.

Included among Defendants is Sheriff Joe Arpaio who is Maricopa County Sheriff. The FAC states that "[a]bsent contrary order of this Court, the Sheriff and his deputies are likely to take action against Plaintiff Unions as directed by provisions of SB 1363." FAC ¶ 11. Maricopa County is the most populous county in Arizona, and Plaintiff Unions have been and will continue to be active in that area.

Plaintiffs allege a well-grounded fear of prosecution under SB 1363 because they "have regularly engaged in union activities on sidewalks and parking lots in front of their employer's facilities." FAC ¶ 111.  Plaintiffs also fear future prosecution because they "have regularly engaged in speech critical of employers and been accused of defamation. . . ." FAC ¶ 117.

Plaintiffs are already suffering injury resulting from passage of SB 1363 because fear of prosecution under the Act is having a "deterrent effect" on continued criticism of employers and participation in union activities. FAC ¶ 78, 97. Plaintiffs "suffer inherently-irreparable injuries to their speech and assembly rights, to union members' receipt of representation [,] and to union officials' functioning as labor representatives." FAC ¶ 10.

## III.   ARGUMENT

### A.   PLAINTIFFS HAVE ALLEGED FACTS THAT ESTABLISH A JUSTICIABLE CASE OR CONTROVERSY

Defendant Sheriff's motion under Rule 12(b)(1) and (6) ignores factual statements in Plaintiffs' well-pleaded complaint that allege already-existing injuries that Plaintiffs have suffered due to the well-founded threat of future prosecution under SB 1363 by

1   Defendant. In determining whether a plaintiff has stated a cause of action that survives

2   pleading standards under Rule 8 of the Federal Rules of Civil Procedure, the Supreme

3   Court has outlined a two-step process. First, the Court requires a determination of

4   whether a complaint includes "well-pleaded factual allegations." *Ashcroft v. Iqbal*, 129

5   S.Ct. 1937, 1950 (2009). If a court finds the complaint to include such well-pleaded facts,

6   "a court should assume their veracity." *Id.*  Second, a court should determine whether

7   those facts "plausibly give rise to an entitlement to relief."  *Id.*  Determining plausibility

8   under the second prong is "a context-specific task that requires the reviewing court to

9   draw on its judicial experience and common sense." *Id.* Additionally, courts have stated

10  that in the context of challenging the legality of a state's newly enacted law, plaintiffs can

11  satisfy the case or controversy requirement before the law in question is actually enforced

12  against them. Courts have said that the case or controversy requirement is satisfied

13  "[w]hen a party is faced with the choice between the disadvantages of complying with [a

14  newly enacted law] or risking the harms that come with noncompliance." *Metropolitan*

15  *Milwaukee Ass'n of Commerce v. Milwaukee County*, 325 F.3d 879, 883 (7th Cir. 2003)

16  (holding that a business association satisfied the "case or controversy" requirement when

17  challenging a local ordinance on preemption grounds before its enactment because the

18  fact that the ordinance required that certain contractors doing business with the county

19  negotiate "labor peace agreements" with unions caused Plaintiffs to be in a worse

20  position than they were before enactment of  the ordinance.)

21          Plaintiffs' factual allegations easily survive Rule 8. Plaintiffs' FAC alleges that

22  Defendant Sheriff Joe Arpaio "is the Sheriff of the County of Maricopa . . . [and] [a]bsent

23  contrary order of this Court, the Sheriff and his deputies are likely to take action against

24  Plaintiff Unions as directed by provisions of SB 1363." FAC ¶ 11. Furthermore, Plaintiffs

25  list six specific ways in which provisions of SB1363 violate their constitutional rights.[1]

26  _____

    [1]  "[F]irst, [SB 1363] expand[s] employer remedies for union violations of an anti-
27  picketing statute already struck down as unconstitutional by the Arizona Supreme
    Court…. Second, SB 1363 criminalizes any assemblies by labor [performed] in an
28  "unreasonable" manner, without defining this term . . . . This is absurdly vague and

                                                4

FAC ¶ 2. Plaintiffs also state that they are actively suffering actual injury because fear of prosecution under SB 1363 is deterring continued criticism of employers and participation in union activities. FAC ¶¶ 78, 97.

For purposes of Defendant's Motion to Dismiss, this Court must assume the facts alleged in the FAC to be true. When taken as true, these facts describe with specificity Plaintiffs' grounds for challenging SB 1363's constitutionality and the injuries Plaintiffs are actively suffering to their union activities and free speech as a result of their reasonable belief they will be arrested by Defendant Sheriff.  Indeed, Plaintiffs are "faced with the choice [of accepting] the disadvantages of complying with [a newly enacted law] or risking the harms that come with noncompliance."  *Metropolitan Milwaukee Ass'n of Commerce*, 325 F.3d at 883. Furthermore, by granting relief and enjoining the Defendant, the Court would redress the Plaintiffs' injury because enjoining Defendant Sheriff from enforcing SB 1363 would allow Plaintiffs to freely continue engaging in their traditional union activities in Maricopa County without the fear of future prosecution under SB 1363.

---

overbroad in violation of the First and Fourteenth Amendments . . . . Third, the bill contains additional punishments for secondary boycotts which the U.S. Supreme Court has already held that state laws cannot seek to provide. . . . Fourth, SB 1363 allows defamation suits to be brought against unions for mere negligence in their speech, whereas the U.S. Supreme Court has already declared that in labor disputes the standard is the higher one of intentional falsity or recklessness. Fifth, SB 1363 punishes any employer who lives up to its union contract obligation to deduct dues as previously requested by an employee . . . . This provision violates constitutional prohibitions against impairment of contractual obligations and is preempted by federal labor laws. Sixth, SB 1363 prohibits law enforcement officials from asking an employer who wants unionists removed for any proof of the employer's right to make such request, merely because the employer without giving notice to the Union persuaded the Secretary of State to place this employer on a "No Trespass" list published by the Secretary, a form of notice not compliant with due process . . . . FAC ¶ 2.

1

**B.     PLAINTIFFS HAVE STANDING TO RAISE THEIR CLAIMS**

In addition to satisfying pleading standards under Rule 8, Plaintiffs satisfy standing requirements to challenge SB 1363. In order to have standing, Plaintiffs must show that they have suffered an "injury in fact . . . [that can] fairly . . . be traced to the challenged action of the defendant [, and a] likelihood that the injury will be redressed by a favorable decision. . . ." *Northeastern Florida Chapter of Associated General Contractors of America v. City of Jacksonville*, 508 U.S. 656, 663 (1993) (omitting internal citations, quotation marks, and footnotes). However, in the free speech context, when a challenged statute risks chilling the exercise of First Amendment rights of a Plaintiff, "the Supreme Court has dispensed with rigid standing requirements," *Cal. Pro-Life Council, Inc. v. Getman*, 328 F.3d 1088, 1094 (9th Cir. 2003), and has recognized self-censorship as "a harm that can be realized even without an actual prosecution." *Id.* at 1095 (omitting internal quotations and citations). This is especially true when a law is targeted directly at Plaintiffs, as is the case here.  See, e.g., *Virginia v. American Booksellers Association*, 484 U.S. 383, 393 (1988) (holding that book stores have standing to facially challenge an ordinance before it is enforced against them because it "is aimed directly at plaintiffs, who, if their interpretation of the statute is correct, will have to take significant and costly compliance measures or risk criminal prosecution." *Id.* at 392.)

Plaintiffs allege that they are actively suffering an injury in fact because fear of prosecution under SB 1363 by Defendants "is deterring Plaintiffs . . . from engaging in a significant amount of [union] activities" (e.g., picketing employers, leafleting in front of employers). FAC ¶ 112. Thus, the FAC alleges that the threat of prosecution by Sheriff Arpaio, one of those Defendants, has already caused Plaintiffs to engage in self-censorship by refraining from participating in expressive activity. This self-censorship is a "constitutionally sufficient injury," *Cal. Pro-Life Council*, 328 F.3d at 1107, because it is based on "an actual and well-founded fear that the challenged statute will be enforced." *Id.* at 1095 (internal quotation marks and citations omitted).

Plaintiffs' fear of prosecution by Defendant Sheriff is especially well-founded because Plaintiff Unions have been and will continue to be active in Maricopa County. Moreover, the risk of prosecution is great because so many of the provisions of SB 1363 are ambiguous, vague, and overbroad. This law, for example, "criminalizes any assemblies by labor [performed] in an 'unreasonable' manner, without defining this term in any way other than saying it should not be construed to violate federally-protected rights." FAC ¶ 2, citing ARS 23-1327(A)(5) and (B). Plaintiffs "have no way of knowing what a judge would consider 'unreasonable' in assembling [,]" FAC ¶ 87, and they therefore reasonably fear future prosecution under SB 1363 on the basis that they have and will engage in activity that "some but not all people would find unreasonable . . . ." FAC ¶ 85.[2]

Furthermore, the broad injunctive relief provisions of SB 1363 make it particularly likely that Defendant Sheriff will be obligated to enforce this law against Plaintiffs, no matter what his present intent might be. When an employer successfully obtains an injunction in Maricopa County under the additional authority granted to state courts in SB 1363[3], that order must state, "If you disobey this order, you may be arrested and

---

[2] Additionally, every time unions like Plaintiffs encourages a consumer boycott of an employer or lobbies against its relicensing (common conduct that is wholly protected by the NLRA and First Amendment under *NAACP v. Claiborne Hardware*, 458 U.S. 886 (1982)), this is arguably destruction of the "intangible property" of the employer (consumer goodwill) and hence a violation of the new ARS 12-1321(1)

[3] Section 2 of SB 1363 (codified at ARS 12-1810) in paragraph E expressly dispenses with the normal requirements for preliminary injunctive relief in ARCP Rule 65(a) that "[n]o preliminary injunction shall be issued without notice to the adverse party" and then instead provides lower standards: "If the court finds reasonable evidence of harassment of the plaintiff by the defendant during the year preceding the filing of the petition or that good cause exists to believe that great or irreparable harm would result to the plaintiff if the injunction is not granted before the defendant or the defendant's attorney can be heard in opposition and the court finds specific facts attesting to the plaintiff's efforts to give notice to the defendant or reasons supporting the plaintiff's claim that notice should not be given." ARS 12-1810(E) also dispenses with the requirement of ARCP Rule 65(e) that a bond be posted, thereby further encouraging pursuing of injunctions without solid grounds.

1  prosecuted for the crime of interfering with judicial proceedings and any other crime you

2  may have committed in disobeying this order." 12-1810(H). Every such injunction must

3  be registered with the county sheriff's office. 12-180(J). Then, any peace officer may

4  arrest a person for violating such injunction based on probable cause "[w]hether or not a

5  violation occurs in the presence of a peace officer, with or without a warrant,"12-1810

6  (M), and peace officers are immunized from liability for such arrests. 12-1810(P).   Once

7  such an injunction is granted in Maricopa County, Defendant Sheriff will have no choice

8  but to enforce it.

9       Moreover, the new statute prohibits the Sheriff's deputies from making any further

10  inquiry into the bona fides of an employer request for a trespass arrest if the employer

11  listed some property with the Secretary of State (ARS 23-1326(F)) ("the responding

12  peace officer may not require the employer to provide any further documentation to

13  establish the employer's property rights before requiring any labor organization or

14  individual or groups of individual . . . to leave the employer's property . . . . "). Thus,

15  Defendant Sheriff is likely to arrest Plaintiffs under such circumstances because the

16  Plaintiffs' union activities are often performed on some employer's property. Plaintiffs

17  engage in these union activities on employers' properties because courts and the NLRB

18  have held that under the NLRA, employees have a right to be present off-duty on an

19  employer's property to engage in union activities[4] and non-employee union agents have

20  the right to access an employer's property when an employer lets other outsiders use the

21  property for speech[5] or when the employer is not the actual property owner but merely a

22

23  [4]  *Tri-County Medical Center*, 222 NLRB 1089 (1976); *First Healthcare Corp. v. N.L.R.B.*, 344 F.3d 523 (6th Cir. 2003).

24  [5]  *Lucile Salter Packard Children's Hosp. v. NLRB*, 97 F. 3d 583, 587 (D.C. Cir.

25  1996)("First, under the 'inaccessibility' exception, an employer violates section 8(a)(1) if it denies a union access to the employer's property where the union has no other

26  reasonable means of communicating its message to employees. [cites] Second, under the 'non-discrimination' exception, an employer engages in discrimination as defined by

27  section 8(a)(1) if it denies union access to its premises while allowing similar distribution or solicitation by nonemployee entities other than the union. [cites]").

28

8

lessee sharing common areas.[6]  Furthermore, most union contracts provide for union representatives to have access to premises, and the NLRA gives union representatives the right to observe working conditions inside facilities where they are the designated representative.[7]  But under SB 1363, the Sheriff has been ordered to ignore those usual reasons for union activities to be taking place on employer property, and must instead arrest the union members if the employer so requests.

Fear of prosecution under the unconstitutional provisions of SB 1363 is also well-founded because Defendant Sheriff has not stated that he will not enforce the Act. Indeed, he has no authority to declare a statute unconstitutional and decline to enforce it. Nor has he indicated that he would abide by a ruling of unconstitutionality reached against the state defendants only (and of course, they want to be dismissed on the grounds that much enforcement was left up to local law enforcement not them).

Finally, there is the Sheriff Department's own track record which adds to the reasonableness of Plaintiffs' fears here.  See, e.g., *Lacey v. Maricopa County*, --- F.3d ----, 2011 WL 2276198 (9th Cir. June 9, 2011) (reciting allegations supporting claim that publisher arrested for speech activities); *Ortega Melendres v. Arpaio*, 598 F. Supp. 2d 1025 (D. Ariz. 2009)(alleged sweeps targeted at Hispanic community, which is where current organizing by Plaintiff UFCW occurring); *Demery v. Arpaio*, 378 F.3d 1020 (9th Cir. 2004), cert. denied, 545 U.S. 1139 (2005) (holding that district court did not abuse its discretion by granting Plaintiff injunction because Plaintiff was likely to succeed on due process claim against Defendant Arpaio for using world-wide-web cameras to stream live images of pretrial detainees on the Internet prior to adjudication of guilt); *Owen v.*

[6]  *Wild Oats Markets*, 336 NRLB 179 (2001)(employer violates Act by calling police to remove union agents from parking lots it did not own but merely leased and shared with others); *O'Neil's Markets, Inc. d/b/a Food For Less*, 318 NLRB 646 (1995); *Victory Markets*, 322 NLRB 17 (1996); *A&E Food Co. 1, Inc.*, 339 NLRB 806 (2003); *UFCW, Local 400 v. NLRB (Farm Fresh)*, 222 F.3d 1030 (D.C. Cir. 2000).

[7]  *NLRB v. Unbelievable, Inc. d/b/a Frontier Hotel*, 71 F.3d 1434, 1438-1439 (9th Cir. 1995); *NLRB v. C.E. Wylie Construction Co.*, 934 F.2d 234, 238-239 (9th Cir. 1991); *NLRB v. Villa Avila*, 673 F.2d 281, 283-284 (9th Cir. 1982).

*Maricopa County*, 2009 WL 1929346 (D. Ariz. Case No. 2:07-CV-01463) (jury awarded $125,000 to Plaintiff after Deputy Sheriff falsely arrested her for failure to obey a police officer and resisting arrest  in response to her complaints about his failure to police traffic). Plaintiffs' complaint is not contending the Sheriff or his deputies are ill-motivated, but merely noticing that they have been handed tasks by the Legislature which leave them little or no choice but to arrest Plaintiffs for commonplace union activities, including activities such as "unreasonable" assembly, whose boundaries are nearly impossible to predict. [8]

## C.    PLAINTIFFS' CLAIMS ARE RIPE FOR ADJUDICATION

To assess ripeness, courts must evaluate "both the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration." *Abbott Laboratories v. Gardner,* 387 U.S. 136, 149 (1967).

---

[8] Plaintiffs also reasonably believe Defendant Sheriff will enforce SB 1363 because the courts have established the general principle that officers like the Sheriff have a general duty to enforce laws passed by the legislature, even if they think the law they are enforcing is unconstitutional. Declining to do so, these courts state, is an infringement upon the principle of separation of powers. See, e.g., *Lear Siegler, Inc., v. Lehman*, 842 F.2d 1102, 1125 (9th Cir. 1988), reh'g granted, 863 F.2d 693 (9th Cir. 1988), withdrawn in part on other grounds, 893 F.2d 205 (9th Cir. 1989) ("We also note that in declaring the CICA stay provisions unconstitutional and suspending their operation, the executive branch has assumed a role reserved for the judicial branch***The executive branch's attempt to arrogate to itself the power of judicial review is a paradigmatic violation of our system of separation of powers and checks and balances. As this court has stated, [i]f the essential, constitutional role of the judiciary is to be maintained, there must be both the appearance and the reality of control by Article III judges over the interpretation, declaration and application of federal law."(internal citations and quotation marks omitted); *Lockyer v. San Francisco*, 33 Cal.4th 1055 (2000) ("We conclude that a local public official, charged with the ministerial duty of enforcing a statute, generally does not have the authority, in the absence of a judicial determination of unconstitutionality, to refuse to enforce the statute on the basis of the official's view that it is unconstitutional." *Id.* at 1082. "It is worth noting that the California rule generally precluding an executive official from refusing to perform a ministerial duty imposed by statute on the basis of the official's determination or opinion that the statute is unconstitutional is consistent with the general rule applied in the overwhelming  majority of cases from other jurisdictions." *Id.* at 1105.)

While Defendant Sheriff has not yet arrested Plaintiffs under SB 1363, which only went into effect this month, Plaintiffs' claims are still sufficiently ripe for adjudication because "a plaintiff need not first expose himself to actual arrest or prosecution to be entitled to challenge [the] statute." *Babbitt v. United Farmer Workers National Union*, 442 U.S. 289, 302 (1979) (internal quotation marks and citation omitted) (holding that a Union has standing to sue the State of Arizona to challenge a newly enacted state law because "fear of criminal prosecution under an allegedly unconstitutional statute is not imaginary or wholly speculative" when a Union has "actively engaged in consumer publicity campaigns [that may now be prohibited by the statute] in the past and has alleged their intention to continue to engage in boycott activities.").

The issues are fit for judicial review because the challenges posed to SB 1363 by Plaintiffs are facial, purely legal, and would not significantly benefit from further factual development.[9]  Indeed, a finding of preemption and unconstitutionality is likely because some parts of SB 1363 are clearly in conflict with past court precedent.  For example, the provision defining defamation of employers to include negligent rather than intentional or reckless misstatements is openly defies *Linn v. Plant Guard Workers*, 383 US 53, 64-65 (1966)("We therefore limit the availability of state remedies for libel to those instances in which the complainant can show that the defamatory statements were circulated with malice and caused him damage.* * * Construing the Act to permit recovery of damages

---

[9] Even if further factual development would be of some benefit to the court, that fact alone should not lead the court to find this action unripe. See *Metropolitan Milwaukee Ass'n of Commerce v. Milwaukee County*, 325 F.3d 879, 882 (holding that employer association's action against a county for passing a local ordinance that was allegedly preempted by the National Labor Relations Act and violated the First Amendment was ripe for adjudication before actual enforcement because, although it would be useful to have the benefit of the County's interpretation of the terms or reach of a local ordinance, the absence of this information does not preclude judicial review since the complaint raised "almost purely legal issues" that are "quintessentially fit . . . for present judicial resolution.")

in a state cause of action only for defamatory statements published with knowledge of their falsity or with reckless disregard of whether they were true or false guards against abuse of libel actions and unwarranted intrusion upon free discussion envisioned by the Act."). Another example is that SB 1363 "expand[s] employer remedies for union violations of an anti-picketing statute already struck down as unconstitutional by the Arizona Supreme Court." FAC ¶ 2. See *Baldwin v. Arizona Flame Restaurant, Inc.*, 82 Ariz. 385, 313 P.2d 759 (Ariz. 1957) ("The plain wording of section 56-1310 [also in ARS 23-1322] . . . effectively provides that under all circumstances, regardless of purpose, a union having less than a majority is prohibited from all peaceful picketing. Such clearly on its face constitutes a general prohibition against peaceful picketing in violation of the United States Constitution . . . .")  SB 1363  also "contains additional punishments for secondary boycotts which the U.S. Supreme Court has already held that state laws cannot seek to provide. . . ." FAC ¶ 2 (citing *Teamsters v. Morton*, 377 U.S. 252 (1964)("state law has been displaced by [LMRA] section 303 in private damage actions based on peaceful union secondary activities."). See also *Smart v. Local 702 Int'l Bhd. of Elec. Workers,* 562 F.3d 798, 808 (7th Cir. 2009) (Section 303 of the Labor Management Relations Act, 29 USC 187, "completely preempts state-law claims related to secondary boycott activities described in section 158(b)(4); it provides an exclusive federal cause of action for the redress of such illegal activity.").

The preenforcement nature of this does not preclude judiciary review because Defendant Sheriff "has not suggested that the newly enacted law will not be enforced, and [the court should] see no reason to assume otherwise." *Virginia v. American. Booksellers Association*, 484 U.S. 383, 393 (1988).

Plaintiffs' claims also satisfy ripeness requirements because the pendency of SB 1363 has already caused Plaintiffs hardship and will continue to cause such hardship so long as the Act is not enjoined against Defendant Sheriff. As alleged in Plaintiffs' FAC, enactment of SB 1363 is already "curtailing such activities" as picketing, boycotting, and organizing in Maricopa County. FAC ¶ 86. This impact has reduced effectiveness of the

Plaintiffs to act as an effective labor representative. As long as SB 1363 is not enjoined and the well-founded threat of arrest by Defendant Sheriff exists, Plaintiffs' effectiveness at representing their member's interests in the largest county in the State will be continually impaired.

Delayed adjudication of the issues in this action will cause additional hardship to Plaintiff Unions because delaying a decision regarding the legality of SB 1363 will continually injure Plaintiffs' ability to engage in publicity, including picketing against employers without employee consent, by placing Plaintiffs in "the dilemma of incurring the disadvantages of complying [with SB 1363] or risking penalties for noncompliance." *Whitney v. Heckler*, 780 F.2d 963, 968-69 n. 6, (11th Cir. 1986) ("It is well established that [a case with this type of dilemma] is ripe for judicial review . . . ."), *cert. denied*, 479 U.S. 813.

Moreover, prolonged uncertainty about the validity and scope of SB 1363 will concretely harm Plaintiffs because threat of enforcement of the Act substantially affects Plaintiffs' bargaining power with employers by impairing the availability of important economic weapons that Congress provided to labor unions. By substantially affecting Plaintiffs' ability to employ publicity and picketing against employers, SB 1363 "permanently and substantially shifts the terms of bargaining . . . even in situations where the possibility of [picketing] appears remote." *Employers Association v. United Steelworkers*, 32 F.3d 1297, 1299-1300 (8th Cir. 1994) (holding that an association of employers action against the state for passing a statute that made it an unfair labor practice to hire permanent replacements for striking workers was ripe even though unions had not yet called a strike against any member employer.); see also *Chamber of Commerce v. Reich*, 57 F.3d 1099, 1100 (D.C. Cir.1995) (holding that a challenge to an Executive Order allowing disqualification of any federal contractor that permanently replaced striking workers was ripe because the mere existence of the order "alters the

13

1  balance of bargaining power between employers and employees by . . . depriving them of

2  a significant economic weapon in the collective bargaining process.").[10]

3         Delayed consideration of Plaintiffs' claims is also likely to cause hardship because

4  once a "harassment" injunction issues under SB 1363, Plaintiffs cannot violate it and then

5  defend themselves against contempt on the grounds that the law permitting said

6  injunction was unconstitutional. *State v. Chavez*, 123 Ariz. 538, 601 P.2d 301 (Ariz. App.

7  1979) (in labor injunction case, holding that a Union cannot rely on the

8  unconstitutionality of an injunction to defend against contempt charges arising from

9  violation of that injunction.). Thus, because SB 1363 lowers the bar for ex parte

10  injunctions against unions like Plaintiffs, an employer in Maricopa County may be able to

11  successfully enjoin Plaintiffs from engaging in speech on or near their properties that

12  previously had been fully protected by the First Amendment and federal labor law. If

13  Plaintiffs then violate this ex parte injunction, they could be convicted of a crime even

14  though the statute authorizing this conviction is unconstitutional and even though

15  Plaintiffs were not given an opportunity to defend against the injunction in court. Also, if

16  this Court withholds consideration of these statutes' constitutionality until prosecutions of

17  Plaintiffs occurs, such delay would likely cause the unique federal issues in Plaintiffs'

18  FAC to instead be presented to Arizona criminal courts for resolution. Plaintiffs are likely

19

20  ───────────────

21  [10]  Section 3 of SB 1363 further alters the balance of power by encouraging employers to
    campaign for employees to stop paying dues even before contractually eligible to do so,

22  as occurred during the last round of grocery negotiations (as recounted in the FAC).  For
    those employees who then quit or are terminated, employers can justly point to the

23  possibility of criminal prosecution by the Sheriff  for not turning those wages over to the
    employees instead under a companion provision of the ARS, ARS 23-353: "A. When an

24  employee is discharged from the service of an employer, he shall be paid wages due him
    within three working days or the end of the next regular pay period, whichever is sooner.

25  B. When an employee quits the service of an employer he shall be paid in the usual
    manner all wages due him no later than the regular payday for the pay period during

26  which the termination occurred. If requested by the employee, such wages shall be paid

27  by mail.* * * D. A person violating this section is guilty of a petty offense."

28

1    to suffer hardship as a result of this delay because Arizona criminal courts lack this

2    Court's level of expertise on preemption and First Amendment issues.

3         Thus, Plaintiffs' case is ripe because awaiting further factual development is

4    unnecessary to address the constitutional claims and would subject Plaintiffs to

5    unnecessary and expensive criminal court proceedings. This Court could eliminate

6    current hardships for Plaintiffs and prevent further ones and avoid unnecessary

7    duplicative proceedings by enjoining enforcement of  key provisions of SB 1363 on the

8    basis of Plaintiffs' facial and purely legal constitutional arguments.

9
10        **D.**    **IF THE COURT HAS ANY DOUBTS AS TO STANDING OR RIPENESS, IT STILL MUST GRANT LEAVE TO AMEND**

11
12         If necessary, Plaintiffs could amend the Complaint to include additional

13    allegations that (1) food stores and other work locations where Plaintiffs have members

14    or are organizing are located in unincorporated sections of Maricopa County; (2)

15    Defendant Sheriff's deputies have appeared at most of the picket lines formed in these

16    unincorporated sections of the County, and that a majority of times that picket lines have

17    been visited by  Defendant Sheriff's deputies, the deputies issue instructions limiting

18    Plaintiffs' picket conduct. Plaintiffs could also provide additional detail explaining that

19    their bargaining power heavily depends on their organizations' ability to engage in

20    speech in the forms restricted by SB 1363, and as to retail employers in particular, the

21    employees' withholding of their labor is not as important to their success as the

22    customers' support for the employees' cause obtained via on-site publicity.

23         While Plaintiffs already allege they re modifying their speech because they fear

24    prosecution under SB 1363 under the newly lowered standards for employer defamation

25    because they "have regularly engaged in speech critical of employers and been accused

26    of defamation," FAC ¶ 117, Plaintiffs could amend the Complaint to include citations to

27    cases in which Plaintiffs have been sued by employers for defamation. Plaintiffs could

28    also amend to list numerous examples of Arizona employers who have disputed union

allegations against them which could now lead to arrest for defaming an employer (or for violating an injunction against defamation) under the new lenient standard of SB 1363.

Plaintiffs could also allege more specific examples of Defendant Sheriff's past conduct with respect to labor unions and speech rights which underscore the reasonableness of Plaintiffs' fear of future prosecution under SB 1363.  For example, on February 23, 2010 at approximately 10:30 AM on 9949 W. Alabama Avenue in Sun City, an unincorporated part of Maricopa County, Sheet Metal Workers International Association supporters began picketing and chanting but were interrupted by Defendant Sheriff's deputies, who warned them that all chanting had to cease because it allegedly violated the state's disorderly conduct statute.  SWMIA members were specifically threatened with arrest if they failed to comply.  Plaintiffs tried to appeal to officers by bringing to their attention that people using leaf blowers in that area were equally loud or louder yet were still not threatened with prosecution, but the officers were unresponsive to this argument.

Plaintiffs could also allege that UFCW in the month of June, 2011, has handbilled or joined workers' delegations in at least a half-dozen properties within Maricopa County. These organizing campaigns are still ongoing, have resulted in threats to call law enforcement and disagreements about credibility of union statements.  Plaintiffs thus would provide further concrete factual support for reasonably believing that participants in at least one of these campaigns will end up arrested by Defendant Sheriff under SB 1363 if Plaintiffs do not keep on censoring themselves.

///

///

///

///

16

## V.   CONCLUSION

The Sheriff's motion to dismiss this civil rights suit must be denied because Plaintiffs have already suffered injuries in Maricopa County such as curtailing their activities and loss of bargaining power due to well-founded fear of prosecution by the Sheriff under SB 1363.

Dated:   July 7 , 2011                                   Respectfully submitted,

DAVIS COWELL & BOWE LLP

By: /s/ Andrew J. Kahn

*Attorneys for Plaintiffs UFCW Local 99,*
*McLaughlin and Colbath*

WARD KEENAN & BARRETT, PC

By: /s/ Gerald Barrett
*Attorneys for Plaintiffs UA Local 469,*
*McNally & Rothans*

17

**CERTIFICATE OF SERVICE**

I hereby certify that on July 7, 2011, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to all CM/ECF registrants.

/s/ Joyce Archain