1  Thomas C. Horne
   Attorney General
2
   Michael K. Goodwin, Bar No. 014446
3  Assistant Attorney General
   1275 W. Washington
4  Phoenix, Arizona 85007-2997
   Telephone:  (602) 542-7674
5  Facsimile:   (602) 542-7644
   Michael.Goodwin@azag.gov
6
   Attorneys for Defendant
7

8              **IN THE UNITED STATES DISTRICT COURT**

9               **FOR THE DISTRICT OF ARIZONA**

10
   UNITED FOOD & COMMERCIAL              
11 WORKERS LOCAL 99, et al.,         Case No: 2:11-cv-921-PHX-GMS

12                     Plaintiffs,    **STATE DEFENDANTS' MOTION**
                                      **TO DISMISS INTERVENORS'**
13 v.                                 **COMPLAINT**

14 JAN BREWER, in her official capacity
   as Governor of the State of Arizona, et   (Oral Argument Requested)
15 al.,

16                     Defendants.

17

18        The Intervenors' Complaint duplicates many of the allegations in the Plaintiffs'

19 Complaint and suffers from the same jurisdictional defects.  Pursuant to Fed. R. Civ. P.

20 12(b)(1) & (6), Defendants Tom Horne and Ken Bennett hereby move to dismiss the

21 Intervenors Complaint for Injunctive and Declaratory Relief (doc. 52).

22 **I.       FACTUAL BACKGROUND**

23        **A.      SB 1365**

24        The Arizona Legislature enacted SB 1365, which added a new statute, A.R.S. §

25 23-361.02.  Subsection A of the statute provides that, "A public or private employer in

26 this state shall not deduct any payment from an employee's paycheck for political

27 purposes unless the employee annually provides written or electronic authorization to the

28 employer for the deduction."  Subsection B provides that if a deduction is made from an

employee's paycheck for multiple purposes, the entity to which the deductions are paid must provide a "statement indicating that the payment is not used for political purposes or a statement that indicates the maximum percentage that is used for political purposes." These provisions go into effect on October 1, 2011.

Subsection C of the new statute directs the Attorney General to adopt rules for "the acceptable forms of employee authorization and entity statements." Pursuant to Subsection D, an employer who knowingly deducts payments without an employee's authorization or an entity that provides an inaccurate statement is subject to a civil penalty of at least $10,000. The Attorney General is responsible for imposing and collecting the civil penalties.

### B.    SB 1363

The Legislature also adopted SB 1363, which amended several existing laws and added others. The measure provides:

*§ 1* – Amends A.R.S. § 12-1809, which authorizes state courts to issue an injunction against harassment, by expanding the definition of "harassment" in Subsection (R) to include unlawful picketing and other activities defined in the amended A.R.S. § 23-1321 and defamation as defined in the newly adopted A.R.S. § 23-1325.

*§ 2* – Amends A.R.S. § 12-1810, which authorizes state courts to issue an injunction against workplace harassment, by expanding the definition of "harassment" in Subsection (R)(2) to include unlawful picketing and other activities defined in the amended A.R.S. § 23-1321 and defamation as defined in the newly adopted A.R.S. § 23-1325.

*§ 3* – Amends A.R.S. § 23-352(2) to prohibit an employer from withholding an employee's wages past the date specified by the employee in a written revocation of authorization.

*§ 4* – Amends A.R.S. § 23-1321 to provide definitions of "concerted interference with lawful exercise of business activity," "trespassory assembly," "unlawful mass assembly," and "unlawful picketing."

§ 5 – Amends A.R.S. § 23-1322 by expanding the definition of "unlawful picketing" to include picketing by a labor organization to coerce or induce an employer or self-employed person to join or contribute to a labor organization.

§ 6 – Amends A.R.S. § 23-1323 by expanding the remedies to persons injured by unlawful picketing, trespassory assembly, unlawful mass assembly, and concerted interference with lawful exercise of business activity.

§ 7 – Amends A.R.S. § 23-1324 to classify unlawful picketing, unlawful mass assembly, trespassory assembly, and secondary boycotting as a Class 1 or Class 2 misdemeanor punishable by a fine of not less than $200.

§ 8 – Adds A.R.S. § 23-1325, which establishes a statutory cause of action for defamation of an employer; adds A.R.S. § 23-1326, which directs the Secretary of State to establish a "no trespass notice list" identifying employers with established property rights and which creates a procedure for employers to be included on the list; adds A.R.S. § 23-1327, which prohibits "unlawful mass assembly" as defined in the statute, but does not prohibit assembly that is authorized under the Arizona or U.S. Constitution or federal law; adds A.R.S. § 23-1328, which prohibits trespassory assembly; and adds A.R.S. § 23-1329, which prohibits a person from publicizing the picketing or assembly at a specific location, if a court with jurisdiction over the location has issued an injunction against the continuation of the picketing or assembly at that location.

**C.     The Intervenors' Complaint**

Intervenor Arizona Education Association (AEA) is a professional organization and union with over 28,000 members in Arizona.  (Doc. 52, ¶ 6.)  It is an affiliate of the National Education Association.  (*Id*.)  Intervenors Melissa England, Kerry-Lynn Scheffler, and Danielle Nowak are members of the AEA.  (*Id*., ¶¶ 7-9.)

Intervenor American Federation of State, County and Municipal Employees is a labor union that represents public service workers.  (*Id*., ¶¶ 10-15.)  Local 449, Local 2384, Local 2960, Local 3111, and Local 3282 of AFSCME have approximately 3,500 members in Pima and Maricopa Counties.  (*Id*.)

1    Intervenor Service Employees International Union, Local 5 (SEIU Arizona) is a

2    labor union that represents both public service employees and private employees in

3    Arizona.  (*Id*., ¶ 16.)

4    Intervenor Arizona Federal of Teachers Union (AFTU) is a labor union operating

5    in Arizona.  (*Id*., ¶ 18.)  It is affiliated with the American Federation of Teachers.  (*Id*.)

6    The Intervenors bring this action under 42 U.S.C. § 1983.  They allege that SB

7    1365 violates the First Amendment, the Equal Protection Clause of the Fourteenth

8    Amendment, and the contract clause of the United States Constitution.  They further

9    allege that SB 1365 is vague and overbroad, imposes an unconstitutional condition on

10    them, and is preempted by the Federal Election Campaign Act (FECA).  Additionally,

11    Intervenor SEIU Arizona alleges that SB 1363 violates the First Amendment and the

12    Equal Protection Clause of the Fourteenth Amendment; and that it is unconstitutionally

13    vague, overbroad, and preempted by the National Labor Relations Act (NLRA) and

14    Labor Management Relations Act (LMRA).

15    The Intervenors name Attorney General Tom Horne, Secretary of State Ken

16    Bennett, and Maricopa County Sheriff Joe Arpaio as Defendants.  (Doc. 52, ¶¶ 19-21.)

17    They are sued in their official capacities.  The two State officials, Horne and Bennett,

18    may sometimes be referred to jointly as the "State Defendants" or simply "the State."

19    **II.    LEGAL DISCUSSION**

20    **A.    Legal Standards**

21    The question whether subject matter jurisdiction exists is one of law.  *Kingman*

22    *Reef Atoll Investments, LLC v. United States*, 541 F.3d 1189 (9th Cir. 2008).  In a Rule

23    12(b)(1) motion, "the district court is not confined by the facts contained in the four

24    corners of the complaint—it may consider facts and need not assume the truthfulness of

25    the complaint."  *Americopters, LLC v. FAA*, 441 F.3d 726, 732 n. 4 (9th Cir. 2006).  On

26    a motion to dismiss, the court is not required to assume the truth of legal conclusions.

27    *Warren v. Fox Family Worldwide, Inc.*, 328 F.3d 1136, 1139 (9th Cir. 2003).

28

1    The Plaintiffs have the burden of establishing that this Court has jurisdiction.

2    *Kokkonen v. Guardian of Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994).  At the

3    pleading stage, they may satisfy this burden by alleging facts that, if proven, establish the

4    court's jurisdiction.  *Sacks v. Office of Foreign Assets Control*, 466 F.3d 764, 771 (9th

5    Cir. 2006).

6         **B.      The Intervenors' Complaint Fails to Present a Case or Controversy.**

7              **1.      The Intervenors lack standing.**

8         Under Article III of the United States Constitution, a party must demonstrate

9    standing in order to satisfy the "case or controversy" requirement necessary for a federal

10   court to exercise its judicial power.  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560

11   (1992).  In *Lujan*, the Supreme Court identified three elements necessary to establish

12   Article III standing:  (1) an injury-in-fact to a legally protected interest that is concrete

13   and particularized or actual or imminent; (2) a causal connection between their injury

14   and the conduct complained of; and (3) that it is likely, not merely speculative, that their

15   injury will be redressed by a favorable decision.  *Id*. at 560-61; *Western Min. Council v.*

16   *Watt*, 643 F.2d 618, 623 (9th Cir. 1981) (observing that standing requires a plaintiff to

17   allege "such a personal stake in the outcome of the controversy as to assure that concrete

18   adverseness which sharpens the presentation of issues").  Moreover, in the context of

19   injunctive relief, a plaintiff "must demonstrate a real or immediate threat of an

20   irreparable injury."  *Cole v. Oroville Union High Sch.*, 228 F.3d 1092, 1100 (9th Cir.

21   2000).  The Intervenors cannot meet these requirements.

22              **a.      No Injury-in-Fact**

23        According to the Complaint, the Intervenor unions all have some members who

24   pay their union dues via payroll deduction.  (Doc. 52, ¶¶ 36-39.)  The Intervenor unions

25   have used, and will continue to use, member dues for political purposes.  (*Id.*, ¶ 42.)

26   Because of that, they acknowledge that compliance with SB 1365 will require them to

27   provide a statement indicating the maximum percentage of dues used for political

28   purposes.  (*Id.*, ¶ 43.)  The Intervenors say they do not know at this time how to

1    determine the maximum percentage used for political purposes and point out that the

2    rules concerning entity statements have not yet been promulgated.  (*Id.*, ¶¶ 43, 28.)

3        The Intervenors say they anticipate that some employers that currently permit

4    dues deduction may stop doing so.  (*Id.*, ¶ 44.)  They allege that they have begun or plan

5    to implement other methods of collecting dues payments, such as electronic fund

6    transfers.  (*Id.*, ¶¶ 46-47.)  Some of the Intervenors predict they "will suffer the loss of

7    future dues revenue."  (*Id.*, ¶ 48.)  SEIU Arizona says it is likely to stop using member

8    dues for political purposes "because the costs of collecting dues in some fashion other

9    than payroll deduction and the risk of criminal liability under SB 1365 are too great."

10   (*Id.*, ¶ 50.)

11       As for SB 1363, the Intervenor SEIU Arizona alleges that the prohibitions on

12   interference with lawful exercise of business activity, trespassory assembly, unlawful

13   mass assembly, and boycott-related activities will restrict and chill its First Amendment-

14   protected activities.  (*Id.*, ¶¶ 56-57, 60, 63, 68, 83.)  It further alleges that the "easy

15   availability of injunctive relief" and the criminal penalties for certain activities on

16   employer properties listed on the "no trespass public notice list" will also chill its

17   exercise of First Amendment rights.  (*Id.*, ¶¶ 88, 93-94.)

18       As discussed below, none of these alleged injuries is "actual or imminent" and

19   "concrete and particularized" enough to confer standing.  *See Lujan*, 504 U.S. at 560.

20   The Intervenors' "anticipation" that some employers might stop deducting dues is

21   baseless.  There is no allegation that any employer has stopped deducting the dues of the

22   Intervenor unions.  The allegation of some Intervenors that they may lose dues revenue

23   in the future is also baseless speculation.  The Intervenors allege that all members who

24   pay their union dues via payroll deductions do so voluntarily.  (Doc. 52, ¶¶ 23, 40.)  If

25   that is true, SB 1365 will make have no effect on dues those voluntary dues-paying

26   members may be counted on to authorize their employers to include the percentage of

27   dues used for political purposes in the overall dues deducted.

28

Intervenor SEIU Arizona alleges that the wage-deduction provisions of SB 1363 and SB 1365 will impair its ability to predict its income over the year.  (*Id*., ¶ 98.)  In the Fourteenth Claim for Relief, SEIU Arizona alleges that these provisions, as well as the provision dealing with the creation of a "no trespass public notice list," are preempted by the NLRA.  (*Id*., ¶¶ 177-181.)  But SEIU Arizona has not alleged that it is covered by the NLRA, and therefore it cannot argue NLRA preemption or claim any injury resulting from preemption.

### b.    Causation & Redressability

The speculative nature of the injuries alleged by the Intervenors is not the only problem.  There is also a gap between the alleged injuries and the relief sought.  For that reason, many of the alleged injuries are not likely to be redressed.

The Intervenors say they are not sure how to determine the maximum percentage of dues used for political purposes and that the Attorney General is charged with promulgating forms required for compliance with the law.  (Doc. 52, ¶¶ 28-29.)  But rather than wait for the rules, which may provide the guidance they say they need, they seek an injunction that would block the implementation of the law, among other things.

The Intervenors allege repeatedly that the provisions of SB 1363 and SB 1365 will chill their exercise of First Amendment activities.  But most of the provisions they complain about in these two enactments are not enforced by the State Defendants, and therefore the injunction they seek will not redress their alleged injury.  For example, the Intervenors say they might be subjected to state court injunctions pursuant to sections 1, 2, and 8 of SB 1363. But those provisions, which deal with injunctions against harassment and defamation, are carried out through private enforcement actions.  *See* A.R.S. § 12-1809 (authorizing any "person" to apply for an injunction against harassment); A.R.S. § 12-1810 (authorizing any "employer" to apply for an injunction against workplace harassment); A.R.S. § 23-1325 (authorizing "any employer against whom defamation is directed" to seek an injunction).  An injunction against the State

1    Defendants would not affect whether the Intervenors are enjoined pursuant to one of

2    these amended or new statutes.

3        The Secretary of State is implicated in only one provision of SB 1363.  As

4    previously noted, a subpart of § 8 adds A.R.S. § 23-1326, which directs the Secretary of

5    State to establish a "no trespass public notice list."  Even assuming an injunction against

6    the Secretary of State was appropriate, it would only restrain him from establishing the

7    list, and it would not redress the Intervenors' alleged injuries.

8                        **2.      The Intervenors' Complaint is not ripe for adjudication.**

9                             **a.      Constitutional Ripeness**

10       To satisfy the Article III "case or controversy" requirement, the Intervenors must

11   also establish that their claims are ripe for adjudication.  *See Thomas v. Anchorage Equal*

12   *Rights Comm'n*, 220 F.3d 1134, 1138 (9th Cir. 2000).  "The ripeness inquiry is often

13   treated under the rubric of standing and, in many cases, coincides with standing's injury

14   in fact prong." *Id.* at 1138-39.  The "'basic rationale' . . . is 'to prevent the courts,

15   through avoidance of premature adjudication, from entangling themselves in abstract

16   disagreements.'" *Scott v. Pasadena Unified Sch. Dist.*, 306 F.3d 646, 662 (9th Cir.

17   2009) (citation omitted).  The Intervenors present no claim that is ripe for judicial review

18   because they do not allege an actual injury or a realistic danger of imminent injury.

19       "Determination of the scope and constitutionality of legislation in advance of its

20   immediate adverse effect in the context of a concrete case involves too remote and

21   abstract an inquiry for the proper exercise of the judicial function." *Int'l*

22   *Longshoremen's & Warehousemen's Union, Local 37 v. Boyd*, 347 U.S. 222, 224 (1954)

23   (citations omitted).  "Neither the mere existence of a proscriptive statute nor a

24   generalized threat of prosecution satisfies the "case or controversy" requirement.

25   *Thomas*, 220 F.3d at 1139 (citation omitted).   The constitutional component of ripeness

26   requires that a plaintiff demonstrate "a realistic danger of sustaining a direct injury as a

27   result of the statute's operation or enforcement." *Lopez v. Candaele*, 630 F.3d 775, 785

28   (9th Cir. 2010) (quoting *Babbitt v. United Farm Workers Nat'l Union,* 442 U.S. 289, 298

8

(1979)).  For purposes of a pre-enforcement challenge, the constitutional ripeness inquiry focuses on: (1) whether the plaintiffs have articulated a concrete plan to violate the law in question, (2) whether the prosecuting authorities have communicated a specific warning or threat to initiate proceedings, and (3) the history of past prosecution or enforcement under the challenged statute.  *Thomas*, 220 F.3d at 1139 (citation omitted).  The Intervenors fail to satisfy any of these requirements.

In *San Diego County County Gun Rights Committee v. Reno*, 98 F.3d 1121 (9th Cir. 1996), several groups and individuals brought a pre-enforcement challenge to a gun-control law and alleged that they intended to engage in activities prohibited by the law.  The Ninth Circuit held that they presented no credible threat of enforcement so as to justify judicial review.  *Id*. at 1127-28.  Here, the Intervenors give no indication that they plan to violate any of the laws in question.  Indeed, they seem intent on complying with the laws.  They have not demonstrated a realistic danger of imminent injury.

The Intervenors' allegations that the challenged enactments, particularly SB 1363, will have a chilling effect on the First Amendment rights does not render their claims ripe.  However, these measures regulate conduct more than they regulate speech.  Moreover, even when the Intervenors challenge a speech restriction, they must still satisfy "the rigid constitutional requirement that [they] must demonstrate an injury in fact to invoke a federal court's jurisdiction."  *Lopez*, 630 F.3d at 785-86 (citations omitted).  The Intervenors have not done so.

### b.    Prudential Ripeness

Ripeness also has a prudential component.  *Id*. at 1131.  The prudential considerations of ripeness are amplified where constitutional issues are concerned.  *Scott*, 306 F.3d at 662 (citing *United Pub. Workers of Am. v. Mitchell*, 330 U.S. 75, 88 (1947).  In applying the prudential ripeness doctrine, the Court considers two factors: (1) the "fitness of the issues for judicial decision" and (2) "the hardship to the parties of withholding court consideration."  *Stormans*, 586 F.3d at 1126.

1    The first factor focuses on whether "the issues raised are primarily legal, do not

2  require further factual development, and the challenged action is final."  *Id.*  A claim is

3  unripe "if it rests upon 'contingent future events that may not occur as anticipated, or

4  indeed may not occur at all.'"  *Scott*, 306 F.3d at 662 (quoting *Texas v. United States*,

5  523 U.S. 296, 300 (1998)).  In conducting this analysis, the Court should look primarily

6  to the factual situation presented for consideration.  "A concrete factual situation is

7  necessary to delineate the boundaries of what conduct the government may or may not

8  regulate."  *San Diego County*, 98 F.3d at 1132.  In *Babbitt v. United Farm Workers Nat'l

9  Union*, 442 U.S. 289, 304 (1979), the Supreme Court held that a district court should not

10  have exercised jurisdiction over a claim when it was "impossible to know" whether

11  access provision in state agricultural labor law would be applied in the manner the

12  plaintiffs alleged.  The Court refused to adjudicate the claim based only on a

13  "hypothesi[s] that such an event will come to pass."  *Id.*

14    The reluctance to decide important questions of law based on hypothetical

15  situations springs from the principle that courts do not decide "constitutional questions in

16  a vacuum."  *Alaska Right to Life Political Action Comm. v. Feldman*, 504 F.3d 840, 849

17  (9th Cir. 2007).  There, the Ninth Circuit found that a pre-enforcement challenge to

18  Alaska's Code of Judicial Conduct that presented no "concrete factual situation" was not

19  ripe.  *Id.*  Federal courts are appropriately cautious about "premature adjudication" of

20  questions concerning the constitutionality of a "novel [s]tate Act."  *Arizonans for

21  Official English v. Arizona,* 520 U.S. 43, 79 (1997).

22    The Intervenors' Complaint on speculation and legal theories, but it rests entirely

23  on conjecture rather than a concrete factual situation.  The Intervenors take issue with

24  provisions in the amended or new statutes that authorize state courts to issue injunctions

25  against for certain activities.  *See* SB 1363, §§ 1-2, 8.  What specific conduct might lead

26  to an injunction?  Precisely what conduct is enjoined?  Such information is critical to

27  analyzing the constitutionality of a state court injunction, but it is missing here.

28

1    The Intervenors challenge the provision of SB 1363 that establishes a cause of

2    action for defamation of an employer.  But whatever issue this raises cannot be decided

3    in the abstract.  What is the allegedly defamatory statement?  Is it provably false?  In

4    what context was it made?  Who is the subject of the alleged defamatory statement?

5    These questions are relevant to analyzing a defamation claim, and the resolution of any

6    of them might obviate the need to decide a constitutional issue, if there is one.

7    Moreover, a defamation claim could be brought in state court, where the judges are

8    entirely capable of determining the necessary issues, including any constitutional issue.

9    The Intervenors challenge the provision of SB 1365 that in some situations

10   requires an entity to provide the employer with a statement indicating the maximum

11   percentage of a pay deduction used for political purposes.  The Intervenors allege that

12   they do not know what political purposes are, although they list some of their political

13   activities.  (Doc. 52, ¶ 42.)  They have identified no concrete factual situation to frame a

14   constitutional issue.  *Cf. Lopez*, 630 F.3d at 787 (stating that allegations must be specific

15   enough so that a court need not "speculate as to the kinds of political activity the

16   [plaintiffs] desire to engage in or as to the contents of their proposed public statements or

17   the circumstances of their publication") (quoting *Mitchell*, 330 U.S. at 90).

18   The Intervenors' claims are based on speculation and conjecture.  Withholding

19   consideration until there is an actual, concrete dispute will impose no hardship.  There

20   may never even be such a dispute.  Even if there is, any dispute regarding these state

21   statutes could be heard in state court and the Intervenors or other unions could raise

22   constitutional issues then and there.

23   Also, insofar as the Intervenors seek declaratory relief, the Declaratory Judgment

24   Act provides that a federal court "may declare the rights and other legal relations of any

25   interested party seeking such declaration."  28 U.S.C. § 2201(a).  The statute "confers a

26   discretion on the courts rather than an absolute right upon the litigant."  *Wilton v. Seven*

27   *Falls Co.*, 515 U.S. 277, 287 (1995); *Public Svc. Comm'n v. Wykoff*, 344 U.S. 237, 241

28   (1952).  Emphasizing the discretionary nature of the statute, the Supreme Court held in

*Wilton* that district courts may decline to exercise their discretion to entertain an action "even when the suit otherwise satisfies subject matter jurisdictional prerequisites." 515 U.S. at 282. "The normal principle that federal courts should adjudicate claims within their jurisdiction yields to considerations of practicality and wise judicial administration." *Id.* at 288.

The Court's role "is neither to issue advisory opinions nor to declare rights in hypothetical cases, but to adjudicate live cases or controversies consistent with the powers granted the judiciary in Article III of the Constitution." *Stormans*, 586 F.3d at 1122. Because of its reliance on speculation about contingent events that may never occur, the Intervenors' Complaint fails to establish a real and immediate threat to them or anyone else, and their suit is unripe.

### C.   Even if the Intervenors Have Alleged a Justiciable Controversy, This Action is Partially Barred By the Eleventh Amendment.

Under the Eleventh Amendment, states are generally immune from suit in federal court, regardless of the relief sought. *Seminole Tribe of Fla. v. Florida*, 493 U.S. 44, 58 (1996). Plaintiffs have brought this action against two state officials—Attorney General Horne and Secretary of State Bennett—and one county official. A suit against a state official in his or her official capacity suit is no different from a suit against the State. *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989). *Ex parte Young*, 209 U.S. 123 (1908), provides a narrow exception to Eleventh Amendment immunity for certain suits seeking prospective relief for an ongoing constitutional violation.

Assuming for the sake of argument that the Intervenors have sufficiently alleged a justiciable controversy, this case can proceed against the two state officials only to the limited extent the claims and relief sought fit within the *Young* exception. The *Young* exception requires a "special relation" between the state officer and the challenged statute, such that the officer has some connection with the enforcement of the act. *Confederated Tribes & Bands of Yakama Indian Nation v. Locke*, 176 F.3d 467, 469 (9th Cir. 1999) (citations omitted). The required connection "must be fairly direct; a

1  generalized duty to enforce state law or general supervisory power over the persons

2  responsible for enforcing the challenged provision will not subject an official to suit."

3  *Snoeck v. Brussa*, 153 F.3d 984, 986 (9th Cir. 1998).

4      Attorney General Horne "is responsible under SB 1365 for rulemaking and

5  enforcing the penalty provision."  (Doc. 52, ¶¶ 19, 28.)  But there is no allegation that the

6  Attorney General is responsible for enforcing SB 1363, and nothing in the enactment

7  indicates that he is responsible in carrying it out.  Because there is no "fairly direct

8  connection" between the Attorney General and SB 1363, all claims against Attorney

9  General Horne based on SB 1363 (Claims Eight through Fourteen) should be dismissed.

10  *See Young v. State of Hawaii*, 548 F.Supp.2d 1151, 1164 (D. Hawaii 2008).

11      So far as appears in the complaint, the Secretary of State is given the

12  responsibility by SB 1363 of compiling and distributing a "No Trespass Public Notice

13  List" to law enforcement agencies.  (Doc. 52, ¶¶ 20, 89.)  There is no suggestion that he

14  has any role in carrying out SB 1365.  Consequently, the claims against the Secretary of

15  State should be dismissed to the extent they are based on SB 1365.  The claims based on

16  SB 1363 should also be dismissed except to the extent that they seek prospective relief

17  relating to the preparation of the no-trespass list.

18  **III.    CONCLUSION**

19      For the foregoing reasons, the Complaint in Intervention for Injunctive and

20  Declaratory Relief (doc. 52) should be dismissed.

21      Respectfully submitted this 22nd day of July, 2011.

22                                          Thomas C. Horne
                                            Attorney General
23

24                                           s/Michael K. Goodwin
                                            Michael K. Goodwin
25                                          Assistant Attorney General
                                            Attorneys for Defendant
26

27

28

1   I certify that I electronically
    transmitted the attached document
2   to the Clerk's Office using the
    CM/ECF System for filing and
3   transmittal of a Notice of Electronic
    Filing to the following, if CM/ECF
4   registrants, and mailed a copy of
    same to any non-registrants, this
5   22nd day of July, 2011, to:

6   Andrew J. Kahn
    Elizabeth A. Lawrence
7   Davis Cowell & Bowe LLP
    2401 N. Central Avenue, 2nd Floor
8   Phoenix, Arizona 85004
    Attorneys for Plaintiffs UFCW Local 99,
9   McLaughlin and Colbath

10

11  Gerald Barrett
    Ward, Keenan & Barrett, P.C.
12  3838 N. Central Avenue, Suite 1720
    Phoenix, Arizona 85012
13  Attorneys for Plaintiffs UA Local 469
    and McNally
14
    J. Scott Dutcher
15  Maricopa County Attorney's Office
    Civil Services Division
16  222 N. Central Avenue, Suite 1100
    Phoenix, Arizona 85004
17  Attorneys for Joseph M. Arpaio

18  Jennifer Sung
    Jonathan Weissglass
19  Michael Rubin
    P. Casey Pitts
20  Altshuler Berzon LLP
    177 Post St., Ste. 300
21  San Francisco, California 94108
    Attorneys for Intervenor Plaintiff
22  Local 5 Service Employees International Union

23  Stanley Lubin
    Lubin & Enoch PC
24  349 N. 4th Avenue
    Phoenix, Arizona 85003
25  Attorneys for Intervenor Plaintiff
    Local 5 Service Employees International Union
26

27

28

14

1 | Alice Finn Gartell
Samantha Elizabeth Blevins
2 | Arizona Education Association
345 E. Palm Lane
3 | Phoenix, Arizona 85004
Attorneys for Intervenor Plaintiffs
4 | Arizona Education Association, et al.

5 | Jason Walta
National Education Association
6 | Office of General Counsel
1201 16th St. NW, Ste. 820
7 | Washington, DC 20036-3290
Attorneys for Intervenor Plaintiffs
8 | Arizona Education Association, et al.

9 | Roopali H. Desai
Coppersmith Schermer & Brockelman PLC
10 | 2800 N. Central Avenue, Suite 1200
Phoenix, Arizona 85004
11 | Attorneys for Intervenor Plaintiffs
Arizona Education Association, et al.

12 |

13 | Jessica R. Robinson
AFSCME
14 | 1101 17th St. NW, Ste. 900
Washington, DC 20036
15 | Attorneys for Intervenor Plaintiffs
Local 449 American Federation
16 | of State, County and Municipal
Employees, et al.

17 |

Michael L. Artz
18 | AFL-CIO
1101 17th St. NW, Ste. 900
19 | Washington, DC 20036
Attorneys for Intervenor Plaintiffs
20 | Local 449 American Federation
of State, County and Municipal
21 | Employees, et al.

22 | David J. Strom
American Federation of Teachers
23 | 555 New Jersey Ave. NW
Washington, DC 20001
24 | Attorneys for Intervenor Plaintiff
Arizona Federation of Teachers Union

25 |

26 |  s/Rebecca Warinner
Attorney General Secretary

27 | #2148026

28 |