Thomas C. Horne
Attorney General

Michael K. Goodwin, Bar No. 014446
Assistant Attorney General
1275 W. Washington
Phoenix, Arizona 85007-2997
Telephone: (602) 542-7674
Facsimile: (602) 542-7644
Michael.Goodwin@azag.gov

Attorneys for State Defendants

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| UNITED FOOD & COMMERCIAL WORKERS LOCAL 99, et al., <br><br> Plaintiffs, <br><br> v. <br><br> JAN BREWER, in her official capacity as Governor of the State of Arizona, et al., <br><br> Defendants. | Case No: 2:11-cv-921-PHX-GMS <br><br> **STATE DEFENDANTS' REPLY RE: MOTION TO DISMISS INTERVENORS' COMPLAINT** |

Defendants State of Arizona, Jan Brewer, Tom Horne, Ken Bennett, and Randall Maruca submit this reply memorandum to address several points in the Intervenors' Response. (Doc. 86.)

**I.     Article III Case of Controversy Requirements**

    **A.     Standing Generally**

In a footnote, Intervenors contend that they don't need to meet Article III standing requirements. (Motion at 2, fn. 2.) For this proposition, they cite to a footnote in *California Dep't of Social Servs. v. Thompson*, 321 F.3d 835 (9th Cir. 2003). Despite the footnote in *Thompson*, we do not believe the Ninth Circuit has squarely decided this question. Moreover, it makes no practical difference whether the adequacy of the

1 Intervenors' interests is analyzed under Article III or Rule 24 because under either one,
2 the Intervenors fail to establish a sufficient stake in the litigation.
3       This Court granted the Intervenors' application for permissive intervention
4 pursuant to Fed. R. Civ. P. 24(b).  (Doc. 47.)  Nothing in *Thompson* dispenses with the
5 requirement that intervenors have standing.  The *Thompson* footnote was mere dicta.
6 The *Thompson* panel cited  Fed.R.Civ.P. 24(a) and *Southwest Ctr. for Biological*
7 *Diversity v. Berg*, 268 F.3d. 810, 817 (9th Cir. 2001).  While these authorities state what
8 Rule 24(a) requires for intervention of right, they do not exclude or eliminate the
9 possibility than an intervenor must also have standing.  Rule 17 doesn't mention
10 standing either, yet no one suggests that it excuses *plaintiffs* from having to establish
11 standing.  Our research turned up one other Ninth Circuit case that said standing isn't
12 required for intervention.  *See Flores v. Arizona*, 516 F.3d 1140, 1165 (9th Cir. 2008).
13 But the statement there was also dicta and based solely on the *Thompson* footnote.
14 Additionally, *Flores* was later reversed on other grounds.  *See Horne v. Flores*, 129 S.
15 Ct. 2579 (2009).
16       Most but not all courts that have examined the issue have determined that parties
17 must have standing to intervene.  *See, e.g., United States v. Metropolitan St. Louis Sewer*
18 *Dist.*, 569 F.3d 829, 833-34 (8th Cir. 2009); *Roeder v. Islamic Republic of Iran*, 333 F.3d
19 228, 233 (D.C. Cir. 2003); *United States v. Napper*, 833 F.2d. 1528, 1532 (11th Cir.
20 1989) (concurring opinion commenting that standing is required for both intervention of
21 right and permissive intervention); *but cf. San Juan County v. United States*, 503 F.3d
22 1163, 1172 (10th Cir. 2007) (holding that parties seeking to intervene need not establish
23 standing if another party on same side has standing).  The court in *Roeder* observed that
24 "the matter of standing [to intervene] may be purely academic" and it expressed
25 agreement with a statement by the Seventh Circuit that any person who satisfied Rule
26 24(a) could also meet Article III standing requirements.  *Id.* (citing *Sokaogon Chippewa*
27 *Community v. Babbitt*, 214 F.3d 941, 946 (7th Cir. 2000).  The case law thus makes clear
28 that parties who intervene must have a significant legal interest at stake.

In sum, the requirements for intervention and for standing are, for all practical purposes, the same. The Intervenors have not met those requirements.

**B.     SB 1365**

The Intervenors disingenuously claim that SB 1365 causes injury-in-fact because they "must" incur expenses to change from a payroll deduction system to electronic fund transfers (EFTs) to collect money from employees. (Response at 3.) Their change to a different payment method is voluntary. The Act doesn't require it. The Act calls for entities to provide a statement if they receive a payroll deduction for multiple purposes. A.R.S. § 23-361.02(B). By changing from a payroll deduction system, the Intervenors will not have to provide a statement. They have removed themselves from the Act's coverage.

A party attempting a pre-enforcement challenge must demonstrate that it faces a "genuine threat of imminent prosecution." *Thomas v. Anchorage Equal Rights Comm'n*, 220 F.3d 1134, 1139 (9th Cir. 2000). Intervenors have not made this showing. Indeed, their decision to switch from payroll deductions to EFTs means that they face absolutely no threat of incurring a civil penalty under the Act.

The Intervenors also claim that the Act will chill their speech activities. (Response at 4, 14.) To support this claim, they continue to mischaracterize SB 1365 as a restriction on speech. The Act does not suppress speech. *See Ysursa v. Pocatella Educ. Ass'n*, 555 U.S. 353, 129 S. Ct. 1093, 1098 (2009) (stating that Idaho statute banning payroll deductions for political activities did not abridge unions' speech); *Humanitarian Law Project v. U.S. Treasury Dep't*, 578 F.3d 1133, 1142-43 (9th Cir. 2009) (stating that federal law authorizing President to block transfer of property or services to organizations did not regulate expressive activity). The Intervenors "are free to engage in such speech as they see fit." *See Ysursa*, 129 S. Ct. at 1098. Insofar as they claim their speech will be chilled, such subjective chill is not the equivalent of a well-founded fear of enforcement.

1    For that reason, Intervenors' reliance on *Virginia v. American Booksellers Ass'n*, 484 U.S. 383 (1988), is misplaced. There, a number of booksellers' organizations and bookstores challenged a Virginia statute that made it unlawful to display for commercial purposes material that was harmful to juveniles. The challenged statute thus regulated expression and was "aimed directly at plaintiffs." *Id.* at 392. SB 1365 does not regulate expression and therefore does not furnish a basis for Intervenors to credibly claim their speech will be chilled.

The Intervenors have not shown a constitutionally cognizable injury-in-fact or interest with respect to SB 1365. Even if their voluntary decision to stop using payroll deductions to collect money from members could be called an injury, it is not one that is fairly traceable to the State.

**C.    SB 1363**

Intervenor SEIU Arizona claims it faces a credible threat of prosecution and therefore has standing to challenge SB 1363. (Response at 5.) SEIU Arizona offers the declaration of union official Don Carr, who lists some activities that union members have engaged in over the years. According to Carr, some SEIU janitors were arrested in Houston in 2006. (Carr Decl., ¶ 11.) It's unclear whether those janitors were members of SEIU Arizona, and it's also unclear whether Carr has the requisite personal knowledge to give testimony concerning that and some of the other matters in his declaration. In any case, SEIU Arizona provides no information that any private or public employer in Arizona has actually threatened to take action to enforce any of the statutes encompassed in SB 1363. Consequently, it has not established an injury-in-fact. *See Sacks v. Office of Foreign Assets Control*, 466 F.3d 764 (9th cir. 2006) (dismissing challenge to travel restrictions issues under federal law because plaintiff failed to establish "a specific warning or threat to initiate proceedings").

SEIU Arizona also argues that SB 1363 will chill the union's exercise of First Amendment rights. (Response at 6.) It notes that some provisions of SB 1363 regulate speech, most notably the provision adding A.R.S. § 23-1325, which provides a right of

1. action for defamation of an employer.   But the potential chill on protected First
2. amendment activity stemming from defamation actions is taken into account in the
3. constitutional limitations on the substantive law governing such suits; those concerns
4. should not be injected into the jurisdictional inquiry.  *Jungherr v. San Francisco Unified*
5. *School Dist.*, 923 F.3d 743 (9th Cir. 1991).
6.       SEIU Arizona says that it engages in other activities covered by the statutes in SB
7. 1363 and that the potential penalties provided by the laws will chill its exercise of those
8. activities.  The union notes that there are additional penalties for unlawful activities
9. occurring on property listed on a no trespass public notice list established by the
10. Secretary of State.  (Response at 9, 12.)  But although the Secretary of State has
11. established procedures and forms for being listed, there are no employers on the list at
12. this time.  *See* http://www.azsos.gov/business_services/No_Trespass/ (last visited
13. September 19, 2011).
14.       SEIU Arizona's subjective chill is insufficient to establish the kind of injury or
15. interest required to maintain this action.  *See Laird v. Tatum*, 408 U.S. 1 (1972)
16. (observing that allegations of a subjective 'chill' are not an adequate substitute for a
17. claim of specific present objective harm or a threat of specific future harm).  SEIU
18. Arizona has not demonstrated a realistic danger of sustaining a direct injury as a result of
19. the operation or enforcement of any statute affected by SB 1365.
20. **II.   Prudential Considerations**
21.       The Intervenors contend that their claims require no further factual development,
22. and that the Court can resolve SEIU Arizona's challenge to SB 1363 just by examining
23. the statute.  (Response at 15-16.)  Of course, SB 1363 is not a free-standing statute but
24. rather a piece of legislation that creates several new statutes and amends several existing
25. statutes.   To the extent Intervenors are attempting a facial challenge to the statutes
26. encompassed in SB 1363, they "must establish that no set of circumstances exists under
27. which the [laws] could be valid."  *United States v. Salerno*, 481 U.S. 739, 745 (1987).
28. They have not explained how these laws are unconstitutional in every application.  More

to the point, they have given no persuasive reason why this Court should weigh in on the constitutionality of twelve statutes in the absence of a concrete controversy regarding any of them.

Intervenors say that the Court should decide the constitutionality of the employer-defamation statute in particular before any defamation action is filed. But any constitutional issues could be raised as a defense to a claim of defamation of an employer, should such a claim be brought. *See Gritchen v. Collier*, 254 F.3d 807, 811-12 (9th Cir. 2001) (dismissing action challenging defamation-of-peace-officer statute for lack of jurisdiction and suggesting that constitutional arguments should be asserted as a defense in defamation lawsuit). Similarly, any concerns that protected First Amendment activities might be improperly enjoined pursuant to A.R.S. § 12-1809 could be raised in the injunction proceedings. The Arizona Court of Appeals has already said that § 12-1809 should be construed in harmony with free speech. *Lefaro v. Cahill*, 203 Ariz. 482, 488-89, ¶¶ 21-23, 56 F.3d 56, 62-63 (App. 2002). That admonition was given before the adoption of SB 1363, but there is no reason to believe that courts would fail to follow it today when deciding whether to grant injunctive relief.

Any attempt to decide the constitutional issues raised by the Intervenors at this point would be premature. Determination of those issues should wait until such time as specific, concrete controversies arise regarding the application of specific statutes. Federal courts should not issue advisory opinions. *See Golden v. Zwickler*, 394 U.S. 103, 108 (1969) (dismissing challenge to state law regulating distribution of campaign literature because there was no controversy of sufficient immediacy and reality).

### III. Eleventh Amendment

The Intervenors acknowledge that their suit is directed only at Attorney General Horne and Secretary of State Bennett. They argue that the Eleventh Amendment poses no bar because Horne and Bennett have fairly direct connections to the challenged laws. (Response at 17.) It is true that the Attorney General is responsible for enforcing the statute created by SB 1365. *See* A.R.S. § 23-361.02(D). The Attorney General's role

with respect to SB 1363 is far more limited.  Intervenors note that the Attorney General is responsible for recovering criminal fines levied pursuant to A.R.S. § 23-1324, as amended by § 7 of SB 1363.  Such fines may be levied for violations of the unlawful picketing provision of A.R.S. § 23-1322(B), unlawful mass assembly as set forth in A.R.S. § 23-1327, or trespassory assembly as set forth in A.R.S. § 23-1328.  To the extent the Intervenors seek relief against the Attorney General regarding anything else in SB 1363, their suit is barred by the Eleventh Amendment.

The Intervenors acknowledge that the Secretary of State has responsibilities only with respect to A.R.S. § 23-1326, one of the statutes added by SB 1363.  To the extent the Intervenors seek relief against the Secretary of State regarding anything else in SB 1363, their suit is barred by the Eleventh Amendment.

Respectfully submitted this 20th day of September, 2011.

Thomas C. Horne
Attorney General

s/Michael K. Goodwin
Michael K. Goodwin
Assistant Attorney General
Attorneys for State Defendants

I certify that I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following, if CM/ECF registrants, and mailed a copy of same to any non-registrants, this 20th day of September, 2011, to:

Andrew J. Kahn
Elizabeth A. Lawrence
Davis Cowell & Bowe LLP
2401 N. Central Avenue, 2nd Floor
Phoenix, Arizona 85004
Attorneys for Plaintiffs UFCW Local 99, McLaughlin and Colbath

7

| | |
|---|---|
| 1 | Gerald Barrett |
| | Ward, Keenan & Barrett, P.C. |
| 2 | 3838 N. Central Avenue, Suite 1720 |
| | Phoenix, Arizona 85012 |
| 3 | Attorneys for Plaintiffs UA Local 469 |
| | and McNally |
| 4 | |
| | Jennifer Sung |
| 5 | Jonathan Weissglass |
| | Michael Rubin |
| 6 | P. Casey Pitts |
| | Altshuler Berzon LLP |
| 7 | 177 Post St., Ste. 300 |
| | San Francisco, California 94108 |
| 8 | Attorneys for Intervenor Plaintiff |
| | Local 5 Service Employees International Union |
| 9 | |
| | Stanley Lubin |
| 10 | Lubin & Enoch PC |
| | 349 N. 4th Avenue |
| 11 | Phoenix, Arizona 85003 |
| | Attorneys for Intervenor Plaintiff |
| 12 | Local 5 Service Employees International Union |
| 13 | Samantha Elizabeth Blevins |
| | Arizona Education Association |
| 14 | 345 E. Palm Lane |
| | Phoenix, Arizona 85004 |
| 15 | Attorneys for Intervenor Plaintiffs |
| | Arizona Education Association, et al. |
| 16 | |
| | Jason Walta |
| 17 | National Education Association |
| | Office of General Counsel |
| 18 | 1201 16th St. NW, Ste. 820 |
| | Washington, DC 20036-3290 |
| 19 | Attorneys for Intervenor Plaintiffs |
| | Arizona Education Association, et al. |
| 20 | |
| | Roopali H. Desai |
| 21 | Coppersmith Schermer & Brockelman PLC |
| | 2800 N. Central Avenue, Suite 1200 |
| 22 | Phoenix, Arizona 85004 |
| | Attorneys for Intervenor Plaintiffs |
| 23 | Arizona Education Association, et al. |
| 24 | Jessica R. Robinson |
| | AFSCME |
| 25 | 1101 17th St. NW, Ste. 900 |
| | Washington, DC 20036 |
| 26 | Attorneys for Intervenor Plaintiffs |
| | Local 449 American Federation |
| 27 | of State, County and Municipal |
| | Employees, et al. |
| 28 | |

8

1  Michael L. Artz
   AFL-CIO
2  1101 17th St. NW, Ste. 900
   Washington, DC 20036
3  Attorneys for Intervenor Plaintiffs
   Local 449 American Federation
4  of State, County and Municipal
   Employees, et al.
5
   David J. Strom
6  American Federation of Teachers
   555 New Jersey Ave. NW
7  Washington, DC 20001
   Attorneys for Intervenor Plaintiff
8  Arizona Federation of Teachers Union

9  J. Scott Dutcher
   Ann Thompson Uglietta
10 Maricopa County Attorney's Office
   Civil Services Division
11 222 N. Central Avenue, Suite 1100
   Phoenix, Arizona 85004
12 Attorneys for Joseph M. Arpaio

13
    s/Rebecca Warinner
14 Attorney General Secretary

15 #2301949

9