1   Andrew J. Kahn (SBN 15835)
2   Elizabeth A. Lawrence (SBN 201537)
    Davis Cowell & Bowe LLP
3   2401 North Central Avenue 2nd Floor
    Phoenix, Arizona 85004
4   Telephone: (800) 622-0641
5   ajk@dcbsf.com
    *Attorneys for Plaintiffs UFCW Local 99,*
6   *McLaughlin, and Colbath*

7   Gerald Barrett (SBN 005855)
    Ward, Keenan & Barrett, P.C.
8   3838 N. Central Avenue, Suite 1720
    Phoenix, AZ 85012
9   Telephone: (602) 279-1717
10  gbarrett@wardkeenanbarrett.com
    *Attorneys for Plaintiffs UA Local 469,*
11  *McNally, and Rothans*

12  Stanley Lubin (SBN 003074)
    Lubin & Enoch P.C.
13  349 North 4th Avenue
    Phoenix, Arizona  85003-1505
14  Telephone:  (602) 234-0008
15  stan@lubinandenoch.com

    Michael Rubin (*pro hac vice*)
    Jonathan Weissglass (*pro hac vice*)
    Jennifer Sung (SBN 026119)
    P. Casey Pitts (*pro hac vice*)
    Altshuler Berzon LLP
    177 Post Street, Suite 300
    San Francisco, California 94108
    Telephone:  (415) 421-7151
    mrubin@altshulerberzon.com
    jweissglass@altshulerberzon.com
    jsung@altshulerberzon.com
    cpitts@altshulerberzon.com
    *Attorneys for SEIU Local 5*

16
17
## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

18  United Food & Commercial Workers
19  Local 99, *et al.*,

20                            Plaintiffs,

21          - and -

22  Arizona Education Association, *et al.*,

23                   Plaintiff-Intervenors,

24  vs.

25  Janice Brewer, in her capacity as Governor
26  of the State of Arizona, *et al.*,

27                            Defendants.

28

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

No. 2:11-cv-00921-GMS

**PLAINTIFFS' AND PLAINTIFF-INTERVENOR SEIU ARIZONA'S JOINT MOTION FOR PARTIAL SUMMARY JUDGMENT REGARDING SB 1363**

Oral Argument Requested

Accompanying Documents:
Separate Statement of Facts
May 23, 2011 Dec. of James McLaughlin
July 16, 2012 Dec. of James McLaughlin
May 11, 2011 Dec. of Phillip A. McNally
July 17, 2012 Dec. of Phillip A. McNally
July 22, 2011 Dec. of Don Carr
Sept. 1, 2011 Dec. of Don Carr
July 13, 2012 Dec. of Jusztina Traum

1

**TABLE OF CONTENTS**

2    TABLE OF AUTHORITIES ............................................................................iii

3    MEMORANDUM OF POINTS AND AUTHORITIES ...................................... 1

4      INTRODUCTION AND BACKGROUND ............................................ 1

5      ARGUMENT.......................................................................................... 2

6        I.    SB 1363 Is Unconstitutional Because It Is Viewpoint
              Discriminatory ......................................................................... 2

7

8        II.   SB 1363 Imposes Unconstitutional Restrictions On Assembly ........ 8

9             A.    SB 1363's "Unlawful Mass Assembly" Provisions Violate
                    The First Amendment And Due Process ............................... 8

10            B.    SB 1363's "Unlawful Mass Assembly" Provisions Are
                    Preempted By The NLRA ..................................................... 15

11

12            C.    SB 1363's Trespassory Assembly Provision Is
                    Unconstitutional ................................................................... 16

13       III.  SB 1363 Unconstitutionally Restricts Speech About Employers .... 18

14            A.    SB 1363's "Defamation Of Employer" Provision Is
                    Unconstitutional ................................................................... 18

15

16            B.    SB 1363's "Concerted Interference With Lawful Exercise
                    Of Business Activity" Provision Is Unconstitutional............ 20

17       IV.   SB 1363 Unconstitutionally Prohibits Labor Picketing And
              Secondary Boycotts .......................................................................... 21

18

19            A.    SB 1363's Labor Picketing Restrictions Are
                    Unconstitutional ................................................................... 21

20            B.    SB 1363's Secondary Boycott Provisions Are
                    Unconstitutional ................................................................... 25

21

22       V.    The Wage Withholding Revocation Provision Is
              Unconstitutional ................................................................................ 28

23       VI.   SB 1363 Provides Unconstitutional Remedies............................... 29

24            A.    SB 1363 Authorizes Improper Injunctive Relief Without
                    Adequate Procedural Protections .......................................... 30

25

26            B.    The "No Trespass Public Notice List" Provisions Are
                    Unconstitutional ................................................................... 31

27            C.    The Prohibition Against "Publicizing Enjoined Picketing
                    Or Assembly" Is Unconstitutional ........................................ 33

28

i

D.    SB 1363 Is Preempted Because It Provides Remedies Not Available Under The NLRA ..................................................34

VII.    SB 1363 Is An Integrated Scheme That Should Be Enjoined In Its Entirety ................................................................................34

VIII.    Plaintiffs Have Standing To Challenge SB 1363 ............................35

CONCLUSION ................................................................................................35

# TABLE OF AUTHORITIES

## FEDERAL CASES

*A.C.L.U. of Nevada v. City of Las Vegas,*
  466 F.3d 784 (9th Cir. 2006)...............................................................3, 5, 7

*Alexander v. United States,*
  509 U.S. 544 (1993) .....................................................................................30

*American Federation of Labor v. Swing,*
  312 U.S. 321 (1941) .....................................................................................22

*Berger v. City of Seattle,*
  569 F.3d 1029 (9th Cir. 2009) ....................................................................17

*Board of Airport Comm'rs of City of Los Angeles v. Jews for Jesus, Inc.,*
  482 U.S. 569 (1987) .....................................................................................11

*Boddie v. America Broad. Companies, Inc.,*
  881 F.2d 267 (6th Cir. 1989) ......................................................................21

*Boos v. Barry,*
  485 U.S. 312 (1988) .................................................................................8, 24

*Bronson v. Kinzie,*
  42 U.S. 311 (1843) .......................................................................................29

*CBS, Inc. v. Davis,*
  510 U.S. 1315 (1994) ...................................................................................30

*Cal. Pro-Life Council, Inc. v. Getman,*
  328 F.3d 1088 (9th Cir. 2003) ....................................................................35

*Carey v. Brown,*
  447 U.S. 455 (1980) ...........................................................................*passim*

*Carlson v. California,*
  310 U.S. 106 (1940) ..............................................................................5, 7, 27

*Carroll v.  President & Comm'rs of Princess Anne,*
  393 U.S. 175 (1986) ...............................................................................30, 34

*Chamber of Commerce v. Brown,*
  554 U.S. 60 (2008) .......................................................................................15

*Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah,*
  508 U.S. 520 (1993) .......................................................................................7

*Citizens United v. FEC,*
  130 S.Ct. 876 (2010) ..........................................................................*passim*

*City of Ladue v. Gilleo,*
  512 U.S. 43 (1994) ..................................................................................8, 17

iii

*Colautti v. Franklin*,
   439 U.S. 379 (1979) ................................................................................. 9

*Comite de Jornaleros de Redondo Beach v. City of Redondo Beach*,
   657 F.3d 936 (9th Cir. 2011) ...........................................................2, 8-9, 23

*Cox v. Louisiana*,
   379 U.S. 536 (1965) ....................................................................... 12, 14, 19

*Curtis Publ'g Co. v. Butts*,
   388 U.S. 130 (1967) ................................................................................ 19

*Dombrowski v. Pfister*,
   380 U.S. 479 (1965) ................................................................................ 35

*Eastern R.R. Presidents Conference v. Noerr Motor Freight, Inc.*,
   365 U.S. 127 (1961) ................................................................................ 13

*Edwards v. South Carolina*,
   372 U.S. 229 (1963) ................................................................................ 14

*Energy Reserves Group, Inc. v. Kansas Power & Light Co.*,
   459 U.S. 400 (1983) ................................................................................ 29

*First Healthcare Corp. v. N.L.R.B.*,
   344 F.3d 523 (6th Cir. 2003) .................................................................... 32

*Freedman v. Maryland*,
   380 U.S. 51 (1965) ................................................................................. 30

*Freightliner Market Development Corp. v. Silver Wheel Freightlines, Inc.*,
   823 F.2d 362 (9th Cir. 1987)..................................................................... 13

*Gertz v. Robert Welch, Inc.*,
   418 U.S. 323 (1974) ................................................................................ 19

*Golden State Transit Corp. v. Los Angeles*,
   475 U.S. 608 (1986) ............................................................................ 23, 28

*Gooding v. Wilson*,
   405 U.S. 518 (1978) ............................................................................ 13, 18

*Grayned v. City of Rockford*,
   408 U.S. 104 (1972) ................................................................................. 9

*Grove Press Inc. v. City of Philadelphia*,
   418 F.2d 82 (3d Cir. 1969) ..................................................................... 14, 31

*HRPT Properties Trust v. Lingle*,
   715 F.Supp.2d 1115 (D. Haw. 2010) .......................................................... 29

*Hoffman Estates v. Flipside, Hoffman Estates, Inc.*,
   455 U.S. 489 (1982) ................................................................................. 9

iv

*Houston v. Hill,*
    482 U.S. 451 (1987) ........................................................................... 15

*Human Life of Wash. Inc. v. Brumsickle,*
    624 F.3d 990 (9th Cir. 2010) ........................................................... 35

*Klein v. City of San Clemente,*
    584 F.3d 1196 (9th Cir. 2009) .................................................... 12, 17

*Kolender v. Lawson,*
    461 U.S. 352 (1983) ............................................................................ 9

*LSO, Ltd., v. Stroh,*
    205 F.3d 1146 (9th Cir. 2000) ......................................................... 35

*Letter Carriers v. Austin,*
    418 U.S. 264 (1974) ......................................................................... 20

*Lewis v. City of New Orleans,*
    415 U.S. 130 (1974) ......................................................................... 13

*Linn v. Plant Guard Workers,*
    383 U.S. 53 (1966) ........................................................................... 20

*Local 20, Teamsters, Chauffeurs and Helpers Union v. Morton,*
    377 U.S. 252 (1964) ............................................................. 27, 28, 34

*Lucile Salter Packard Children's Hospital v. NLRB,*
    97 F.3d 583 (D.C. Cir. 1996) .......................................................... 32

*Machinists v. Wisconsin Employment Relations Comm'n,*
    427 U.S. 132 (1976) ......................................................................... 15

*Matthews v. Eldridge,*
    424 U.S. 319 (1976) ......................................................................... 33

*Metheney v. Monarch Rubber Co.,*
    43 F.Supp.2d 588 (S.D. W.Va. 1999) ............................................... 3

*Moss v. U.S. Secret Serv.,*
    675 F.3d 1213 (9th Cir. 2012) ................................................... 1, 3, 7

*NAACP v. Claiborne Hardware,*
    458 U.S. 886 (1982) ......................................................................... 10

*N.L.R.B. v. City Disposal System,*
    465 U.S. 822 (1984) ......................................................................... 15

*N.L.R.B. v. Fruit and Vegetable Packers and Warehouseman, L. 760,*
    377 U.S. 58 (1964) ..................................................................... 24, 27

*N.L.R.B. v. Servette, Inc.,*
    377 U.S. 46 (1964) ........................................................................... 27

v

*NLRB v. Unbelievable, Inc.*,
    71 F.3d 1434 (9th Cir. 1995) ...................................................................................... 32

*NLRB v. Villa Avila*,
    673 F.2d 281 (9th Cir. 1982) ...................................................................................... 32

*Near v. Minnesota*,
    283 U.S. 697 (1931) ...................................................................................................... 30

*New York Times Co. v. Sullivan*,
    376 U.S. 254 (1964) ................................................................................................. 18, 19

*Organization for a Better Austin v. Keefe*,
    402 U.S. 415 (1971) ........................................................................................... 13, 27, 30

*Pleasant Grove City v. Summum*,
    555 U.S. 460 (2009) ...................................................................................................... 17

*Police Department of Chicago v. Mosley*,
    408 U.S. 92 (1972) ................................................................................................*passim*

*R.A.V. v. St. Paul*,
    505 U.S. 377 (1992) ..............................................................................................*passim*

*Rubin v. City of Santa Monica*,
    823 F.Supp. 709 (C.D. Cal. 1993) ............................................................................... 14

*S. Illinois Laborers Dist. Council of Laborers Int'l Union of N. Am. v. Special Mine Services, Inc.*,
    754 F.Supp. 645 (S.D. Ill. 1990) .................................................................................... 3

*Sammartano v. First Judicial District Court*,
    303 F.3d 959 (9th Cir. 2002) ......................................................................................... 4

*San Diego Building Trades Council v. Garmon*,
    359 U.S. 236 (1959) ................................................................................................. 15, 23

*SeaPak v. Industrial, Technical and Professional Employees*,
    300 F.Supp. 1197 (S.D. Ga. 1969) ............................................................................... 28

*Simon & Schuster, Inc. v. New York State Crime Victims Board*,
    502 U.S. 105 (1991) ........................................................................................................ 5

*Smart v. Local 702 International Brotherhood of Electric Workers*,
    562 F.3d 798 (7th Cir. 2009) ....................................................................................... 27

*Smith v. Goguen*,
    415 U.S. 566 (1974) ................................................................................................... 9, 15

*Snyder v. Phelps*,
    131 S.Ct. 1207 (2011) ................................................................................................ 8, 13

*Sorrell v. IMS Health Inc.*,
    131 S.Ct. 2653 (2011) ................................................................................................... 17

vi

*Southeastern Promotions, Ltd. v. Conrad*,
   420 U.S. 546 (1975) ................................................................................ 31

*Thomas v. Collins*,
   323 U.S. 516 (1945) .......................................................................... 2, 23

*Thornhill v. Alabama*,
   310 U.S. 88 (1940) ........................................................................*passim*

*Toledo Area AFL-CIO Council v. Pizza*,
   154 F.3d 307 (6th Cir. 1998) ................................................................. 29

*U.S. Trust Co. of New York v. New Jersey*,
   431 U.S. 1 (1997) .................................................................................. 29

*United States v. Alvarez*,
   617 F.3d 1198 (9th Cir. 2010) ................................................... 18, 19, 20

*United States v. Baranski*,
   484 F.2d 556 (7th Cir. 1973) ................................................................. 10

*United States v. Cassel*,
   408 F.3d 622 (9th Cir. 2005) .................................................................. 11

*Vance v. Universal Amusement Co., Inc.*,
   445 U.S. 308 (1980) .............................................................................. 31

*Weber v. Anheuser-Busch, Inc.*,
   348 U.S. 468 (1955) .............................................................................. 34

*Wisconsin Department of Industrial, Labor & Human Relations v. Gould Inc.*,
   475 U.S. 282 (1986) .............................................................................. 34

*Wurtz v. Risley*,
   719 F.2d 1438 (9th Cir. 1983) .........................................................*passim*

**STATE CASES**

*Baldwin v. Arizona Flame Restaurant, Inc.*,
   82 Ariz. 385 (1957) ........................................................................... 6, 22

*Cohen v. State*,
   121 Ariz. 6 (1978) ................................................................................. 35

*Hotel & Restaurant Employees Union v. Anaheim Operating, Inc.*,
   82 Cal.App.3d 737 (Cal. Ct. App. 1978) ................................................. 3

*Millett v. Frohmiller*,
   66 Ariz. 339 (1948) ............................................................................... 34

*O'Hara v. Lance*,
   77 Ariz. 84, 87 (1954) .......................................................................... 22

*Peagler v. Phoenix Newspapers, Inc.*,
   114 Ariz. 309 (1977) ............................................................................. 19

*Ruiz v. Hull,*
    191 Ariz. 441 (1998)................................................................34

*State Comp. Fund v. Symington,*
    174 Ariz. 188 (1993)................................................................34

*State v. Barr,*
    183 Ariz. 434 (1995)................................................................16

*State v. Machholz,*
    574 N.W.2d 415 (Minn. 1998) ...................................................14

*State v. Steiger,*
    162 Ariz. 138 (1989) .........................................................*passim*

**FEDERAL STATUTES AND RULES**

29 U.S.C. §157..........................................................................15

29 U.S.C. §158 ....................................................................24, 34

29 U.S.C. §159.........................................................................24

29 U.S.C. 186.........................................................................28

Fed. R. Civ. P. 56 ..................................................................1, 2

**STATE STATUTES**

A.R.S. §12-1809 ………………………………………………...7, 16, 22, 25, 30

A.R.S. §12-1810....…………………………………….......7, 16, 19, 22, 25, 30

A.R.S. §13-105 ………………………………………………………..……12

A.R.S. §13-202 …………………………………………………….......…9

A.R.S. §13-802 ………………………………………………………....……16

A.R.S. §13-1502………………………………………………………………16

A.R.S. §13-1503………………………………………………………………16

A.R.S. §13-1504……………………………………………………....………16

A.R.S. §23-352…………………………………………………...……………28

A.R.S. §23-1321 ……………………………………………....…1, 5, 7, 16, 18, 20, 25

A.R.S. §23-1322……………………………………………..…………1. 5, 18, 21, 22

A.R.S. §23-1323………………………………………………..…1, 16, 20, 22, 25, 30

A.R.S. §23-1324…………………………………………………..……………1, 16, 22, 25

A.R.S. §23-1325…………………………………………………..…….4, 18, 30

A.R.S. §23-1326…………………………………………………..…….4, 18, 31

A.R.S. §23-1327…………………………………………………….8, 11, 12, 14

A.R.S. §23-1328……………………………………………………………...16

A.R.S. §23-1329……………………………………………………………..33

## MISCELLANEOUS

U.C.C. §9-102........................................................................................13

Pursuant to Fed. R. Civ. P. 56, Plaintiffs and Plaintiff-Intervenor SEIU Arizona (collectively "Plaintiffs") hereby move for partial summary judgment declaring Arizona Senate Bill 1363 ("SB 1363") and each of its provisions unconstitutional and permanently enjoining their enforcement.

## MEMORANDUM OF POINTS AND AUTHORITIES

### INTRODUCTION AND BACKGROUND

SB 1363, like Senate Bill 1365, which is the subject of a separate motion, directly interferes with Plaintiff unions' and their members' First Amendment freedoms of speech and assembly.  As one of SB 1363's principal sponsors explained, the law was enacted to "protect employers" by ensuring that a person's "rights to assemble and rights to free speech don't interfere with the standard conduction [sic] of businesses . . . ."  SF 8-9.[1]  SB 1363 accomplishes this unconstitutional objective by creating or expanding causes of action such as "unlawful mass assembly," "trespassory assembly," "unlawful picketing," and "defamation of an employer," most of which expressly protect only "employers" or "place[s] of employment" and discriminate on their face against "labor organizations."  SB 1363, Secs. 4-5, 8.  Those who violate SB 1363's First Amendment restrictions are subject to both criminal and civil liabilities, including punitive damages and *ex parte* injunctions.  SB 1363, Secs. 1-2, 6-7.  Pre-existing, neutral law was more than adequate to address any legitimate issue.  SB 1363 impermissibly "favor[s] . . . one side of a public debate" (employers) by "suppress[ing]" the viewpoint of the other (labor), and is constitutionally invalid.  *Moss v. U.S. Secret Serv.*, 675 F.3d 1213, 1223-24 (9th Cir. 2012).[2]

Although SB 1363's viewpoint discriminatory purpose is itself fatal to the law's survival, most of SB 1363's restrictions on expression are facially invalid for many other reasons as well: under the First Amendment, the Equal Protection and Due Process Clauses, the Supremacy Clause, and the Contract Clause.

---

[1] Citations to numbered paragraphs in Plaintiffs' concurrently-filed Separate Statement of Facts are abbreviated "SF" followed by the paragraph number.

[2] Plaintiffs also challenge the pre-existing portions of A.R.S. §§23-1321 – 23-1324.

1    Plaintiffs, like other labor organizations, exist to represent the viewpoint of

2    employees.  Their continued ability freely to exercise First Amendment rights is critical to

3    fulfilling this role.  Plaintiffs and their members engage in a wide range of speech,

4    assembly, and petitioning regarding an equally wide range of public issues – from

5    distributing handbills to publicize an employer's unfair practices, to demonstrating about

6    broad public policy issues.  SF 10-25, 29-34.  Because SB 1363 "facially discriminates

7    against [Plaintiffs'] speech activity," Plaintiffs have standing to challenge it.  Order

8    Denying Mot. to Dismiss at 5-6 (Oct. 11, 2011) (Doc. 100) ("Dismiss Order").

9                                    **ARGUMENT**

10    To grant summary judgment, the Court must determine for each issue whether the

11    evidence, considered in the light most favorable to the non-moving party, demonstrates that

12    "there is no genuine issue as to any material fact, and the mov[ing party] is entitled to a

13    judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see also Comite de Jornaleros de*

14    *Redondo Beach v. City of Redondo Beach*, 657 F.3d 936, 942 (9th Cir. 2011) (en banc).

15    Plaintiffs are entitled to summary judgment for the many reasons set forth below.

16    **I.    SB 1363 Is Unconstitutional Because It Is Viewpoint Discriminatory**

17    1.    SB 1363 expressly restricts core First Amendment rights of speech and

18    assembly.  It is "in our tradition to allow the widest room for discussion, the narrowest

19    range for its restriction, particularly when this right [of free speech] is exercised in

20    conjunction with peaceable assembly."  *Thomas v. Collins*, 323 U.S. 516, 530 (1945).

21    "When the Government restricts speech, the Government bears the burden of proving the

22    constitutionality of its actions."  *Comite*, 657 F.3d at 944 (quotation omitted).

23    Arizona can come nowhere close to meeting its burden to justify a law that expressly

24    seeks to suppress the viewpoint of labor.  "[T]he First Amendment stands against attempts

25    to disfavor certain subjects or viewpoints.  Prohibited, too, are restrictions distinguishing

26    among different speakers . . . ."  *Citizens United v. FEC*, 130 S. Ct. 876, 898-89 (2010)

27    (citations omitted).

28    "A restriction on speech is viewpoint-based if (1) on its face, it distinguishes

2

1   between types of speech or speakers based on the viewpoint expressed; or (2) though

2   neutral on its face, the regulation is motivated by the desire to suppress a particular

3   viewpoint." *Moss*, 675 F.3d at 1224.  Even a facially neutral statute violates the First

4   Amendment if, as here, "the main purpose in enacting it was to suppress or exalt speech of

5   a certain content" or viewpoint.  *A.C.L.U. of Nevada v. City of Las Vegas*, 466 F.3d 784,

6   793 (9th Cir. 2006).

7          2.     SB 1363's purpose was to favor employers by suppressing the viewpoint of

8   labor.  SB 1363's reference title is: "employer protections; labor relations."  SF 4.  Senator

9   Frank Antenori, a principal sponsor, explained that the purpose of the bill was "to protect

10  employers."  SF 9.  Indeed, Senator Antenori admitted that SB 1363 was enacted to ensure

11  that "those rights to assemble and rights to free speech don't interfere with the standard

12  conduction [sic] of businesses . . . ."  SF 8.  He described SB 1363 as "creat[ing] sort of a

13  buffer between people that are on strike and then people with regard to the business that is

14  trying to continue their business while [they're] negotiating with those people that are

15  collectively bargaining on behalf of labor organizations."  SF 8.[3]

16         The express purpose of SB 1363 is to protect only employers – even though *both*

17  employers and employee advocates engage in heated speech and expressive activities in the

18  context of labor disputes.  *See, e.g.*, SF 26-28 (describing Arizona employers' anti-union

19  speech and assembly); *Metheney v. Monarch Rubber Co.*, 43 F.Supp.2d 588, 589 (S.D.

20  W.Va. 1999) (defamation suit against employer); *S. Illinois Laborers Dist. Council of*

21  *Laborers Int'l Union of N. Am. v. Special Mine Services, Inc.*, 754 F.Supp. 645 (S.D. Ill.

22  1990) (same); *Hotel & Rest. Employees Union v. Anaheim Operating, Inc.*, 82 Cal.App.3d

23  737, 740-741 (Cal. Ct. App. 1978) (same).

24         In accord with the Legislature's intent, many of SB 1363's provisions discriminate

25  _____

26  [3] SB 1363 was drafted by the Arizona Chamber of Commerce and the Arizona
    Manufacturers Council.  SF 5.  Marcus Osborn, a representative of the Arizona Chamber of
    Commerce, explained to the Arizona Senate's Commerce and Energy Committee that SB
27  1363 "was really important for the Chamber" because it anticipated an increase "in the risk
    for inappropriate union organizing behavior."  SF 7.

28

1    on their face in favor of employers and against the viewpoint of labor.

2        a.    SB 1363's trespassory assembly provision applies heightened criminal and

3    civil sanctions only to "a labor organization or individual or group that acts on behalf of

4    employees" and trespasses while exercising its right of assembly.  *See* SB 1363, Sec. 8

5    (A.R.S. §23-1328).  Singling out those who act "on behalf of employees" and subjecting

6    them to harsher criminal and civil penalties than others who assemble and trespass in the

7    exact same manner facially disfavors pro-employee viewpoints.  For example, where two

8    groups are assembling on employer property, and one is advocating on behalf of employees

9    while the other is demonstrating in support of the employer, under SB 1363, only the pro-

10   employee group may be punished for trespassory assembly.

11       Section 23-1328 is also viewpoint discriminatory because it targets a group that "is

12   itself a subcategory of a larger subject-matter category . . . that is the appropriate level of

13   generality."  *Sammartano v. First Judicial District Court*, 303 F.3d 959, 971 (9th Cir.

14   2002).  Here, the appropriate level of generality is, at a minimum, all who trespass on an

15   employer's property in the course of exercising the right of assembly (if not all who

16   trespass, regardless of whether they are exercising their right of "assembly").  But §23-

17   1328 punishes only labor organizations and others who advocate on behalf of employees –

18   not civil rights activists engaging in a sit-in at a restaurant, students occupying a college

19   building, or anti-abortion advocates protesting on the property of an abortion clinic.

20       SB 1363's "no trespass public notice list" provision is viewpoint discriminatory for

21   the same reasons: on its face, it protects only "employer" property, while restricting

22   assembly by only "any labor organization or individual or groups of individuals acting on

23   employees' behalf."  SB 1363, Sec. 8 (A.R.S. §23-1326).

24       b.    SB 1363's "defamation of an employer" provision is also viewpoint

25   discriminatory on its face.  SB 1363, Sec. 8 (A.R.S. §23-1325).  Section 23-1325 punishes

26   only speech *about employers*; it does nothing to protect *employees* from defamatory speech

27   *by* employers.  Further, this provision restricts only *defamation* about an employer, that is,

28   speech that is *critical* of an employer.  A positive statement about an employer – even if

1    false – does not damage the employer, and thus, by definition, is not defamatory.

2         c.    SB 1363 incorporates the A.R.S. §23-1321(4) secondary boycott prohibition,

3    which facially discriminates against the viewpoint of labor (SB 1363, Sec. 4), and expands

4    the applicable remedies and penalties (SB 1363, Secs. 1-2, 6-7).  Section 23-1321(4)

5    expressly prohibits boycotting one entity because another entity "uses goods, materials or

6    services considered objectionable by a labor organization."  This, for example, prohibits a

7    boycott of Apple products because a labor union objects to an Apple contractor's use of

8    hazardous chemicals that endanger the health of its employees.  But §23-1321(4) permits

9    the same exact boycott of Apple products if it is promoted by an environmental group.[4]

10        d.    Other provisions of SB 1363 facially restrict First Amendment expression

11   based on content or speaker identity.  Any restriction on First Amendment expression that

12   distinguishes between labor and other subjects or speakers is, at a minimum, content- or

13   speaker-based.  *See, e.g.*, *Carlson v. California*, 310 U.S. 106, 112-13 (1940) (striking

14   down picketing ban that applied only to labor disputes); *Carey v. Brown*, 447 U.S. 455,

15   460-61 (1980) (striking down picketing ban that exempted only labor disputes); *Police

16   Dept. of Chicago v. Mosley*, 408 U.S. 92 (1972) (same); *Citizens United*, 130 S. Ct. at 887-

17   88, 899 (striking down restrictions applying only to corporations and unions).  Even if they

18   are not viewpoint discriminatory on their face, SB 1363's content- and speaker-based

19   restrictions "raise[] the specter" that SB 1363 was aimed at "driv[ing] certain ideas or

20   viewpoints from the marketplace," *Simon & Schuster, Inc. v. New York State Crime Victims

21   Bd.*, 502 U. S. 105, 116 (1991), and in their "practical operation," they "go[] even beyond

22   mere content discrimination, to actual viewpoint discrimination."  *R.A.V. v. St. Paul*, 505

23   U.S. 377, 391 (1992).

24        For example, SB 1363 expands restrictions against "picketing" by "labor

25   organizations."  *See* SB 1363, Sec. 5 (enhancing penalties for A.R.S. §23-1322(A) and

26   adding §23-1322(B)).  Like the picketing statutes held to be unconstitutional in *Carlson*,

27   _____
     [4] Section 23-1321(4) itself falls because it is viewpoint discriminatory on its face.  *A.C.L.U.
28   of Nevada*, 466 F.3d at 793.

1  *Carey*, and *Mosley*, §23-1322 impermissibly "discriminates . . . based upon the content of

2  the demonstrator's communication" by distinguishing between "'peaceful picketing of a

3  place of employment involved in a labor dispute'" and all other picketing.  *Carey*, 447 U.S.

4  at 460-61.  And, because §23-1322 restricts picketing by labor organizations – but not other

5  organizations – it also impermissibly discriminates "among different users of the same

6  medium of expression."  *Mosley*, 408 U.S. at 96.

7        Indeed, §23-1322(A) goes further than the statutes struck down in these cases.  It

8  prohibits a labor organization from picketing an employer regarding public issues such as

9  the employer's environmental record; its treatment of consumers; or its stance on policy

10  matters such as financial reform.  Any other organization may picket to express its views on

11  those topics.[5]  Similarly, §23-1322(B) prohibits labor organizations from picketing for the

12  purpose of persuading employers or self-employed persons to "join or contribute to a labor

13  organization."  For example, a labor organization is prohibited from picketing a trucking

14  company that uses self-employed drivers with signs stating that the company's pay is below

15  union standards and encouraging the drivers to unionize.

16        e.      The Legislature described SB 1363 as an act relating to "employer

17  protections" and "labor relations."  SF 4.  All of SB 1363's substantive restrictions on

18  speech and assembly are codified in Title 23, "Labor"; Chapter 8, "Labor Relations"; and

19  Article 2, "Picketing and Secondary Boycotts."  Sections 23-1325(C) and 23-1323(B) also

20  expressly single out "labor organizations" for agency liability.  When viewed in this

21  context, even those restrictions that use more generally applicable language are aimed at

22  restricting labor organizations' First Amendment rights and the viewpoints they express.

23        For example, the unlawful mass assembly provision may be violated by "any

24  person," but is codified in the title that pertains to "Labor."  SB 1363, Sec. 8 (§23-1327).

25  Moreover, §23-1327(A)(1) prohibits only assembly that hinders the pursuit of "lawful work

26  or employment," and §23-1327(A)(2) applies only to "entrance to or egress from any place

27  _____

28  [5] Section 23-1322(A) itself falls because it is facially content- and speaker-based.  It is also
   overbroad.  *Baldwin v. Arizona Flame Restaurant, Inc.*, 82 Ariz. 385, 390-91 (1957).

of employment."  Thus, "in its practical operation," *R.A.V.*, 505 U.S. at 378, this provision suppresses labor's viewpoint.  *See Carlson*, 310 U.S. at 109-12 (finding similar statute impermissibly aimed at labor); *Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 533-40 (1993) (facially neutral law's effect "in its real operation" is "strong evidence" of discriminatory object).  SB1363's prohibition against "concerted interference with lawful exercise of business activity" similarly is codified in the "Labor" title and expressly protects only "employer[s]."  SB 1363, Sec. 4 (A.R.S. §23-1321(1)).

As explained by a representative for the Arizona Chamber of Commerce and the Arizona Manufacturers Council (the drafters of SB 1363), they "also beef[ed] up [Arizona's] injunctive relief statutes in terms of illegal union organizing activities."  SF 6.  For example, SB 1363 enables employers to obtain *ex parte* injunctions against labor organizations under A.R.S. §§12-1809 and 12-1810, by amending the definition of "harassment" to include "unlawful picketing, trespassory assembly, unlawful mass assembly, concerted interference with lawful exercise of business activity," "engaging in a secondary boycott . . . and defamation."  SB 1363, Sec. 1 (A.R.S. §12-1809(R)), Sec. 2 (A.R.S. §12-1810(R)(2)).  Most of those predicate offenses can be violated only by labor unions or others acting on behalf of employees, or by definition relate to labor disputes.

3.    SB 1363 as a whole is viewpoint-based because it was "motivated by the desire to suppress a particular viewpoint."  *Moss*, 675 F.3d at 1224.  This motive is established by SB 1363's many provisions that facially discriminate against labor and employee advocates (which are prohibited regardless of the Legislature's actual motive, *A.C.L.U. of Nevada*, 466 F.3d at 793), as well as its substantial over- and under-breadth, its practical operation, and its legislative history.  *See Lukumi*, 508 U.S. at 533-40 (striking down series of facially neutral ordinances enacted for discriminatory motive).  Because SB 1363 was motivated by viewpoint discrimination, it should be struck in its entirety.  *Id*. at 539-40.  The Court need not reach the additional reasons why particular sections of SB 1363 are unconstitutional, as set forth below.

## II.     SB 1363 Imposes Unconstitutional Restrictions On Assembly

### A.     SB 1363's "Unlawful Mass Assembly" Provisions Violate The First Amendment And Due Process

1.     SB 1363's prohibition against "unlawful mass assembly," which is defined in five sub-parts, restricts a wide range of speech and expressive activity – not just assembly. *See* SB 1363, Sec. 8 (A.R.S. §23-1327).  Several principles govern the First Amendment and Due Process analysis.

First, because §23-1327 directly restricts speech and assembly – including expression regarding matters of public concern – it "operates at the core of the First Amendment." *Boos v. Barry*, 485 U.S. 312, 318 (1988).  "Labor relations are not matters of mere local or private concern," and "the dissemination of information concerning the facts of a labor dispute must be regarded as within that area of free discussion that is guaranteed by the Constitution." *Thornhill v. Alabama*, 310 U.S. 88, 102-03 (1940).

Speech "at a public place on a matter of public concern . . . is entitled to 'special protection' under the First Amendment." *Snyder v. Phelps*, 131 S. Ct. 1207, 1219 (2011). The Supreme Court has "repeatedly referred to public streets as the archetype of a traditional public forum, noting that time out of mind public streets and sidewalks have been used for public assembly and debate." *Id.* at 1218 (quotation omitted).

Although a government may adopt content-neutral regulations of "the time, place, or manner" of protected speech in a public forum, even laws that restrict only the medium of expression, without content or viewpoint discrimination, pose "a danger . . . to the freedom of speech." *City of Ladue v. Gilleo*, 512 U.S. 43, 55-56 (1994) (striking down ordinance that banned most residential signs).  Such restrictions "'must be narrowly tailored to serve the government's legitimate, content-neutral interests.'" *Comite*, 657 F.3d at 947 (quoting *Ward v. Rock Against Racism*, 491 U.S. 781, 798 (1989)).

Second, a statute that impinges on First Amendment expression may also be unconstitutionally overbroad.  "The overbreadth doctrine exists out of concern that the threat of enforcement of an overbroad law may deter or 'chill' constitutionally protected

1   speech—especially when the overbroad statute imposes criminal sanctions." *Comite*, 657

2   F.3d at 944 (quotation omitted).  A statute that "imposes a direct restriction on protected

3   First Amendment activity" may be "invalidated as overbroad if a substantial number of its

4   applications are unconstitutional, judged in relation to the statute's plainly legitimate

5   sweep." *Id*. at 944 (quotations omitted).  "In making that determination, a court should

6   evaluate the ambiguous as well as the unambiguous scope of the enactment.  To this extent,

7   the vagueness of a law affects overbreadth analysis." *Hoffman Estates v. Flipside, Hoffman*

8   *Estates, Inc.*, 455 U.S. 489, 494 n.6 (1982).

9       Third, "[i]t is a basic principle of due process that an enactment is void for

10   vagueness if its prohibitions are not clearly defined." *Grayned v. City of Rockford*, 408

11   U.S. 104, 108 (1972).  This "doctrine requires that a penal statute define the criminal

12   offense with sufficient definiteness that ordinary people can understand what conduct is

13   prohibited and in a manner that does not encourage arbitrary and discriminatory

14   enforcement." *Kolender v. Lawson*, 461 U.S. 352, 357 (1983).

15       Where a statute "is capable of reaching expression sheltered by the First

16   Amendment, the doctrine demands a greater degree of specificity than in other contexts."

17   *Smith v. Goguen*, 415 U.S. 566, 573 (1974).  Additionally, a criminal statute's "uncertainty

18   is aggravated by the absence of a scienter requirement." *Colautti v. Franklin*, 439 U.S.

19   379, 390 (1979).  Under Arizona law, if a criminal statute does not have an express *mens*

20   *rea* requirement, "no culpable mental state is required for the commission of such offense,

21   and the offense is one of strict liability unless the proscribed conduct necessarily involves a

22   culpable mental state." A.R.S. §13-202(B).

23       2.    Four of the sub-parts of §23-1327 are facially invalid.

24       a.    Section 23-1327(A)(1) provides: "A person shall not . . . hinder or prevent the

25   pursuit of any lawful work or employment by mass assembly, unlawful threats, or force."

26   This provision restricts assembly at all times and places, including in such public forums as

27   streets and sidewalks.  Section 23-1327(A)(1) is overbroad and vague.

28       This provision substantially restricts protected First Amendment expression because

1   persons exercising the right of assembly can cause the prohibited effects by the content of

2   their expression.  They may hinder work by providing others with information regarding an

3   employer's unsafe practices; requesting that they honor a picket line; asking them to

4   participate in a general work stoppage to protest a matter of public concern, such as a war;

5   or successfully petitioning the government to revoke a law-breaking employer's license,

6   and thereby reducing job opportunities with that employer.  *See, e.g.*, *Thornhill*, 310 U.S. at

7   100 & n.17 (petitioner convicted of "hinder[ing] . . . lawful business" because one

8   "employee, after talking with petitioner, refrained from reporting for work").  Because the

9   term "mass" is undefined, this provision may reach assembly of any size greater than one.

10      In *United States v. Baranski*, 484 F.2d 556 (7th Cir. 1973), the Seventh Circuit

11  concluded that a similarly worded statute was unconstitutionally overbroad.  The statute

12  made it a crime for any person to "knowingly hinder or interfere or attempt to do so in any

13  way, by force or violence or otherwise, with the administration of" the Selective Service

14  Act.  *Id.* at 562 (italics omitted).  Because a person could "hinder" the administration of the

15  Act by engaging in protected speech or expressive conduct that persuaded others to avoid

16  the draft, the statute impermissibly "interfere[d] with protected conduct."  *Id.* at 565-66.

17      Because SB 1363's mass assembly provision has no *mens rea* requirement, a group

18  of individuals could violate §23-1327(A)(1) even if they unintentionally or inadvertently

19  hinder others from pursuing work, for instance by engaging in protected assembly in a

20  public forum such as a sidewalk or street (because such assembly could "hinder" some

21  passersby from reaching their intended destination, including employees commuting to

22  their workplaces).

23      Section 23-1327(A)(1)'s restriction on "unlawful threats" contributes to the statute's

24  overbreadth.  Although "true threats" are an unprotected class of speech, "the making of a

25  threat involves expression," *State v. Steiger*, 162 Ariz. 138, 144 (Ariz. 1989), and some

26  threats are protected.  *See, e.g.*, *Wurtz v. Risley*, 719 F.2d 1438, 1442 (9th Cir. 1983)

27  (threats of "boycott[s], . . . sit-ins, marches in the street, mass picketing and other such

28  activities" are protected); *NAACP v. Claiborne Hardware*, 458 U.S. 886, 909-10 (1982)

10

(threats of social ostracism).  "[S]peech may be deemed unprotected by the First Amendment as a 'true threat' only upon proof that the speaker subjectively intended the speech as a threat."  *United States v. Cassel*, 408 F.3d 622, 633 (9th Cir. 2005).

The restriction against threats is therefore overbroad for several reasons.  First, because §23-1327(A)(1) does not have any intent requirement, it is not limited to "true threats."  Second, §23-1327(A)(1) fails to identify the kind of action or consequence that must be threatened.  For example, the restriction is not limited to threats of violence or any other particular harm.  Not all threats are unlawful, and the term "unlawful" gives neither citizens nor law enforcement any guidance as to what kind of threat *is* unlawful.  Third, even assuming that §23-1327(A)(1) reaches only threats to do something that is unlawful, it is facially overbroad under *Wurtz*, 719 F.2d 1438, (law prohibiting threat to "commit any criminal offense" overbroad).

Section 23-1327(A)(1) is also void for vagueness.  The terms "mass assembly," "unlawful threats," and "hinder or prevent" are vague.  This vagueness is not narrowed by any *mens rea* requirement.  Because §23-1327(A)(1) is a criminal statute, and its "literal scope is capable of reaching first amendment expression, the vagueness doctrine demands a greater degree of specificity."  *Steiger*, 162 Ariz. at 142.

b.      A.R.S. §23-1327(A)(3) prohibits a person from "obstruct[ing] or interfer[ing] with the free and uninterrupted use of public roads, streets, highways, railways, airports or other means of travel or conveyance." [6]

This provision is substantially overbroad.  Virtually all assembly "obstructs or interferes" with use of public spaces, and therefore is prohibited under this provision.  Even assembly adjacent to a public street may stop traffic by commanding attention.  And, because §23-1327(A)(3) has no *mens rea* requirement, persons engaged in expressive activity risk violating the statute even if they have no intent to interfere.

---

[6] Places such as airports and railway stations may be public forums, but even if they are not, they cannot be completely closed to First Amendment activity.  *Board of Airport Comm'rs of City of Los Angeles v. Jews for Jesus, Inc.*, 482 U.S. 569 (1987).

1        Because §23-1327(A)(3) essentially bans all assembly in or around public streets, it

2   is not a valid time, place, or manner regulation.  Even assuming that some other public

3   forums remain open to assembly, §23-1327(A)(3) does not "leave open ample alternative

4   channels" for communication, *Klein v. City of San Clemente*, 584 F.3d 1196, 1200-01 (9th

5   Cir. 2009) (quotation omitted), because there are no adequate substitutes for assembly in

6   and about public streets – the archetypal public forum.

7        On its face, §23-1327(A)(3) makes no exceptions to its prohibition on assembly.

8   Even if some exceptions are made in practice, it is an unconstitutional prior restraint,

9   because "[t]he statute itself provides no standards for the determination of local officials as

10  to which assemblies to permit or which to prohibit."  *Cox v. Louisiana*, 379 U.S. 536, 553-

11  58 (1965) (reversing conviction under statute prohibiting "willful" obstruction of "any

12  public sidewalk, street, highway, bridge, alley, road, or other passageway").

13       c.    A.R.S. §23-1327(A)(4) prohibits any person from "us[ing] language or words

14  threatening to do harm to a person or the person's real or intangible property or designed to

15  incite fear in any person attempting to enter or leave any property."  This prohibition is

16  overbroad and vague.  The Ninth Circuit's reasoning in *Wurtz*, which concluded that a

17  Montana statute prohibiting threats to "commit any criminal offense" was facially

18  overbroad, applies equally here.  719 F.2d 1438.  Like the Montana statute, §23-1327(A)(4)

19  is aimed at "pure speech," and is not limited to threats that have a "reasonable tendency to

20  produce in the victim a fear that the threat will be carried out."  *Id.* at 1441.  Nor can §23-

21  1327(A)(4) "be viewed as a traditional condemnation of solicitation to crime" because it

22  punishes "threats communicated for the purpose of inducing action in others that is

23  perfectly lawful," *id.*, such as a threat aimed at persuading an employer to *stop*

24  discriminating on the basis of race.

25       That §23-1327(A)(4) is limited to threats to do harm to a person or real or intangible

26  property "is far from enough to prevent the statute from being overbroad," *id.* at 1442,

27  because it still reaches protected expression.  Arizona defines "intangible property" broadly

28  to encompass anything of value, A.R.S. §13-105(37), including "business goodwill,"

1    *O'Hara v. Lance*, 77 Ariz. 84, 87 (1954), and votes, *Steiger*, 162 Ariz. at 142.  Thus, the

2    provision prohibits statements such as, "'if you don't desegregate this restaurant I am going

3    to organize a boycott,'" which are protected by the First Amendment even if coercive.

4    *Wurtz*, 719 F.2d at 1442; *see also Organization for a Better Austin v. Keefe*, 402 U.S. 415,

5    418-19 (1971) ("*Austin*").

6         Section 23-1327(A)(4) also infringes on the right to petition because intangible

7    property is generally understood to include government licenses and permits.  *See, e.g.*,

8    U.C.C. §9-102(42); *Freightliner Market Dev. Corp. v. Silver Wheel Freightlines, Inc.*, 823

9    F.2d 362, 369 (9th Cir. 1987).  A statement to the effect of "unless you stop engaging in

10   unlawful business practices, I will ask the government to revoke your license," is a threat to

11   intangible property prohibited by SB 1363.  Such statements are protected, even if they are

12   intended to cause economic harm.  *See, e.g.*, *Eastern R.R. Presidents Conference v. Noerr*

13   *Motor Freight, Inc.*, 365 U.S. 127 (1961).

14        Section 23-1327(A)(4)'s prohibition against "language or words . . . designed to

15   incite fear in any person" also reaches substantial protected speech.  Like the laws

16   invalidated as overbroad in *Gooding v. Wilson*, 405 U.S. 518, 520-22 (1978), and *Lewis v.*

17   *City of New Orleans*, 415 U. S. 130 (1974), this provision "punishes only spoken words"

18   and is not limited to those fighting "words which by their very utterance inflict injury or

19   tend to incite an immediate breach of the peace."  *Lewis*, 415 U.S. at 132, 134 (quotation

20   omitted).  Many innocent statements are designed to incite fear, such as warnings of

21   product defects or dangerous workplace conditions.  Political statements are often designed

22   to incite fear regarding the consequences of certain action or inaction by government,

23   voters, or society at large.  *See, e.g.*, *Snyder*, 131 S. Ct. at 1213, 1219 (funeral picketers'

24   signs stating "America is Doomed" and "You're Going to Hell").

25        Because §23-1327(A)(4) "offers no standard . . . to distinguish the permissible from

26   the impermissible," it is also void for vagueness.  *Steiger*, 162 Ariz. at 143.  In *Steiger*, the

27   Arizona Supreme Court, applying the vagueness standard set forth in *Kolender* and *Goguen*

28   (*supra* at 9), invalidated a statute that similarly restricted threats to perform an act "which

1    would not in itself materially benefit the defendant but which is calculated to harm another

2    person with respect to his wealth, safety, business calling, financial condition, reputation or

3    personal relationships." *Steiger*, 162 Ariz. at 139-43.[7]

4            d.    A.R.S. §23-1327(A)(5), which prohibits "assembl[y] other than in a

5    reasonable and peaceful manner," is also impermissibly overbroad and vague. *See Cox*,

6    379 U.S. at 551-52 (invalidating general breach of peace ordinance).

7            "Reasonable" and "peaceful" are vague and broad terms, and the statute provides no

8    context or standards to narrow their reach. *See Grove Press Inc. v. City of Philadelphia*,

9    418 F.2d 82, 88 (3d Cir. 1969) ("[A]s a standard for regulating First Amendment rights,

10   neither 'injury to the public,' nor 'unreasonableness,' standing alone, is sufficiently narrow

11   or precise to pass constitutional muster."). Cases overturning convictions for breach of the

12   peace laws demonstrate the range of protected speech and assembly that some would

13   punish as unreasonable or not peaceful. *See, e.g.*, *Edwards v. South Carolina*, 372 U.S.

14   229, 229-34 (1963) ("listening to a 'religious harangue' . . . and loudly singing 'The Star

15   Spangled Banner' . . . while stamping their feet and clapping their hands"); *Cox*, 379 U.S.

16   at 546-47, 551 ("loud cheering and clapping").

17           e.    SB 1363's "unlawful mass assembly" provisions are not saved by the equally

18   vague exemption language in A.R.S. §23-1327(B), which provides: "This section does not

19   prohibit assembly to the extent that assembly is authorized under the Arizona or federal

20   constitution or federal law." That exception forces ordinary citizens and law enforcement

21   officers to become constitutional scholars just to determine what kind of speech and

22   assembly is *criminally* sanctioned. *See Rubin v. City of Santa Monica*, 823 F.Supp. 709,

23   712-13 (C.D. Cal. 1993) (preliminarily enjoining ordinance exempting "First Amendment

24   Activities"); *State v. Machholz*, 574 N.W.2d 415, 421 n.4 (Minn. 1998) (statute facially

25   overbroad notwithstanding "savings clause that provides that conduct protected by the state

26

27   _____

[7] The Arizona Supreme Court declined to introduce words of limitation to narrow a vague
statute's reach, because to do so "would be to encroach upon the legislature's sole power to

28   determine what acts constitute crimes." *Steiger*, 162 Ariz. at 146.

1    or federal constitutions is not a crime under this section").

2       "As the Court observed over a century ago, '[i]t would certainly be dangerous if the

3 legislature could set a net large enough to catch all possible offenders, and leave it to the

4 courts to step inside and say who could be rightfully detained, and who should be set at

5 large.'" *Houston v. Hill*, 482 U.S. 451, 465-66 (1987) (quoting *United States v. Reese*, 92

6 U.S. 214, 221 (1876)). "Legislatures may not so abdicate their responsibilities for setting

7 the standards of the criminal law." *Goguen*, 415 U.S. at 575.

8      **B.**    **SB 1363's "Unlawful Mass Assembly" Provisions Are Preempted By The**
           **NLRA**

9

10       Courts recognize "two types of pre-emption as necessary to implement federal labor

11 policy." *Chamber of Commerce v. Brown*, 554 U.S. 60, 65 (2008).

12       The first is known as "*Garmon* preemption." *See San Diego Building Trades*

13 *Council v. Garmon*, 359 U.S. 236 (1959). "*Garmon* pre-emption forbids States to regulate

14 activity that the NLRA protects, prohibits, or arguably protects or prohibits." *Brown*, 554

15 U.S. at 65 (quotation omitted). The NLRA explicitly protects the right of all covered

16 employees (not just union-represented employees) to engage in "concerted activities" for

17 their mutual aid or protection. 29 U.S.C. §157. Even a single employee may engage in

18 protected concerted activity if, for example, he or she is acting on behalf of other

19 employees. *N.L.R.B. v. City Disposal System*, 465 U.S. 822, 831-33 (1984).

20       The second type of preemption is known as "*Machinists* preemption." *See*

21 *Machinists v. Wisconsin Employment Relations Comm'n*, 427 U.S. 132, 140 (1976).

22 Because Congress intended to keep employee and employer economic pressure tactics "free

23 of regulation by the States," *Machinists* preemption precludes any state law that

24 "frustrate[s] effective implementation of the [NLRA's bargaining] processes" by

25 "curtail[ing]" the use of such self-help. *Id*. at 141-55.

26       The mass assembly provisions are both *Garmon* and *Machinists* preempted because

27 they restrict speech and expressive activities that are concerted activity and because such

28 "self-help economic" tactics (such as "hindering" work by warning others that an employer

mistreats its employees, "threatening" to do harm to an employer's business goodwill or licensure by informing the public of its unlawful labor practices, or "inciting fear" in others by warning co-workers that if they cross the picket line, the employer will cut their health benefits) are protected from state regulation by the NLRA.

### C.   SB 1363's Trespassory Assembly Provision Is Unconstitutional

"A labor organization or individual or group that acts on behalf of employees" is prohibited from "engag[ing] in trespassory assembly." SB 1363, Sec. 8 (A.R.S. §23-1328). "Trespassory assembly" is "knowingly entering or unlawfully remaining on any property in violation of section 13-1502, 13-1503 or 13-1504," which are Arizona's generally applicable criminal trespass statutes. SB 1363, Sec. 4 (A.R.S. §23-1321(5)). Because these statutes apply to public property, *State v. Barr*, 183 Ariz. 434 (Ariz. Ct. App. 1995), §23-1328 restricts core political speech, such as that of protestors demonstrating at a state capitol building to protest anti-employee legislation.

The criminal penalties for trespassory *assembly* are set forth in SB 1363, Section 7 (A.R.S. §23-1324). Section 23-1324(A) makes violating the trespassory assembly provision a class 2 misdemeanor and subject to a minimum fine of two hundred dollars. If trespassory assembly is committed "at a property listed on the no trespass public notice list," the crime is upgraded to a "class 1 misdemeanor." §23-1324(B). Because *only* labor organizations or others acting "on behalf of employees" are prohibited from engaging in trespassory assembly, only they are subject to these criminal penalties. *Any other person* who engages in the exact same conduct in the exact same place is subject to *lesser* penalties – a lower class misdemeanor or *no minimum* fines or both.[8] Additionally, SB 1363 provides special civil remedies that are not available for ordinary trespass. *See* SB 1363, Sec. 1 (A.R.S. §12-1809), Sec. 2 (A.R.S. §12-1810), Sec. 6 (A.R.S. §23-1323).

Because the trespassory assembly provision expressly singles out labor

---

[8] *Cf.* A.R.S. §13-1502 (class 3 misdemeanor); A.R.S. §13-1503 (class 2 misdemeanor); A.R.S. §13-1504 (class 1 misdemeanor or felony, depending on circumstances); A.R.S. §13-802 (no minimum fines for misdemeanors regardless of class).

1   organizations and others acting "on behalf of employees," it is on its face viewpoint

2   discriminatory.  *Supra* Sec. I.2.a.

3         Section 23-1328 is also presumptively invalid, and cannot withstand strict scrutiny,

4   because it restricts the First Amendment right of assembly based on content and speaker

5   identity.  *Sorrell v. IMS Health Inc.*, 131 S. Ct. 2653, 2667 (2011); *Citizens United*, 130 S.

6   Ct. at 898-99.  A content-based restriction must be "narrowly tailored to serve a compelling

7   government interest," *Pleasant Grove City v. Summum*, 555 U.S. 460, 469 (2009), and

8   "*necessary* to serve the asserted compelling interest," *R.A.V.*, 505 U.S. at 395 (quotation

9   omitted; emphasis in original).

10        Section 23-1328 is underinclusive because it targets only labor organizations and

11   other employee advocates; it is unnecessary, as the generally applicable criminal trespass

12   statutes reach the same conduct in a neutral manner.  "[S]ignificant underinclusiveness,"

13   *Berger v. City of Seattle*, 569 F.3d 1029, 1043 (9th Cir. 2009) (en banc), and "[t]he

14   existence of numerous and obvious less-burdensome alternatives," are "relevant to

15   assessing whether the restriction on speech reasonably fits the interest asserted," *Klein*, 584

16   F.3d at 1201 (quotation omitted).  *See also R.A.V.*, 505 U.S. at 395-96 (content-based

17   statute violates First Amendment where state interest served by content-neutral law).

18        That assemblers may be prohibited from trespassing by generally applicable and

19   neutral trespass laws makes no difference.  *R.A.V.*, 505 U.S. at 383-84.  Trespass cannot be

20   used to discriminate against a viewpoint that is *unrelated* to its proscribable conduct

21   element.  *Id.*  For instance, "nonverbal expressive activity can be banned because of the

22   action it entails, but not because of the ideas it expresses – so that burning a flag in

23   violation of an ordinance against outdoor fires could be punishable, whereas burning a flag

24   in violation of an ordinance against dishonoring the flag is not."  *Id.* at 385.

25        SB 1363's "regulatory distinctions among different kinds of speech" also "fall afoul

26   of the Equal Protection Clause."  *Gilleo*, 512 U.S. at 51 n.9.  To deny particular groups

27   "'use of the streets because of their views, . . . while allowing other groups to use the streets

28   to voice opinions on other subjects, also amounts . . . to an invidious discrimination

1   forbidden by the Equal Protection Clause of the Fourteenth Amendment.'"  *Mosley*, 408

2   U.S. at 98 (quoting *Cox*, 379 U.S. at 581 (Black, J., concurring)).[9]

3   **III.    SB 1363 Unconstitutionally Restricts Speech About Employers**

4       **A.    SB 1363's "Defamation Of Employer" Provision Is Unconstitutional**

5       SB 1363 creates a cause of action entitled "defamation of an employer."  SB 1363,

6   Sec. 8 (A.R.S. §23-1325).  Under §23-1325(A), "a person commits defamation of an

7   employer" by 1) "maliciously making a false statement about the employer to a third party

8   without privilege"; 2) "knowingly, recklessly or negligently disregarding the falsity of the

9   statement," and 3) "causing damage to the employer by the false statement."

10      1.    To ensure that "debate on public issues" is "uninhibited, robust, and wide-

11  open," the First Amendment protects even false speech.  *New York Times Co. v. Sullivan*,

12  376 U.S. 254, 270 (1964).  "[T]he right to speak and write whatever one chooses –

13  including, to some degree, worthless, offensive, and demonstrable untruths – without

14  cowering in fear of a powerful government is . . . an essential component of the protection

15  afforded by the First Amendment."  *United States v. Alvarez*, 617 F.3d 1198, 1205 (9th Cir.

16  2010), *aff'd*, 132 S.Ct. 2537 (2012).

17      Injurious false speech may be regulated, but defamation laws cannot discriminate on

18  the basis of content or viewpoint.  A statute purporting to restrict "unprotected" speech

19  "must be carefully drawn . . . to punish only unprotected speech and not be susceptible of

20  application to protected expression."  *Gooding*, 405 U.S. at 522.  Nor may classes of

21  unprotected speech be made "vehicles for content discrimination unrelated to their

22  distinctively proscribable content."  *R.A.V.*, 505 U.S. at 383-84 ("[T]he government may

23  proscribe libel; but it may not make the further content discrimination of proscribing *only*

24

---

25  [9] Because restrictions on expression that discriminate between different classes of speakers
    violate both the First Amendment and the Equal Protection Clause, Plaintiffs challenge all
26  speaker-based restrictions under both provisions, but do not further brief the latter.  These
    restrictions include A.R.S. §§23-1321(4), 23-1322, 23-1326, and 23-1328, as well as the
27  sections that incorporate those restrictions: §§12-1809, 12-1810, 23-1321(1), 23-1323, 23-
    1324, and 23-1329.
28

1   libel critical of the government." (emphasis in original)).

2       Because §23-1325 impermissibly restricts speech on the basis of viewpoint (*supra*

3   Sec. I.2.b), it is prohibited.  But even if "defamation of an employer" were only a content-

4   based speech restriction, Arizona could not meet its burden of proving that it is narrowly

5   tailored and necessary to further a compelling state interest, because employers are

6   adequately protected from defamation to the full extent that is constitutionally permissible

7   under existing content-*neutral* defamation law.  *See Peagler v. Phoenix Newspapers, Inc.*,

8   114 Ariz. 309, 315 (Ariz. 1977) (Arizona defamation standards).

9       2.     Section 23-1325 is also substantially overbroad in several respects.  First, it

10  reaches a substantial amount of protected speech by providing a defamation cause of action

11  for speech about *public* employers.[10]  Speech about public entities cannot be prohibited as

12  defamation.  *Alvarez*, 617 F.3d at 1210 ("The right against defamation belongs to natural

13  persons, not to governmental institutions or symbols.").

14      Second, §23-1325 sets an impermissibly low defamation standard for public officials

15  acting in their official capacity and employers who are public figures.  Statements about

16  public officials and public figures are not defamatory unless the statement was made with

17  "actual malice," which means knowledge of falsity or reckless disregard as to truth or

18  falsity.  *New York Times*, 376 U.S. at 279-80 (public officials); *Curtis Publ'g Co. v. Butts*,

19  388 U.S. 130 (1967) (plurality opinion) (public figures).  SB 1363 punishes more speech

20  than permitted by defining defamation of an employer to include a statement made with

21  only *negligent* disregard for its falsity.  §23-1325(A)(2).

22      Third, §23-1325 makes defamation of an employer subject to punitive damages

23  (§23-1325(B)) as well as criminal liability (§23-1324).  Even private figures may not

24  recover punitive or presumed damages where speech relates to matters of public concern,

25  *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 350 (1974), as speech about employers often

26  _____

27  [10] Although §23-1325 does not define "employer," SB 1363 (Sec. 2) incorporates the
    definition of employer from A.R.S. §12-1810(R)(1), which expressly "includes this state, a

28  political subdivision of this state and any school district or other special district."

does.  *Supra* at 8.  The imposition of criminal penalties on such speech is also unconstitutional because SB 1363 does not require "*at least* reckless disregard for the truth or falsity of the statement[]."  *Alvarez*, 617 F.3d at 1206 n.7 (emphasis in original).

3.     Section 23-1325 is also preempted by the NLRA.  In *Linn v. Plant Guard Workers*, 383 U.S. 53, 57-63 (1966), and *Letter Carriers v. Austin*, 418 U.S. 264, 279 (1974), the Court held that the NLRA preempts state defamation laws to the extent they permit covered employers to recover damages for defamatory statements made in the context of labor disputes under standards less than the *New York Times* "actual malice" standard.  Because §23-1325 lowers that standard to mere negligence, it is preempted.

**B.     SB 1363's "Concerted Interference With Lawful Exercise Of Business Activity" Provision Is Unconstitutional**

SB 1363 prohibits "concerted interference with lawful exercise of business activity," which means "the use of force, intimidation, violence, threats of unlawful activity, destruction of the employer's real or intangible property, unlawful assembly or defamatory statements," to either a) "prevent or attempt to prevent an employer" from "lawfully engaging in any proper and lawful business activity," using or enjoying its business property, acquiring business materials or supplies, or "disposing" of its products, or b) "cause or induce a breach or termination of a known contractual relationship or known business expectancy for an improper purpose" which damages "the employer."  SB 1363, Sec. 4 (A.R.S. §23-1321(1)), Sec. 6 (A.R.S. §23-1323(A)).

1.     Because §23-1321(1) incorporates SB 1363's prohibitions on mass assembly, trespassory assembly, and defamation of an employer, it is unconstitutional for the same reasons, including overbreadth, vagueness, and viewpoint discrimination.

Section 23-1321(1)'s restriction on "threats of unlawful activity" is also substantially overbroad, *see Wurtz*, 719 F.2d 1438 (threat to "commit any criminal offense"), as is the restriction on "destruction of intangible property."  *Supra* at 12-13.  Section 23-1321(1) is also vague and overbroad because it uses the term "improper purpose."  The phrase "injurious purpose" – which Congress and courts have used interchangeably with the

20

phrase "improper purpose," *see, e.g.*, *Boddie v. Am. Broad. Companies, Inc.*, 881 F.2d 267, 269 (6th Cir. 1989) – was deemed void for vagueness in the context of the federal wiretapping statute, *id.* at 270-71. And, the phrase "improper purpose" is no less vague than "without a just cause or legal excuse," which the Supreme Court deemed impermissibly vague in the context of a statute that, like SB 1363, prohibited interference with "lawful business." *Thornhill*, 310 U.S. at 100.

2. Because §23-1321 prohibits employees from engaging in "concerted" activity that interferes with an employer's business, it is also preempted by the NLRA. In the NLRA context, concerted activity often has the effects that are prohibited by §23-1321, as it is often aimed at persuading employees, customers, and related businesses that they should cease doing business with an employer unless it improves its treatment of its employees. Because such activity is both protected by the NLRA and the sort of "economic pressure tactic" that must remain free from state regulation, SB 1363 is preempted under both *Garmon* and *Machinists*. *Supra* at 15.

**IV. SB 1363 Unconstitutionally Prohibits Labor Picketing And Secondary Boycotts**

    **A. SB 1363's Labor Picketing Restrictions Are Unconstitutional**

1. SB 1363 expressly restricts picketing by labor organizations. *See* SB 1363, Sec. 5 (A.R.S. §23-1322 ("Unlawful Picketing")). "There can be no doubt" that "peaceful picketing" is "expressive conduct that falls within the First Amendment's preserve." *Carey*, 447 U.S. at 460. Indeed, because §23-1322 applies to public employers, its restrictions impinge on both the freedom of speech and the right to petition. Both subsections of §23-1322(A) are presumptively invalid because they are facially content- and speaker-based restrictions on protected expression. *Supra* Sec. I.2.d. They are also unconstitutional for the following additional reasons.

a. Under §23-1322(A), "[i]t is unlawful for a labor organization to picket any establishment unless there exists between the employer and majority of employees of such establishment a bona fide dispute regarding wages or working conditions." The Arizona Supreme Court held that §23-1322(A) is an unconstitutional ban on

picketing in *Baldwin*, 82 Ariz. at 390-91.  But SB 1363 re-affirms §23-1322(A), including by imposing new civil and criminal penalties for violations.  SB 1363, Secs. 1-2 (A.R.S. §§12-1809, 12-1810 (ex parte injunctions)), Sec. 6 (A.R.S. §23-1323(A) (enhanced civil penalties)), Sec. 7 (A.R.S. §23-1324 (enhanced criminal penalties)).

Section 23-1322(A) remains unconstitutionally overbroad.  A state may prohibit picketing "for an unlawful purpose," but "state policy which has the effect of restraining peaceful picketing must aim specifically at the evils within the allowable area of state control and not sweep within its ambit other activities which in ordinary circumstances constitute an exercise of freedom of speech or press." *Baldwin*, 82 Ariz. at 390-91.

> The plain wording of section [23-1322(A)] requires as a conditions precedent to a labor organization picketing the establishment of any employer that there exists a bona fide dispute between such employer and a majority of his employees.  It, therefore, effectively provides that under all circumstances, and regardless of purpose, a union having less than a majority is prohibited from all peaceful picketing.  Such clearly on its face constitutes a general prohibition against peaceful picketing in violation of the United States Constitution[.]

*Id.  See also American Fed'n of Labor v. Swing*, 312 U.S. 321 (1941) (ban on picketing absent "immediate employer-employee dispute" violates First Amendment).

This labor picketing restriction is also vague.  *Supra* at 9.  Here, as in *Thornhill*, "[t]he vague contours of the term 'picket' are nowhere delineated," and as a result, that term includes a "picketer" who merely engages in persuasive communication, "whether by printed sign, by pamphlet, by word of mouth or otherwise."  310 U.S. at 100-01 n.18. Section 23-1322(A) does not specify which employees count for purposes of determining whether there is "majority" support for a given dispute.  Additionally, there are no standards to guide law enforcement officers who must somehow determine on-the-spot whether the subject of picketing is a "bona fide" dispute over wages or working conditions, and whether the majority of employees support the dispute.

b.   SB 1363's second picketing restriction, A.R.S. §23-1322(B), makes it "unlawful for a labor organization to engage in picketing or to induce others to engage in

1   picketing if the purpose of the picketing is to coerce or induce an employer or self-

2   employed person to join or contribute to a labor organization."

3          Section 23-1322(B) is substantially overbroad, because it prohibits picketing (and

4   persuading others to picket) for purposes that are protected by the First Amendment.  The

5   term "induce" means "to move by persuasion."  Merriam-Webster Collegiate Dictionary

6   637 (11th ed. 2011).  As a result, a labor organization may violate §23-1322(B) by

7   picketing a newspaper and encouraging self-employed freelance writers voluntarily to

8   become members or by carrying signs explaining that workers who were unlawfully

9   terminated need support and requesting voluntary contributions from passersby, some of

10   whom happen to be employers and self-employed persons.

11          The First Amendment protects the right of labor organizations to engage in such

12   persuasive, expressive activity.  *See, e.g.*, *Thomas*, 323 U.S. at 532 ("The right thus to

13   discuss, and inform people concerning, the advantages and disadvantages of unions and

14   joining them is protected not only as part of free speech, but as part of free assembly.");

15   *Citizens United*, 130 S. Ct. at 898 (freedom of speech protects voluntary contributions to an

16   organization); *Comite*, 657 F.3d at 945 (First Amendment protects solicitation).

17          Section 23-1322(B)'s vagueness contributes to its overbreadth.  As discussed above,

18   the term "picketing" is vague and undefined.  Section 23-1322(B) also fails to define the

19   term "contribute," or place any limit on the kinds of contributions that are prohibited.

20   Thus, even non-monetary contributions, such as letters of support or volunteer efforts, are

21   restricted.

22          2.     Because §23-1322 broadly restricts picketing by labor organizations, it is also

23   preempted by the NLRA.  *See Garmon*, 359 U.S. 236 (NLRA preempts state action for

24   injunction and damages arising from picketing).

25          SB 1363's broad prohibition against labor picketing not only restricts protected

26   concerted activity, but also "interfere[s]" with the NLRA's "scheme of regulation."  *Golden*

27   *State Transit Corp. v. Los Angeles*, 475 U.S. 608, 613 (1986).  As part of the NLRA's

28   comprehensive labor relations scheme, which regulates both employers and labor

23

organizations and strikes a careful balance between economic regulation and protection of First Amendment rights, the NLRA places some indirect limits on picketing.  For example, the NLRA prohibits labor organizations from "coerc[ing]" others with certain prohibited objectives, 29 U.S.C. §158(4)(ii), and the Supreme Court has upheld the application of that provision to picketing under circumstances where that activity actually rises to the level of coercion, but cautioned that it does *not* apply to picketing *per se*.  *See N.L.R.B. v. Fruit and Vegetable Packers and Warehouseman, L. 760*, 377 U.S. 58 (1964) ("*Tree Fruits*").  In contrast, §23-1322 expressly and directly restricts "picketing" *per se*, including *non-*coercive, persuasive picketing.  As the Court explained in *Boos*, a statute like the NLRA that "only prohibits activity undertaken to 'intimidate, coerce, threaten, or harass'" is "considerably less restrictive" than a statute like SB 1363 that expressly restricts "picketing."  485 U.S. at 326.

The NLRA authorizes and regulates the process by which labor organizations may become the exclusive collective bargaining representative of specified employees, 29 U.S.C. §159, and in this context, places narrow timing and durational limits on picketing whose objects include "forcing or requiring" an employer to recognize a union as the exclusive bargaining representative of its employees outside of the NLRA's certification process.  *See* 29 U.S.C. §158(b)(7) ("NLRA §8(b)(7)").  Unlike SB 1363, which restricts picketing for purposes protected by the First Amendment, NLRA §8(b)(7) is narrowly tailored to restrain a purpose – forcing or requiring recognition outside of the NLRA certification process – that is the proper subject of regulation, as a union's right to function as the exclusive collective bargaining representative for a given group of employees is established by the NLRA, not the First Amendment.  Further, unlike NLRA §8(b)(7), SB 1363's "unlawful picketing" provisions are part of a discriminatory and unbalanced scheme that broadly restricts the First Amendment rights of labor organizations without providing any countervailing protections for labor organizations' freedom of expression or restrictions on the conduct of employers.  *Supra* Sec. I.

**B.     SB 1363's Secondary Boycott Provisions Are Unconstitutional**

"Secondary boycott" is defined in A.R.S. §23-1321(4).  "[E]ngaging in a secondary boycott" is "illegal" under §23-1323(A)).  SB 1363 enhances the civil and criminal penalties for such secondary boycotts.  SB 1363, Sec. 1 (A.R.S. §12-1809(R)), Sec. 2 (A.R.S. §12-1810(R)(2)), Sec. 6 (A.R.S. §23-1323(A)), Sec. 7 (A.R.S. §23-1324(A)).

1.     Section 23-1321(4) is overbroad and vague: it bans all secondary boycotts that support or reflect the viewpoint of a labor organization, and all speech and expressive activity that "directly or indirectly" persuades others to engage in such a boycott – regardless of the speaker's intent.

For example, §23-1321(4)(a) prohibits "two or more persons" from engaging in a "concerted refusal" to "deal with specified articles . . . to force or require a person to cease or partially to cease . . . selling . . . the products of . . . any other person . . . for the reason that such other person uses . . . materials . . . considered objectionable by a labor organization."  This prohibits two customers from agreeing with each other to stop buying from Safeway apples from Grower X because Grower X uses a dangerous pesticide that is "considered objectionable by a labor organization" due to its health effects on farmworkers.  The customers' expressive activity could "force or require" Safeway partially to cease selling Grower X's apples simply by decreasing demand.  Indeed, the definition of "force" includes "to compel" by "moral" or "intellectual means."  Merriam-Webster Collegiate Dictionary 489 (11th ed. 2011).  Hence, the customers' expressive activity could violate §23-1321(4)(a) simply by persuading Safeway that it *should* stop selling the apples.  Indeed, the customers' agreement not to buy the apples from Safeway would violate §23-1321(4)(a) so long as their *objective* was to make Safeway sell fewer Grower X apples, regardless of the boycott's actual effectiveness.

Section 23-1321(4)(a) also prohibits the customers from promoting their apple boycott by "picketing" Safeway.  For example, customers cannot stand outside of Safeway holding signs that say "Grower X uses dangerous pesticides" or "Please don't buy Grower X apples."  And, because §23-1321(4)(a) prohibits "threat[s] to picket" and "threat[s] of

concerted refusal" to "deal with specified articles," this provision also prohibits customers from saying to Safeway: "if you do not stop selling apples grown with dangerous pesticides, we will stop buying apples at your store" or "we will stand outside with signs that say, 'Grower X apples are sprayed with dangerous pesticides.'"

Section 23-1321(4)(a) further prohibits refusing to "deal with" goods sold by person A for "the purpose of forcing or requiring" person B to "comply with the demands of a labor organization." For example, if the farmworkers union is "demanding" that Grower X stop using the harmful pesticide, §23-1321(4)(a) prohibits sympathetic customers from refusing to buy Grower X apples from Safeway until that demand is met.

Section 23-1321(4)(a) also prohibits concertedly refusing to buy or threatening not to buy goods from person A "for the reason that" person B "has in his employ persons who are not members of a labor organization." For example, if customers conclude that unionized apple farms have better working conditions and do not use dangerous pesticides, and they decide to buy only "union apples," §23-1321(4)(a) prohibits them from refusing to buy (or threatening not to buy) non-union apples from Safeway.

Subsection (a) of §23-1321(4) reaches an extremely broad range of speech and expressive activity, but subsection (b) goes even further by prohibiting "[a]n act, combination, or agreement which directly or indirectly causes, induces or compels another" to do any of the above, such as refuse to buy Grower X apples from Safeway because the farmworkers union objects to the use of dangerous pesticides. Because §23-1321(4)(b) has no scienter requirement, and reaches acts that *indirectly* cause others to engage in a secondary boycott, this provision prohibits virtually all speech and expressive activity by a labor organization that could persuade others to boycott a particular entity. For example, if the farmworkers union publicly criticized Grower X's use of pesticides and its poor treatment of workers, and this speech "indirectly" persuaded consumers to boycott Grower X products with the object of "forcing" Safeway to cease "dealing with" Grower X, the union could be criminally sanctioned – even if the union did not explicitly ask anyone to stop buying Grower X apples at Safeway or intend for that to happen.

1        Section 23-1321(4) also impinges on the right to petition.  For example, if a labor

2   organization demanded that the Arizona Legislature repeal its anti-immigrant laws, and

3   some people decided to boycott Arizona businesses until those laws were repealed, both the

4   labor organization and its allies could be prosecuted for violating §23-1321(4) – regardless

5   of whether the labor organization intended the boycott to occur.

6        There can be no doubt that such speech, expressive activity, and petitioning is

7   protected by the First Amendment.  *See, e.g.*, *Austin*, 402 U.S. at 419; *Thornhill*, 310 U.S.

8   at 99; *Carlson*, 310 U.S. at 112-13.

9        SB 1363's secondary boycott provisions are also unconstitutional because they

10   restrict First Amendment expression on the basis of viewpoint.  *Supra* Sec. I.2.c.  Even if it

11   were not viewpoint-based on its face, §23-1321(4) would be content-based, and it could not

12   withstand strict scrutiny.  Section 23-1321(4)'s content-based distinctions are grossly

13   under- and over-inclusive and unnecessary.  *See, e.g.*, *Carey*, 447 U.S. at 464-65; *Mosley*,

14   408 U.S. at 100-02.  Section 23-1321(4) permits the same speech and expressive activity on

15   all subjects other than labor, such as civil rights or abortion, even when it is *more*

16   disruptive.  A content-neutral restriction on secondary boycotts would better serve any state

17   interest in limiting disruption to businesses.  *Carey*, 447 U.S. at 465.

18        2.    SB 1363's secondary boycott prohibitions are also preempted by federal labor

19   law.  *See Local 20, Teamsters, Chauffeurs and Helpers Union v. Morton*, 377 U.S. 252

20   (1964); *Smart v. Local 702 Int'l Bhd. of Elec. Workers*, 562 F.3d 798, 808 (7th Cir. 2009)

21   (29 U.S.C. §187(b) "*completely* preempts state-law claims related to secondary boycott

22   activities") (emphasis in original).  Federal labor law does not prohibit labor organizations

23   from engaging in secondary boycotts, but instead narrowly limits certain kinds of conduct,

24   namely strikes and coercion.  *See, e.g.*, *Local 20*, 377 U.S. at 259 ("[A] union is free to

25   approach an employer to persuade him to engage in a boycott, so long as it refrains from

26   the specifically prohibited means of coercion . . . ."); *N.L.R.B. v. Servette, Inc.*, 377 U.S. 46

27   (1964) (union may engage in handbilling in support of secondary boycotts, and threats to

28   engage in such handbilling, because such activity is protected); *Tree Fruits*, 377 U.S. 58

1   (union may engage in non-coercive secondary picketing).

2   Because SB 1363 bans labor-related secondary boycotts altogether, it prohibits

3   concerted activity and economic self-help tactics that are protected from state regulation by

4   the NLRA – and is therefore preempted.  *Local 20*, 377 U.S. at 259-60 (state law

5   proscribing secondary activity "frustrate[s] the congressional determination to leave this

6   weapon of self-help available, and . . . upset[s] the balance of power between labor and

7   management expressed in our national labor policy").

8   **V.     The Wage Withholding Revocation Provision Is Unconstitutional**

9   1.     SB 1363, like its viewpoint discriminatory companion bill, SB 1365, is also

10  aimed at interfering with the collection of union membership dues.  Because Arizona is a

11  "right to work" state, employees only pay union dues if they voluntarily choose to become

12  members.  Most members choose to pay their union dues through automatic paycheck

13  deductions, and many deduction-authorization agreements provide that the authorization is

14  irrevocable for a specified period of time.  *See* SF 36-37.  Federal labor law expressly

15  permits the irrevocable period to last up to one year or the expiration date of the applicable

16  collective bargaining agreement.  *See* 29 U.S.C. 186(c)(4); *SeaPak v. Industrial, Technical*

17  *and Professional Employees*, 300 F.Supp. 1197, 1200-01 (S.D. Ga. 1969), *aff'd*, 423 F.2d

18  1229 (5th Cir. 1970), *aff'd*, 400 U.S. 85 (1971).  SB 1363, however, makes all revocations

19  effective immediately – "unless the withholding is to resolve a debt or obligation *to the*

20  *employer* or a court orders otherwise" – regardless of whether immediate revocation

21  breaches the duration term of a binding agreement.  SB 1363, Sec. 3 (A.R.S. §23-352(2))

22  (emphasis added).  Because Congress has occupied the field of "union dues checkoff"

23  regulation, and §23-352 conflicts with federal law by prohibiting that which it expressly

24  permits, §23-352 is preempted.  *SeaPak*, 300 F.Supp. at 1200-01.

25  Section 23-352 is also preempted under *Machinists* because it alters the balance of

26  power in collective bargaining.  *See Golden State Transit*, 475 U.S. 608.  For example, in

27  2010, just prior to SB 1363's enactment, grocery employers in Arizona pressured their

28  employees to revoke dues authorizations to destabilize the grocery workers' union during

contract negotiations, SF 41, a tactic that would have been more effective if SB 1363's immediate revocation provision had been in effect.

2.   Section 23-352 also violates the Contract Clause.[11]  First, §23-352 substantially impairs a contractual relationship, *Energy Reserves Group, Inc. v. Kansas Power & Light Co.*, 459 U.S. 400, 411 (1983), because it negates members' contractual obligations to pay dues by paycheck deduction for the duration of the irrevocable period, as well as employers' contractual obligations to continue deducting dues where, for example, the applicable collective bargaining agreement provides that deductions must be made according to the terms of the employees' membership agreements.  *See Toledo Area AFL-CIO Council v. Pizza*, 154 F.3d 307, 324-25 (6th Cir. 1998) (ban on payroll deductions "severe impairment of the unions' contractual rights").[12]  Second, §23-352 has no "significant and legitimate public purpose," *Energy Reserves*, 459 U.S. at 411: it has no stated purpose, and there is zero evidence in the legislative record of a relevant social problem of sufficient magnitude.  *See Toledo*, 154 F.3d at 325-27 (*post hoc* justifications inadequate).  Third, in the absence of a significant, legitimate purpose, §23-352's contract impairment cannot be said to be "based upon reasonable conditions and . . . of a character appropriate to the public purpose justifying its adoption."  *Energy Reserves*, 459 U.S. at 412 (quotation omitted).  *See also HRPT Properties Trust v. Lingle*, 715 F.Supp.2d 1115, 1140 (D. Haw. 2010) (law not reasonably designed to promote legitimate public purpose).

## VI.   SB 1363 Provides Unconstitutional Remedies

To the extent that SB 1363's substantive restrictions are unconstitutional, none of

---

[11] SEIU Arizona has not pled a Contract Clause violation, but supports the claim.

[12] By *requiring* employers to implement even *improper* revocations, SB 1363 effectively makes the duration provisions of authorization agreements unenforceable.  Prior to SB 1363, unions could enforce such provisions through, for example, the grievance and arbitration process.  SF 38, 40.  SB 1363 eliminates that option.  In theory, a union could sue for breach of contract, but such suits are so costly (especially relative to the amount of dues that could be recovered) as to be impracticable.  SF 39.  A law that denies a remedy or "burden[s] the proceedings . . . so as to make the remedy hardly worth pursuing," is a substantial impairment.  *Bronson v. Kinzie*, 42 U.S. 311, 317 (1843).  *See also U.S. Trust Co. of New York v. New Jersey*, 431 U.S. 1 (1977) (interference with security provision).

SB 1363's remedial provisions may be used to enforce them, and the Court need not separately analyze their constitutionality.  To the extent any substantive provision survives, however, the following remedies are also unconstitutional.

### A.    SB 1363 Authorizes Improper Injunctive Relief Without Adequate Procedural Protections

SB 1363 broadly authorizes the issuance of injunctions against First Amendment expression, SB 1363 (Sec. 1 (A.R.S. §12-1809); Sec. 2 (A.R.S. §12-1810); Sec. 6 (A.R.S. §23-1323(A)); Sec. 8 (A.R.S. §23-1325(B))), including through *ex parte* proceedings without notice.  §§12-1809(E), 12-1810(E).

1.      "Temporary restraining orders and permanent injunctions – i.e., court orders that actually forbid speech activities – are classic examples of prior restraints."  *Alexander v. United States*, 509 U.S. 544, 550 (1993).  "Any prior restraint on expression comes . . . with a 'heavy presumption' against its constitutional validity."  *Austin*, 402 U.S. at 418-19.  SB 1363 authorizes prior restraints without the necessary showing of "exceptional" circumstances.  *Near v. Minnesota*, 283 U.S. 697, 715-16 (1931); *see also CBS, Inc. v. Davis*, 510 U.S. 1315, 1317 (1994) ("[W]e have imposed this most extraordinary remedy only where the evil that would result from the reportage is both great and certain and cannot be mitigated by less intrusive measures.") (quotation omitted).  "Subsequent civil or criminal proceedings, rather than prior restraints, ordinarily are the appropriate sanction for calculated defamation or other misdeeds in the First Amendment context."  *Id.* at 1318.

2.      The "harassment" injunction provisions are also procedurally inadequate.  First, *ex parte* injunctions are generally invalid in the free speech context.  *See Freedman v. Maryland*, 380 U.S. 51, 58 (1965) ("only a judicial determination in an adversary proceeding ensures the necessary sensitivity to freedom of expression").  "In the absence of evidence and argument offered by both sides and of their participation in the formulation of value judgments, there is insufficient assurance of the balanced analysis and careful conclusions which are essential in the area of First Amendment adjudication."  *Carroll v. President & Comm'rs of Princess Anne*, 393 U.S. 175, 183 (1968).

30

Second, the *ex parte* injunction provisions fail to assure a "prompt final judicial determination." *Southeastern Promotions, Ltd. v. Conrad*, 420 U.S. 546, 559-560 (1975). Under SB 1363, an *ex parte* injunction is effective for a year. §§12-1809(J), 12-1810(J). Although the defendant may request a hearing, a court may continue the hearing for "compelling reasons," without a deadline to issue a final decision. §§12-1809(H), 12-1810(G). Because "[i]t is vital that the continuance of First Amendment freedoms not be dependent upon the efficiency of a particular judge but upon procedural safeguards clearly embodied in a statute," SB 1363 is constitutionally deficient. *Grove Press*, 418 F.2d at 91 (procedure providing for "full dress hearing within four days" insufficient if "there is no provision for a prompt decision"); *see also Vance v. Universal Amusement Co., Inc.*, 445 U.S. 308, 312 n.5, 316-17 (1980) (prohibiting use of *ex parte* injunction procedure).

Third, an employer may obtain an *ex parte* injunction against expression by showing either "reasonable evidence of harassment" or that "good cause exists to believe that great or irreparable harm would result" if the injunction is not granted *ex parte*, §§12-1809(E), 12-1810(E) – far less than is normally required to obtain preliminary injunctive relief (likelihood of success *and* at least irreparable harm). Such lax evidentiary requirements cannot justify an injunction in the First Amendment context. *See Vance*, 445 U.S. at 312-17 ("probable success" insufficient).

### B.   The "No Trespass Public Notice List" Provisions Are Unconstitutional

1.   SB 1363 permits employers to list their property on a "no trespass public notice list." SB 1363, Sec. 8 (A.R.S. §23-1326). If a "labor organization or individual or groups of individuals acting on employees' behalf . . . are engaged in unlawful picketing, trespassory assembly or mass picketing" on or around property that is identified on the list, a "responding peace officer may not require the employer to provide any further documentation to establish the employer's property rights before requiring" the labor organization or employee advocates "to leave the employer's property." §23-1326(F). The phrase "mass picketing" is not defined and could refer to any picketing regardless of whether it is "unlawful." Further, any person who engages in unlawful mass assembly,

1   unlawful picketing (which applies only to labor organizations), or trespassory assembly

2   (which applies only to labor organizations or other employee advocates) "at a property

3   listed on the no trespass public notice list" is subject to greater criminal penalties

4   (regardless of whether they are trespassing on the property).  §23-1324(B).  Because §23-

5   1326 is viewpoint discriminatory on its face, it is invalid.  *Supra* Sec. I.2.a.

6     2. Section 23-1326 is also preempted by the NLRA.  To effectuate employees'

7   rights to engage in concerted activity for mutual aid and protection, the NLRA gives

8   employees and union representatives certain limited rights to be on an employer's private

9   property.  *See, e.g.*, *First Healthcare Corp. v. N.L.R.B.*, 344 F.3d 523 (6th Cir. 2003)

10   (workers have right to be on their employer's property when off-duty to leaflet co-workers

11   or public); *Lucile Salter Packard Children's Hosp. v. NLRB*, 97 F.3d 583, 587 (D.C. Cir.

12   1996) (union may access employer property if it "has no other reasonable means of

13   communicating its message to employees" or if employer "denies union access to its

14   premises while allowing similar distribution or solicitation by nonemployee entities other

15   than the union"); *NLRB v. Villa Avila*, 673 F.2d 281, 283-284 (9th Cir. 1982) (employees

16   have NLRA "right to be visited by union representatives at reasonable times and places to

17   conduct legitimate union business").  Collective bargaining agreements also often provide

18   union representatives with access to employer property.  *See, e.g.*, *NLRB v. Unbelievable,*

19   *Inc.*, 71 F.3d 1434, 1438-1439 (9th Cir. 1995); SF 35.  Because SB 1363 conflicts with

20   federal labor law by requiring peace officers summarily to remove labor organizations and

21   others acting on behalf of employees from an employer's listed property regardless of

22   whether doing so would violate the NLRA or a collective bargaining agreement, it is

23   preempted.  *Supra* at 15.

24     3. Section 23-1326 also violates procedural due process.  To determine whether

25   a statute provides adequate procedural protections, courts apply the three-part balancing test

26   in *Mathews v. Eldridge*, weighing 1) the private interest that will be affected, 2) the risk of

27   erroneous deprivation and the value of any additional process, and 3) the Government's

28   interest.  424 U.S. 319, 334-35 (1976).  Section 23-1326 fails this test because it requires

the police summarily to remove persons who are engaged in First Amendment activity without first determining whether they have a legal right to be on the listed property.  For example, the police must remove an employee representative who has an NLRB decision, court order, or collective bargaining agreement that establishes the right to be on the property, which the police could easily review.

Further, §23-1326 fails to provide adequate notice.  When a property is listed, §23-1326(D)(1) requires only that the list be published in a county newspaper one day per week for four weeks, and then made available through the Secretary of State's office and website.  This notice is inadequate because it assumes that those who wish to exercise their right of assembly are aware of the list, and places the burden on them to find and check the list, instead of requiring employers that benefit from the list to provide actual notice.  Additionally, because the list contains only addresses, not descriptions of the property boundaries, §23-1326(C), members of the public must go to the Secretary of State's office and inspect the records to determine where assembly might be permitted.  Other procedures would ensure due process: for example, requiring an employer that lists its property to 1) notify all of its employees and any organizations that represent them, and 2) post public notices at the listed property that describe its boundaries.

### C.    The Prohibition Against "Publicizing Enjoined Picketing Or Assembly" Is Unconstitutional

SB 1363 prohibits a person from "declar[ing] or publiciz[ing] the continued existence of actual or constructive picketing or assembly at a point or directed against a premises, if a court of competent jurisdiction has enjoined the continuation of the picketing or assembly at that point or premises."  SB 1363, Sec. 8 (A.R.S. §23-1329).

Section 23-1321 is unconstitutional for several reasons.  First, §23-1329 is a content-based speech restriction: it prohibits speech about enjoined picketing or assembly.  Second, §23-1329 prohibits such speech even if the underlying injunction against assembly or picketing is itself invalid – either because it enforces an invalid substantive restriction or was imposed without due process.  Third, because §23-1329 effectively expands every

injunction against picketing or assembly to restrict publicity thereof – regardless of whether such a restriction is necessary to further the injunction's purpose, as required by the First Amendment, *Carroll*, 393 U.S. at 183-84 – it is an invalid prior restraint regardless of the underlying injunction's validity.

### D. SB 1363 Is Preempted Because It Provides Remedies Not Available Under The NLRA

To the extent SB 1363 reaches "unfair labor practices" that the NLRA already prohibits, 29 U.S.C. §158, SB 1363 is preempted because it provides additional remedies and penalties – including criminal sanctions, punitive damages, and private suits for injunctions – that Congress did not provide. *See, e.g.*, *Wisconsin Dept. of Indus., Labor & Human Relations v. Gould Inc.*, 475 U.S. 282, 287 (1986); *Local 20*, 377 U.S. at 260-61 (state cannot award punitive damages for secondary activity); *Weber v. Anheuser-Busch, Inc.*, 348 U.S. 468, 475 (1955) ("State may not enjoin under its own labor statute conduct which has been made an 'unfair labor practice' under the federal statutes.").

## VII. SB 1363 Is An Integrated Scheme That Should Be Enjoined In Its Entirety

SB 1363 should be enjoined in its entirety, not only because it is viewpoint discriminatory (*supra* Sec. I), but also because it is an integrated scheme, with such pervasive constitutional defects that the remainder is not severable. "Unless [this Court] can determine that the valid portion of the statute would have been enacted absent the invalid portion, the provisions are not severable. Thus the problem is twofold: the legislature must have intended that the act be separable, and the act must be capable of separation in fact." *State Comp. Fund v. Symington*, 174 Ariz. 188, 195 (1993) (quotation omitted). SB 1363 has no severability provision, and its restrictions are so "interdependent in subject matter, meaning, and purpose as to . . . justify the conclusion that the legislature intended them as a whole and would not have enacted a part only." *Millett v. Frohmiller*, 66 Ariz. 339, 343 (1948) (quotation omitted). *See also Ruiz v. Hull*, 191 Ariz. 441, 459 (1998) (refusing to sever where no severability clause or other evidence showed valid portion would have been enacted alone). "[J]udicial surgery" (*id.*) is especially

34

1  inappropriate where, as here, the invalid language is overbroad and vague.  *See Cohen v.*

2  *State*, 121 Ariz. 6, 9 (1978).

3  **VIII.   Plaintiffs Have Standing To Challenge SB 1363**

4       Plaintiffs have Article III standing where there is "(1) an injury-in-fact, (2)

5  causation, and (3) a likelihood that the injury will be redressed by a decision in [plaintiffs']

6  favor."  *Human Life of Wash. Inc. v. Brumsickle*, 624 F.3d 990, 1000 (9th Cir. 2010).

7  "When parties seek to challenge laws that allegedly criminalize protected behavior, as

8  Plaintiffs do with respect to SB 1363, . . . they need not 'risk prosecution to test their

9  rights.'"  Dismiss Order at 6 (quoting *Dombrowski v. Pfister*, 380 U.S. 479, 486 (1965)).

10  Rather, Plaintiffs satisfy the injury requirement by showing they face a well-founded fear of

11  prosecution because they have engaged in expression that "arguably falls within the

12  statute's reach," and they either intend to do so again in the future or will self-censor to

13  avoid the threat of prosecution.  *Cal. Pro-Life Council, Inc. v. Getman*, 328 F.3d 1088,

14  1094-95 (9th Cir. 2003); *LSO, Ltd., v. Stroh*, 205 F.3d 1146, 1154-55 (9th Cir. 2000).

15  Plaintiffs have met that burden here, because SB 1363 "facially discriminates against their

16  speech activity."  Dismiss Order at 6.  *See, e.g.*, SF 11-15, 18-24, 29-32 (unlawful mass

17  assembly under §23-1327); SF 11-12, 18-20, 29-32 (concerted interference under §23-

18  1321(1)); SF 14, 22, 31(unlawful picketing under §23-1322); SF 10-12, 18-20, 30-32

19  (speech "about employers" under §23-1325); SF 15-16, 23-24, 33 (trespassory assembly

20  under §23-1328); SF 10-12, 15, 18-20, 23, 29-33 (secondary boycott under §23-1321(4)).

21  Further, there is no dispute that Plaintiffs' injury is fairly traceable to SB 1363, and that it

22  would be redressed if the requested relief is granted.  Dismiss Order at 6.

### CONCLUSION

23

24       For the foregoing reasons, Plaintiffs and Plaintiff-Intervenor SEIU Arizona

25  respectfully request that the Court grant partial summary judgment declaring SB 1363

26  invalid in its entirety and permanently enjoining its enforcement.

27

28

1   Respectfully submitted this 20th day of July, 2012.

2                                     Andrew J. Kahn AZ. (SBN 15835)
                                      Elizabeth A. Lawrence AZ (SBN 201537)
3                                     Davis Cowell & Bowe LLP
4                                     2401 North Central Avenue 2nd Floor
                                      Phoenix, Arizona 85004
5                                     Telephone: (800) 622-0641
                                      ajk@dcbsf.com
6                                     *Attorneys for Plaintiffs UFCW Local 99,*
7                                     *McLaughlin, and Colbath*

8                                     Gerald Barrett (SBN 005855)
                                      Ward, Keenan & Barrett, P.C.
9                                     3838 N. Central Avenue, Suite 1720
10                                    Phoenix, AZ 85012
                                      Telephone: (602) 279-1717
11                                    gbarrett@wardkeenanbarrett.com
                                      *Attorneys for Plaintiffs UA Local 469,*
12                                    *McNally, and Rothans*

13                                    Michael Rubin (*pro hac vice*)
14                                    Jonathan Weissglass (*pro hac vice*)
                                      Jennifer Sung (SBN 026119)
15                                    P. Casey Pitts (*pro hac vice*)
                                      Altshuler Berzon LLP
16                                    177 Post Street, Suite 300
17                                    San Francisco, CA 94108
                                      Telephone:  (415) 421-7151
18                                    mrubin@altshulerberzon.com
19                                    jweissglass@altshulerberzon.com
                                      jsung@altshulerberzon.com
20                                    cpitts@altshulerberzon.com

21                                          - and -

22                                    Stanley Lubin (SBN 003074)
                                      Lubin & Enoch P.C.
23                                    349 North 4th Avenue
                                      Phoenix, Arizona  85003-1505
24                                    Telephone:  (602) 234-0008
25                                    stan@lubinandenoch.com
                                      *Attorneys for SEIU Local 5*

26
27                                    By   s/ Jennifer Sung
                                               Jennifer Sung
28

36

## CERTIFICATE OF SERVICE

I hereby certify that on _____, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to all CM/ECF registrants.


s/ Erin Flannery
Erin Flannery