Andrew J. Kahn (SBN 15835)
Elizabeth A. Lawrence (SBN 201537)
Davis Cowell & Bowe LLP
2401 North Central Avenue 2nd Floor
Phoenix, Arizona 85004
Telephone: (800) 622-0641
ajk@dcbsf.com
*Attorneys for Plaintiffs UFCW Local 99,*
*McLaughlin, and Colbath*

Gerald Barrett (SBN 005855)
Ward, Keenan & Barrett, P.C.
3838 N. Central Avenue, Suite 1720
Phoenix, AZ 85012
Telephone: (602) 279-1717
gbarrett@wardkeenanbarrett.com
*Attorneys for Plaintiffs UA Local 469,*
*McNally, and Rothans*

Stanley Lubin (SBN 003074)
Lubin & Enoch P.C.
349 North 4th Avenue
Phoenix, Arizona  85003-1505
Telephone:  (602) 234-0008
stan@lubinandenoch.com

Michael Rubin (*pro hac vice*)
Jonathan Weissglass (*pro hac vice*)
Jennifer Sung (SBN 026119)
P. Casey Pitts (*pro hac vice*)
Altshuler Berzon LLP
177 Post Street, Suite 300
San Francisco, California 94108
Telephone:  (415) 421-7151
mrubin@altshulerberzon.com
jweissglass@altshulerberzon.com
jsung@altshulerberzon.com
cpitts@altshulerberzon.com
*Attorneys for SEIU Local 5*

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United Food & Commercial Workers Local 99, *et al.*, | No. 2:11-cv-00921-GMS |
| Plaintiffs, | **PLAINTIFFS' AND PLAINTIFF-INTERVENOR SEIU ARIZONA'S OPPOSITION TO STATE DEFENDANTS' MOTION FOR SUMMARY JUDGMENT REGARDING SB 1363** |
| - and - | |
| Arizona Education Association, *et al.*, | Oral Argument Requested |
| Plaintiff-Intervenors, | Accompanying Documents: Joint Resp. to Defs.' Separate Statement of Facts |
| vs. | |
| Janice Brewer, in her capacity as Governor of the State of Arizona, *et al.*, | |
| Defendants. | |

1

**TABLE OF CONTENTS**

2

TABLE OF AUTHORITIES ................................................................................ii

3

INTRODUCTION ......................................................................................... 1

4

ARGUMENT ................................................................................................ 1

5

     I.     This Action is Ripe ................................................................... 1

6

     II.    SB 1363 Violates The First Amendment. ................................. 1

7

     III.   SB 1363 Is Impermissibly Vague........................................... 13

8

     IV.   SB 1363 is Preempted By The NLRA .................................... 15

9

CONCLUSION ............................................................................................ 17

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Alexander v. United States,*
509 U.S. 544 (1993)....................................................................................10

*Allen-Bradley Local No. 1111 v. Wisconsin Employment Relations Board,*
315 U.S. 740 (1940)....................................................................................14

*Boos v. Barry,*
485 U.S. 312 (1988)....................................................................................12

*Cameron v. Johnson,*
390 U.S. 611 (1968)....................................................................................14

*Chaker v. Crogan,*
428 F.3d 1215 (9th Cir. 2005) .....................................................................6

*Chamber of Commerce of U.S. v. Brown,*
554 U.S. 60 (2008)......................................................................................17

*Chase v. Davelaar,*
645 F.2d 735 (9th Cir. 1981) ........................................................................2

*City of Cincinnati v. Discovery Network, Inc.,*
507 U.S. 410 (1993)..................................................................................5, 6

*City of Ladue v. Gilleo,*
512 U.S. 43 (1994)....................................................................................3, 4

*Comite de Jornaleros de Redondo Beach v. City of Redondo Beach,*
657 F.3d 936 (9th Cir. 2011) ........................................................................4

*Cox v. Louisiana,*
379 U.S. 536 (1965)....................................................................................15

*Foti v. City of Menlo Park,*
146 F.3d 629 (9th Cir. 1998) ...............................................................3, 9, 12

*Giboney v. Empire Storage & Ice Co.,*
336 U.S. 490 (1949)......................................................................................2

*Hughes v. Superior Court,*
339 U.S. 460  (1950) .....................................................................................2

*Hill v. Colorado,*
530 U.S. 703, 733 (2000).............................................................................13

*Leonardson v. City of E. Lansing,*
896 F.2d 190 (6th Cir. 1990) ..................................................................11, 13

*Local 20, Teamsters, Chauffeurs and Helpers Union v. Morton,*
377 U.S. 252 (1964)....................................................................................17

*Madsen v. Women's Health Center*,
  512 U.S. 753 (1994)............................................................................... 2

*Members of City Council of Los Angeles v. Taxpayers for Vincent*,
  466 U.S. 789 (1984)............................................................................... 3

*Missouri v. National Organization for Women, Inc.*,
  620 F.2d 1301 (8th Cir. 1980) ............................................................7

*Near v. State of Minnesota ex rel. Olson*,
  283 U.S. 697 (1931)............................................................................11

*New York Times Co. v. Sullivan*,
  376 U.S. 254 (1964).............................................................................6

*R.A.V. v. St. Paul*,
  505 U.S. 377 (1992)........................................................................6, 8

*Roulette v. City of Seattle*,
  97 F.3d 300 (9th Cir. 1996) ...........................................................2, 3

*Schenck v. Pro-Choice Network of Western New York*,
  519 U.S. 357 (1997)............................................................................14

*Schneider v. State of New Jersey, Town of Irvington*,
  308 U.S. 147 (1939)............................................................................10

*SeaPak v. Industrial, Technical and Professional Employees*,
  300 F.Supp. 1197 (S.D. Ga. 1969) ....................................................16

*Sears, Roebuck & Co. v. San Diego County District Council of Carpenters*,
  436 U.S. 180 (1978)............................................................................16

*Simon & Schuster, Inc. v. Members of New York State Crime Victims Board*,
  502 U.S. 105 (1991)........................................................................6, 7

*Smart v. Local 702 International Brotherhood of Electric Workers*,
  562 F.3d 798 (7th Cir. 2009) .............................................................17

*Thornhill v. Alabama*,
  310 U.S. 88 (1940)........................................................................13, 14

*Turner Broad. System, Inc. v. F.C.C.*,
  512 U.S. 622 (1994).............................................................................5

*Vance v. Universal Amusement Co., Inc.*,
  445 U.S. 308 (1980)............................................................................11

*Wolfson v. Brammer*,
  616 F.3d 1045 (9th Cir. 2010) .............................................................1

## STATE CASES

*Baldwin v. Arizona Flame Restaurant, Inc.*,
  82 Ariz. 385 (1957)..............................................................................8

*Ex parte Bell*,
    19 Cal.2d 488 (1942) ........................................................................... 10

*Corn v. State*,
    332 So.2d 4 (Fla. 1976) ......................................................................... 2

*Helmsley-Spear, Inc. v. Fishman*,
    900 N.E.2d 934 (N.Y. Ct. App. 2008) .................................................16

*Hill v. Peterson*,
    201 Ariz. 363 (Ct. App. 2001) .............................................................16

*LaFaro v. Cahill*,
    203 Ariz. 482 (App. 2002) ...................................................................11

*Ross v. Duke*,
    116 Ariz. 298 (Ariz.App. 1976) ........................................................... 6

**FEDERAL STATUTES**

29 U.S.C. §186(c) ..........................................................................................16

359 U.S. 236 (1959)........................................................................................15

**STATE STATUTES**

A.R.S. §12-1809 .......................................................................................6, 11

A.R.S. §12-1810 .......................................................................................6, 11

A.R.S. §23-352 ...............................................................................................16

A.R.S. §23-1321 ..................................................................................2, 5, 9, 12

A.R.S. §23-1322 ......................................................................................7, 8, 9

A.R.S. §23-1324 ............................................................................................. 6

A.R.S. §23-1325 ..................................................................................2, 6, 9, 12

A.R.S. §23-1327 ...............................................................................2, 10, 12, 14

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## INTRODUCTION

SB 1363 directly regulates speech and assembly, and does so by discriminating against the speech of labor organizations and employee advocates on the basis of viewpoint, content, and speaker identity.  *See* Plaintiffs' and Plaintiff-Intervenor SEIU Arizona's MSJ re: SB 1363 (Doc. 160) ("Pltfs.' MSJ").  Consequently, SB 1363 is invalid in its entirety.  *Id.* at 2-7.

The State defendants admit the obvious: that SB 1363 is targeted at the speech and assembly of labor organizations.  State Defendants' MSJ re: SB 1363 (Doc. 165) ("Defs.' MSJ") at 19-21.  Their post-hoc attempt to provide a neutral, anti-violence rationale for SB 1363 is belied by this admission, as well as by the statute's facially discriminatory language, over- and under-inclusiveness, practical operation, and legislative history.  Pltfs.' MSJ at 2-7.  The State defendants' arguments regarding overbreadth, vagueness, and preemption are equally flawed.  Because SB 1363 is facially invalid, the State defendants' motion for summary judgment should be denied, and plaintiffs' motion should be granted.

## ARGUMENT

**I.      This Action Is Ripe.**

The State defendants make no argument regarding standing, which Plaintiffs have established (*see* Pltfs.' MSJ at 35), and which this Court has already found at the pleadings stage (Order Denying Mot. to Dismiss (Doc. 100) at 6 ("Dismiss Order")).

Defendants take issue with ripeness, asserting that the constitutionality of SB 1363 cannot be determined absent application to particular picketing.  Defs.' MSJ at 4.  This Court already rejected this argument because Plaintiffs' claims are purely legal in nature.  Dismiss Order at 6.  *See also Wolfson v. Brammer*, 616 F.3d 1045, 1060 (9th Cir. 2010).

**II.     SB 1363 Violates The First Amendment.**

1.      SB 1363 expressly restricts labor organizations' and employee advocates' First Amendment freedoms on the basis of viewpoint and content, and is therefore subject to strict scrutiny.  Pltfs.' MSJ at 2-7.  The State defendants attempt to avoid this scrutiny by arguing that "[f]or the most part, the provisions of SB 1363 regulate conduct, not speech,"

1

and that "'a sufficiently important government interest in regulating the non-speech element [of conduct] can justify incidental limitations on First Amendment freedoms.'" Defs.' MSJ at 3-4 (quoting *United States v. O'Brien*, 391 U.S. 367, 376 (1968)).

At the outset though, the State defendants concede that some of SB 1363's provisions do regulate speech. *See, e.g.*, A.R.S. §§23-1321(1); 23-1325; 23-1327(A)(4).

And where SB 1363 regulates "conduct," it regulates "patently 'expressive or communicative conduct,' such as picketing" and assembly. *Roulette v. City of Seattle*, 97 F.3d 300, 303 (9th Cir. 1996). Therefore, SB 1363 cannot be said to have only an "incidental" impact on expression, and the regulation-of-conduct analysis in *O'Brien* does not apply. *See Chase v. Davelaar*, 645 F.2d 735, 739-40 (9th Cir. 1981) (sustaining facial First Amendment attack on topless entertainment restriction because, "[u]nlike the statute challenged in *O'Brien*, [the topless dancing restriction was] not attacked for implicating conduct, generally considered non-expressive, which the actor asserts to be communicative," but for restricting conduct "ordinarily regarded as expressive").

The cases Defendants cite are not relevant, because they did not involve statutes that directly regulate picketing and assembly *per se*, like SB 1363. Those cases stand only for the proposition that a generally applicable, neutral law may be applied in a specific instance to limit expressive activity that is unlawful. *See Hughes v. Superior Court*, 339 U.S. 460, 462 (1950) (upholding common law injunction against picketing aimed at compelling store to engage in racially discriminatory hiring where "conceded purpose of the picketing . . . was unlawful"); *Giboney v. Empire Storage & Ice Co.*, 336 U.S. 490, 491-92 (1949) (upholding injunction against picketing that was "carried on as an essential and inseparable part of a course of conduct" that violated generally applicable and neutral "antitrade restraint law"); *Corn v. State*, 332 So. 2d 4, 5 (Fla. 1976) (upholding conviction for violation of generally applicable trespass law). *See also Madsen v. Women's Health Ctr.*, 512 U.S. 753, 762 (1994) (explaining First Amendment analysis of an injunction differs from that of a statute: an injunction "applies only to a particular group (or individuals) . . . because of the group's past actions in the context of a specific dispute between real parties"

1  and "the court hearing the action is charged with fashioning a remedy for a specific

2  deprivation, not with the drafting of a statute addressed to the general public").

3       2.    The State defendants also misunderstand the nature of plaintiffs' First

4  Amendment facial challenge.  "[F]acial freedom-of-expression challenges" may be directed

5  against statutes, like SB 1363, that "'by their terms,' s[eek] to regulate 'spoken words,' or

6  patently 'expressive or communicative conduct' such as picketing or handbilling."

7  *Roulette*, 97 F.3d at 303 (citing *Broadrick v. Oklahoma*, 413 U.S. 601, 612-13 (1973)).

8       The State defendants note that "[a] law is facially unconstitutional only if 'it is

9  unconstitutional in every conceivable application, or seeks to prohibit such a broad range of

10  conduct that it is unconstitutionally overbroad.'" Defs.' MSJ at 4-5 (citing *Klein v. San

11  Diego County*, 463 F.3d 1029, 1033 (9th Cir. 2006)).  But a statute is "unconstitutional in

12  every conceivable application" if it violates First Amendment standards, such as by

13  discriminating on the basis of viewpoint or content, or improperly limiting speech in a

14  public forum.  *See, e.g.*, *Members of City Council of Los Angeles v. Taxpayers for Vincent*,

15  466 U.S. 789, 804 (1984) ("[S]ome purported interests – such as a desire to suppress

16  support for a minority party or an unpopular cause, or to exclude the expression of certain

17  points of view from the marketplace of ideas – . . . are so plainly illegitimate that they

18  would immediately invalidate the rule."); *City of Ladue v. Gilleo*, 512 U.S. 43, 54-58

19  (1994) (ordinance invalid because failed to leave open sufficient alternatives); *Foti v. City

20  of Menlo Park*, 146 F.3d 629, 635 (9th Cir. 1998) (statute "could never be applied in a valid

21  manner" if it "is unconstitutionally vague or it impermissibly restricts a protected activity").

22       *Klein v. San Diego* is not to the contrary.  The plaintiffs in that case sought to picket

23  a particular residence, and brought facial and as-applied challenges to an ordinance that

24  restricted picketing within 300 feet of a "dwelling"; they conceded that the time, place, and

25  manner restriction was content-neutral, but contended it was not narrowly tailored and

26  failed to leave open ample alternative channels of communication.  463 F.3d at 1032-34.

27  The court found that the ordinance was not "unconstitutional in every application, primarily

28  because the ordinance did not have an unconstitutional effect in the test case that led to the"

3

1   suit – because, as both parties agreed, the ordinance did not actually bar the plaintiffs from

2   picketing their target.  *Id.* at 1036.  That unusual circumstance is not presented here, and

3   controlling precedent, both before and after *Klein*, establishes that a law is facially invalid if

4   it fails to meet applicable First Amendment standards, including the standard for time,

5   place, and manner restrictions.  *See, e.g.*, *Ladue*, 512 U.S. at 55; *Comite de Jornaleros de*

6   *Redondo Beach v. City of Redondo Beach*, 657 F.3d 936, 941 (9th Cir. 2011) (en banc)

7   (facially invalidating time/place/manner restriction because not narrowly tailored).

8         3.      The State defendants attempt to defend SB 1363 as a viewpoint- and content-

9   neutral time, place, and manner restriction.  Defs.’ MSJ at 5-7.  This attempt necessarily

10  fails, because SB 1363 is aimed at suppressing the viewpoint of labor organizations and

11  others who advocate on behalf of employees.  *See* Pltfs.’ MSJ at 2-7.  The State defendants

12  admit as much, explaining that SB 1363 “was enacted in a particular context with specific

13  aims” and “intended targets” (Defs.’ MSJ at 20) – i.e., “labor activities” (Defs.’ MSJ at 21),

14  such as “labor demonstrations” (Defs.’ MSJ at 19).[1]

15        The State defendants acknowledge that SB 1363 is aimed at regulating labor speech,

16  but contend that SB 1363 is neutral because it furthers a “state interest in preventing

17  violence and avoiding disruption to businesses.”  Defs.’ MSJ at 5.  This argument is wrong

18  as a matter of fact and law.  Factually, the State defendants ignore the evidence that SB

19  1363 was enacted to suppress the viewpoint of labor (Pltfs.’ MSJ at 2-7) and that the

20  purported anti-violence rationale is belied by SB 1363’s over- and under-inclusiveness.

21

22  _____

    [1] The State defendants also acknowledge, as plaintiffs demonstrated (Pltfs.’ MSJ at 6-7),
23  that even those statutory provisions couched in more generally applicable language are
    similarly aimed at restricting labor organizations’ First Amendment rights and the
24  viewpoints they express.  *See, e.g.*, Defs.’ MSJ at 19 (explaining that SB 1363 “constitutes
    a comprehensive scheme intended to minimize or prevent violence in the workplace and
25  excessive disruption of business activities *as a result of labor demonstrations*”) (emphasis
    added); *id.* at 20-21 (explaining that the “unlawful mass assembly” provisions “w[ere]
26  enacted in a particular context with specific aims” such that “a person of ordinary
    intelligence that *engages in labor activities* receives fair notice from the statutes”)
27  (emphasis added).

28

SB 1363 is overinclusive because it prohibits a wide range of non-violent speech and assembly. For example, SB 1363's "unlawful picketing" definition applies to "picketing" without limitation to "violent" or even "disruptive" picketing, and therefore restricts even peaceful picketing. SB 1363 Sec. 5 (A.R.S. §23-1322). Where SB 1363 restricts violence, it *also* explicitly restricts non-violent speech and assembly. For example, SB 1363 defines "concerted interference with lawful exercise of business activity" to restrict not only the use of violence, but also "threats of unlawful activity" (which may be peaceful, Pltfs.' MSJ at 12, 20); destruction of "intangible property" (such as business goodwill, which can only be destroyed by speech, such as public criticism, not by physical violence, Pltfs.' MSJ at 12-13); "unlawful assembly" (which encompasses peaceful assembly involving protected speech, Pltfs.' MSJ at 9-15); and "defamatory statements" (which are pure speech, Pltfs.' MSJ at 18). SB 1363 Sec. 4 (A.R.S. §23-1321(1)). SB 1363 is underinclusive because it effectively exempts non-labor speech and assembly – even if such speech and assembly is patently violent or disruptive to businesses. Pltfs.' MSJ at 4-7. If the Legislature's primary purpose in enacting SB 1363 were actually prevention of violence and business disruption, then SB 1363 would prohibit *all* such conduct, regardless of viewpoint, content, or speaker.

Legally, even if SB 1363's purpose were neutral (which it is not), its *facially* viewpoint-, content-, or speaker-based provisions would still be impermissibly discriminatory. The invalidity of such facial discrimination does not depend on the Legislature's actual motive. *Turner Broad. Sys., Inc. v. F.C.C.*, 512 U.S. 622, 642-43 (1994) ("[T]he mere assertion of a content-neutral purpose [will not] be enough to save a law which, on its face, discriminates based on content.").

Thus, the State defendants' reliance on the statement that "'[a] regulation that serves purposes unrelated to the content of expression is deemed neutral'" is misplaced. Defs.' MSJ at 5 (quoting *Ward v. Rock Against Racism*, 491 U.S. 781, 791 (1989)). Where, as here, a statute discriminates on the basis of viewpoint, content, or speaker, it is not enough to proffer a neutral justification. Rather, the state bears the burden of proving it had a neutral and compelling justification "for its *selective* ban." *City of Cincinnati v. Discovery*

5

1   *Network, Inc.*, 507 U.S. 410, 429-30 (1993) (emphasis added).  Thus, for example, "in

2   *Carey v. Brown*, 447 U.S. 455, 467-469 (1980), [the Court] recognized the State's interest

3   in preserving privacy by prohibiting residential picketing, but refused to permit the State to

4   ban only nonlabor picketing . . . because 'nothing in the content-based labor-nonlabor

5   distinction has any bearing whatsoever on privacy.'  *Id.*, at 465."  *Simon & Schuster, Inc. v.*

6   *Members of New York State Crime Victims Bd.*, 502 U.S. 105, 120 (1991).

7          4.      The State defendants' attempts to establish that particular provisions of SB

8   1363 are neutral also lack merit.

9          Defendants argue that "defamation of an employer" is not viewpoint- or content-

10  discriminatory because "[u]nder Arizona law, anyone can bring a suit for defamation."

11  Defs.' MSJ at 6.  They admit, however, that SB 1363 provides special remedies for

12  "defamation of an employer" that are not available for defamation of other subjects.  *Id.*

13  Those remedies include criminal penalties, punitive damages, and *ex parte* injunctions.

14  A.R.S. §§12-1809, 12-1810, 23-1324, 23-1325; Pltfs.' MSJ at 19-20, 30-31.  Even where a

15  state prohibits all speech in an unprotected category such as defamation, it may not

16  "single[] out certain speech within that category for special opprobrium based on the

17  speaker's viewpoint."  *Chaker v. Crogan*, 428 F.3d 1215, 1227 (9th Cir. 2005) (invalidating

18  statute criminalizing "[o]nly knowingly false speech critical of peace officer conduct" as

19  viewpoint discriminatory even though existing law already prohibited defamation

20  generally).  Because SB 1363discriminatorily imposes harsher sanctions for defamation

21  based on the content and viewpoint of the message expressed, it is invalid.  *R.A.V. v. St.*

22  *Paul*, 505 U.S. 377, 383-84 (1992); Pltfs.' MSJ at 19.[2]

23  _____
    [2] The State defendants also mischaracterize the "defamation of an employer" provision as
24  prohibiting only defamation that is made "maliciously."  Defs.' MSJ at 6.  Although §23-
    1325 defines "defamation of an employer" as "maliciously making a false statement about
25  the employer," it also expands the definition of "malice" in *New York Times Co. v.*
    *Sullivan*, 376 U.S. 254, 279-80 (1964), to include not only knowing or reckless disregard as
26  to falsity but also "negligent[] disregard[]."  SB 1363 Sec. 8 (A.R.S. §23-1325(A)(2)).  This
    is contrary to Arizona law that would apply to a defamation suit brought by a union against
27  an employer.  *See Ross v. Duke*, 116 Ariz. 298, 301 (Ariz.App. 1976).

28

1    The State defendants argue that SB 1363's secondary boycott, unlawful picketing,

2    trespassory assembly, and "no trespass public notice list" provisions are neutral,

3    notwithstanding their facially discriminatory language, because "SB 1363 is a measure that

4    regulates labor and employment, so it should not be surprising that the statutes contain

5    references to the participants in the employment relationship."  Defs.' MSJ at 6.  Under

6    defendants' reasoning, the State could discriminate against anti-abortion speech so long as

7    it does so in the context of a statute that regulates abortions.  "[T]his sort of circular

8    defense" should be rejected, *Simon & Schuster*, 502 U.S. at 120, especially in light of the

9    long line of cases holding that restrictions against picketing that differentiate between labor

10   and other speakers or subjects are constitutionally invalid.  Pltfs.' MSJ at 5.

11   The State defendants also make the circular argument that "[a] secondary boycott,

12   by definition, involves actions by labor toward a secondary employer in order to put

13   pressure on a primary employer" and that "[a]ny regulation of secondary boycotts will

14   necessarily refer to 'labor organizations' and 'employers.'"  Defs.' MSJ at 6.  But labor

15   organizations are not the only type of organization that engage in "secondary boycotts"

16   (especially given the breadth of speech and expressive activity that constitutes a "secondary

17   boycott" under SB 1363, Pltfs.' MSJ at 25-27).  For example, the National Organization for

18   Women organized a boycott of convention businesses in states that had not ratified the

19   equal rights amendment.  *State of Mo. v. Nat'l Org. for Women, Inc.*, 620 F.2d 1301, 1312

20   (8th Cir. 1980).  The Eighth Circuit held that the secondary boycott was protected by the

21   First Amendment, notwithstanding its disruptive effect on business.  *Id.* at 1319.  Because,

22   as the State defendants admit, SB 1363 restricts only labor-related secondary boycotts, it is

23   viewpoint discriminatory.  Pltfs.' MSJ at 5, 27.

24   With respect to "unlawful picketing," defendants mischaracterize SB 1363 by noting

25   that §23-1323 provides remedies against "'any person' who engages in picketing for the

26   unlawful purposes."  Defs.' MSJ at 6.  But the "unlawful picketing" provisions expressly

27   apply only to "a labor organization" – not "any person."  A.R.S. §23-1322.  Defendants

28   also incorrectly assert that the definition of "unlawful picketing" under §23-1322 "simply

7

1    recognizes that picketing for some purposes is unlawful." Defs.' MSJ at 6. As the Arizona

2    Supreme Court has explained, §23-1322(A) prohibits "a union having less than a

3    majority . . . from all peaceful picketing" "regardless of purpose." *Baldwin v. Arizona*

4    *Flame Restaurant, Inc.*, 82 Ariz. 385, 391 (1957). And, §23-1322(B) prohibits picketing

5    for *lawful* purposes – including communicative and associational purposes that are

6    themselves protected by the First Amendment. Pltfs.' MSJ at 23.

7         The State defendants' attempt to defend SB 1363's trespassory assembly provision,

8    which also applies only to labor organizations, fares no better. Defendants offer *no*

9    justification for imposing harsher criminal penalties and special civil remedies against only

10   labor organizations that trespass while exercising the right of assembly, and they fail to

11   explain why this is not content or viewpoint discrimination. Defs.' MSJ at 6.

12        Defendants are correct that states may restrict picketing or other activities if

13   "conducted for an unlawful purpose" and may regulate defamation. Defs.' MSJ at 7. But

14   that misses the point. As the Supreme Court has explained, that some "areas of speech can,

15   consistently with the First Amendment, be regulated *because of their constitutionally*

16   *proscribable content* (obscenity, defamation, etc.)" does not mean "that they are categories

17   of speech entirely invisible to the Constitution, so that they may be made the vehicles for

18   content discrimination unrelated to their distinctively proscribable content. Thus, the

19   government may proscribe libel; but it may not make the further content discrimination of

20   proscribing *only* libel critical of the government." *R.A.V.*, 505 U.S. at 383-84 (emphases in

21   original). The same analysis applies to SB 1363's restrictions of expressive activity: the

22   Court  has "long held, for example, that nonverbal expressive activity can be banned

23   because of the action it entails, but not because of the ideas it expresses." *Id.* at 385. Thus,

24   SB 1363's viewpoint- and content-discriminatory regulations of assembly, picketing, and

25   defamation are invalid. Pltfs.' MSJ at 2-7.

26        5.    Because SB 1363 discriminates on the basis of viewpoint and content, it

27   cannot be justified as a valid time, place, and manner restriction, and the Court need not

28   reach the State defendants' "narrow tailoring" and "ample alternatives" arguments. Defs.'

MSJ at 7.  In any event, defendants make no attempt to explain their conclusory assertion that SB 1363 is narrowly tailored to the purported neutral interest – which it is not.  *Supra*, at 4-5, 7 (showing over- and under-inclusiveness).  Their argument instead mostly consists of incorrect characterizations of SB 1363's scope.  They state that SB 1363 does "not burden speech" and that "[n]othing in SB 1363 prohibits peaceful picketing or handbilling for a lawful purpose"; as shown above, those assertions are inaccurate.  *Supra*, at 2, 7-8. They also state that SB 1363 does not "prohibit individuals from speaking truthfully about an employer" (Defs.' MSJ at 7); yet SB 1363 does so by, for example, defining "secondary boycott" to prohibit making truthful statements about employers that could persuade others to engage in a secondary boycott.  *See* Pltfs.' MSJ at 25-27.  Finally, defendants incorrectly claim that SB 1363 does not "prohibit individuals . . . from assembling at a place where they have permission to be."  Defs.' MSJ at 7.  But many of SB 1363's provisions restrict assembly in public forums, and the no trespass public notice list provision restricts labor organizations' and employee advocates' right to assemble on private property, even when they have a contractual or statutory right to do so.  Pltfs.' MSJ at 32-33.

6.     In their "forum analysis," defendants assert that SB 1363 "is primarily concerned with regulating activity on private property."  Defs.' MSJ at 8.  Only the trespassory assembly and no-trespass public notice list provisions, however, apply specifically to private property.  All of SB 1363's other substantive restrictions either explicitly apply to public forums, or apply to *all* locations without limit, and thus necessarily implicate expression in public forums.  *See* A.R.S. §§ 23-1321(1) (concerted interference); 23-1321(4) (secondary boycott); 23-1322 (unlawful picketing); 23-1325 (defamation of employer); 23-1327 (unlawful mass assembly); 23-1329 (publicizing enjoined picketing or assembly).  Where a restriction applies to private and public property, courts "determine . . . whether a regulation is content-based or content-neutral in the first instance, without regard to the scope of the statute."  *Foti*, 146 F.3d at 636.

The State defendants specifically address only A.R.S. §23-1327(A)(3), which makes it unlawful to "obstruct or interfere with the free and uninterrupted use of public roads,

streets, highways, railways, airports or other means of travel or conveyance." Defs.' MSJ at 8. They assert, without explanation or authority, that "a ban on obstructing or interfering with a right of way is reasonable, content-neutral, narrowly tailored, and leaves open alternative channels of communication, such as assembling or speaking in a time, place, or manner so as not to interf[ere]." Defs.' MSJ at 8. Defendants, however, admit that this provision, like SB 1363 as a whole, is aimed at suppressing labor demonstrations (Defs.' MSJ at 20; *supra*, at 4 n.1). As such, §23-1327(A)(3) is not viewpoint- and content-neutral. *See also* Pltfs.' MSJ at 6-7. Further, the purported alternative of "assembling or speaking in a time, place, or manner so as not to interf[ere]" is insufficient, because virtually all assembly "obstructs or interferes" with use of public spaces to some degree (as does, for example, any parade). *See* Pltfs.' MSJ at 11-12; *Ex parte Bell*, 19 Cal. 2d 488, 496-97 (1942) (ordinance prohibiting "hinder[ing] or obstruct[ing] . . . free passage" invalid because all peaceful picketing "constitutes to some extent an obstruction"). Moreover, defendants may not defend this provision by suggesting it permits assembly in places *other than* §23-1327(A)(3)'s long list of prohibited forums – for "the streets are natural and proper places for the dissemination of information and opinion; and one is not to have the exercise of his liberty of expression in appropriate places abridged on the plea that it may be exercised in some other place." *Schneider v. State of New Jersey, Town of Irvington*, 308 U.S. 147, 163 (1939).

    7.    The State defendants' prior restraint arguments also lack merit. First, defendants wrongly assert that the prior restraint doctrine applies only where a statute requires advance permission before engaging in speech activities. Defs.' MSJ at 8. "Temporary restraining orders and permanent injunctions – *i.e.*, court orders that actually forbid speech activities – are classic examples of prior restraints." *Alexander v. United States*, 509 U.S. 544, 550 (1993).

    Second, defendants assert that, because SB 1363 authorizes the issuance of *ex parte* injunctions against only "activities" that "are mostly concerned with conduct and its effects," speech is not at issue. Defs.' MSJ at 9. Those "activities" include "unlawful

1  picketing, trespassory assembly, unlawful mass assembly, concerted interference with
2  lawful exercise of business activity," "engaging in a secondary boycott . . . and defamation"
3  (A.R.S. §§12-1809(R); 12-1810(R)(2)), which are defined to reach a broad range of speech
4  and patently expressive activity.  Pltfs.' MSJ at 8-27.

5      Third, defendants note that "'[n]ot all injunctions that may incidentally affect
6  speech . . . are prior restraints.'"  Defs.' MSJ at 9 (quoting *Madsen*, 512 U.S. at 763 n.2).
7  That a properly tailored and content-neutral injunction may be constitutionally valid if it
8  only incidentally affects speech is beside the point.  SB 1363 authorizes the issuance of
9  injunctions that directly regulate speech and expressive activity without adequate
10  procedural protections.  Pltfs.' MSJ at 30-31.

11      Fourth, defendants wrongly contend that there is no prior restraint unless an
12  injunction issues.  Defs.' MSJ at 8-9.  But a statute that improperly *authorizes* the issuance
13  of injunctions, like SB 1363, may be invalidated on its face.  *See, e.g.*, *Vance v. Universal
14  Amusement Co., Inc.*, 445 U.S. 308, 317 (1980) (invalidating statute authorizing issuance of
15  *ex parte* injunctions against First Amendment activity); *Near v. State of Minnesota ex rel.
16  Olson*, 283 U.S. 697, 715 (1931) (invalidating statute authorizing injunctive relief against
17  defamatory publication); *Leonardson v. City of E. Lansing*, 896 F.2d 190, 198 (6th Cir.
18  1990) (invalidating ordinance empowering mayor to establish "police lines" because it
19  established "a system of prior restraint" and was vague and overbroad).

20      Finally, defendants misleadingly note that "the Arizona Court of Appeals has
21  already recognized that §23-1809 must not be interpreted and applied to enjoin pure
22  political speech," citing *LaFaro v. Cahill*, 203 Ariz. 482, ¶¶21-23 (App. 2002).  Defs.' MSJ
23  at 9.  In that case, which was decided years *before* SB 1363 was enacted, the Arizona Court
24  of Appeals concluded that §12-1809 need not be struck down in its entirety as
25  unconstitutional because "harassment" – as that term was defined *prior* to SB 1363 – could
26  be narrowly construed to exclude "pure political speech."  *Id*. at 488.  That holding has no
27  relevance here, because SB 1363 *expands* the definition of "harassment" to include
28  "unlawful picketing, trespassory assembly, unlawful mass assembly, concerted interference

11

1   with lawful exercise of business activity and engaging in a secondary boycott as defined in

2   § 23-1321 and defamation in violation of § 23-1325" (*see* SB 1363, Secs. 1 and 2) and

3   expressly defines *those* terms to encompass – and to impermissibly restrict – a wide range

4   of protected First Amendment expression.[3]

5         8.     Although SB 1363 is invalid in its entirety because it is viewpoint

6   discriminatory, many of SB 1363's provisions are also independently unconstitutional

7   because they are substantially overbroad.  Pltfs.' MSJ at 8-14, 19-23, 25-27.  The State

8   defendants specifically address the overbreadth of only one provision, §23-1327(A)(1),

9   which prohibits "hinder[ing] or prevent[ing] the pursuit of any lawful work or employment

10   by mass assembly, unlawful threats, or force."  This provision is overbroad because the

11   terms "mass assembly" and "unlawful threats" encompass substantial protected speech and

12   expressive activity, including peaceful assembly.  Pltfs.' MSJ at 8-11.

13         Defendants' argument to the contrary starts with the assertion that "the Legislature

14   only intended to proscribe violent, threatening, and disruptive conduct."  Defs.' MSJ at 10.

15   That claim is without basis.  *Supra*, at 4-5.  From this false premise, defendants reason that

16   "[t]he scope of A.R.S. §23-1327(A)(1) would not include such peaceful picketing and

17   would include only violent, threatening, and disruptive picketing."[4]  The State defendants'

18   interpretation is contrary to the statute's plain language.  Section 23-1327(A)(1) prohibits

19   "mass assembly, unlawful threats, *or* force" (emphasis added), which means that the

20   Legislature understood and intended the term "mass assembly" to mean something other

21   than "threats" *and* "force."  Defendants' construction of §23-1327(A)(1) therefore requires

22   "an interpretation precluded by the [statute's] plain language."  *Foti*, 146 F.3d at 639.  As

23   such, it should be rejected.  *See id.  See also Boos v. Barry*, 485 U.S. 312, 330 (1988)

24

---

25   [3] Defendants also cite A.R.S. §23-1327(B), but that provision applies only to SB 1363's

26   unlawful assembly provisions, and is too vague to remedy SB 1363's constitutional
    infirmities.  Pltfs.' MSJ at 14-15.

27   [4] Even if SB 1363 were aimed only at "violent, threatening, and disruptive conduct," it
    would still restrict peaceful assembly, because even peaceful assembly can be "disruptive,"

28   such as when demonstrators convey provocative or controversial messages.

1    ("[F]ederal courts are without power to adopt a narrowing construction of a state statute

2    unless such a construction is reasonable and readily apparent.").

3    **III.    SB 1363 Is Impermissibly Vague.**

4         As explained in plaintiffs' motion for summary judgment, many of SB 1363's

5    provisions are unconstitutional for the additional reason that they are impermissibly vague.

6    Pltfs.' MSJ at 11-14, 20-26.[5]  The State defendants generally contend that SB 1363 is not

7    vague because "the Legislature adopted the language in [SB 1363] in the context of

8    regulating disruptive and violent methods of picketing and demonstrating in the context of

9    labor relations" and that "[w]hen considered in this context, the intended application of the

10   disputed language is clear."  Defs.' MSJ at 18-19.  As noted above, although there is no

11   doubt that SB 1363 is aimed at picketing and demonstrating in the context of labor

12   relations, the contention that the Legislature sought to restrain only "violent and disruptive

13   methods" is without basis.  *Supra*, at 4-5.

14        Moreover, SB 1363's vague terms are not clarified when considered in the context

15   of "labor relations."  Although courts have found that context can give meaning to vague

16   terms, that is only feasible where the regulatory context is sufficiently specific and distinct,

17   such that "the special nature of a particular place or time" imposes limits.  *Leonardson*, 896

18   F.2d at 199 (distinguishing "site-specific" statutes applying only to "embassy, courthouse

19   or school").  Although defendants correctly note that SB 1363 is aimed at speech and

20   assembly in the "context of labor relations" (Defs.' MSJ at 18), that context provides no

21

22   _____
     [5] Defendants suggest that plaintiffs' facial vagueness claim is too speculative.  Defs.' MSJ

23   at 18 (citing *Hill v. Colorado*, 530 U.S. 703, 733 (2000)).  However, the statute at issue in
     *Hill*, unlike SB 1363, applied to a particular place ("'100 feet of a health care facility

24   entrance'"), and "contain[ed] a scienter requirement," which "ameliorated" vagueness
     concerns.  *Id*. at 714, 732.  In contrast, SB 1363 is indistinguishable from the statute at issue

25   in *Thornhill v. Alabama*, which the Supreme Court held was vague and facially invalid.

26   310 U.S. 88, 99-101 (1940).  Here, as in *Thornhill*, "it is apparent that one or the other of
     the offenses comprehends every practicable method whereby the facts of a labor dispute

27   may be publicized in the vicinity of the place of business of an employer," and the statute's
     terms do "not in any effective manner restrict the breadth of the regulation."  *Id.* at 99-100.

28

                                              13

1 | defining or uniform attributes that could provide clarity or guidance as to what manner of
2 | speech and assembly is or is not prohibited by SB 1363.  Even where SB 1363's restrictions
3 | apply only to places of employment, that so-called "context" also fails to provide any
4 | discernible limits because workplaces are so varied in nature – ranging from factories to
5 | shopping malls and high rise office buildings to sprawling industrial complexes.

6 |      Thus, the State defendants' argument that the use of the term "reasonable" in §23-
7 | 1327(A)(5) is not vague because "the context of the statue provides some guidance as to
8 | what conduct is unreasonable" (Defs.' MSJ at 19) lacks merit.  Defendants cite *Cameron v.*
9 | *Johnson*, 390 U.S. 611 (1968), but as defendants note, the statute at issue in that case
10 | "precluded picketing that obstructed or reasonably interfered with *ingress or egress to any*
11 | *county courthouse*."  Defs.' MSJ at 19 n.1 (emphasis added).  In contrast, §23-1327(A)(5)
12 | prohibits "assembl[ing] other than in a reasonable and peaceful manner" – *without*
13 | limitation to any particular place or time.  As such, that provision is impermissibly vague.[6]

14 |      The State defendants' remaining arguments regarding §§23-1327(A)(1) and 23-
15 | 1327(A)(3) are simply variations on this theme, and fail for the same reasons.  Defs.' MSJ
16 | at 21-22.  The cases defendants cite are either inapposite or helpful to plaintiffs.  *Schenck v.*
17 | *Pro-Choice Network of Western New York*, 519 U.S. 357 (1997), addresses the validity of a
18 | specific injunction, not a statutory ban like SB 1363.  The Court used the term "hindered"
19 | to describe the conduct that triggered the challenged injunction, but that says nothing about
20 | the vagueness of that term as it is used in §23-1327(A)(1).  *Cf. Thornhill*, 310 U.S. at 99-
21 | 100 (voiding vague statute that restricted "'picket[ing] . . . for the purpose of hindering,
22 | delaying, or interfering with or injuring any lawful business or enterprise of another'").
23 | *Allen-Bradley Local No. 1111 v. Wisconsin Employment Relations Board*, 315 U.S. 740

24 |
25 | [6] Defendants also contend that the term "reasonable" is not vague because "the proscribed
26 | conduct must be other than 'reasonable <u>and</u> peaceful.'"  Defs.' MSJ at 19 (emphasis in original).  To the extent that defendants are contending that the use of the word "and" means only violent assembly is prohibited, they have it backwards.  The requirement that assembly be both "reasonable and peaceful" means that assembly is prohibited if it is *either*
27 | 
28 | unreasonable *or* unpeaceful.

1  (1940), did not even involve a First Amendment challenge.  Finally, defendants incorrectly

2  state that "the Supreme Court upheld government regulations regulating obstruction and

3  interference with public ways of travel" in *Cox v. Louisiana*, 379 U.S. 536, 555 (1965).

4  Defs.' MSJ at 22.  The Court actually held that the statute was unconstitutional, *id.* at 558:

5  "Although the statute . . . on its face preclude[d] all street assemblies and parades, it ha[d]

6  not been so applied and enforced."  *Id.* at 555-56.  The Court concluded that the situation

7  was "the same as if the statute itself expressly provided that there could only be peaceful

8  parades or demonstrations in the unbridled discretion of the local officials," and that such

9  "unfettered discretion" was "an unwarranted abridgment of . . . freedom of speech and

10  assembly."  *Id.* at 557-58.  Most pertinent, the Court noted that it had "no occasion . . . to

11  consider the constitutionality of the uniform, consistent, and nondiscriminatory application

12  of a statute forbidding all access to streets and other public facilities for parades and

13  meetings," but expressed doubt as to its validity.  *Id.* at 555 and n.13.

14  **IV.     SB 1363 Is Preempted By The NLRA.**

15          1.      The State defendants argue that the NLRA does not preempt SB 1363's

16  regulation of "unlawful picketing, trespassory assembly, unlawful mass assembly, and

17  concerted interference with the lawful exercise of business activity," on the theory that

18  "these activities cause disruption to business" and thus "the State's interest in regulating

19  them touches interests deeply rooted in local feeling and responsibility."  Defs.' MSJ at 15.

20  Even if those provisions restricted only business disruption (which they do not, *supra*, at 5),

21  they would be preempted.  Under *San Diego Bldg. Trades Council, Millmen's Union, Local

22  2020 v. Garmon*, a state's interest in protecting businesses is not, in itself, an "interest[]

23  deeply rooted in local feeling and responsibility."  359 U.S. 236, 244 (1959).  In *Garmon*,

24  the Court held that a business's state tort action for damages arising from peaceful

25  picketing was preempted because such picketing was "arguably within the compass" of the

26  NLRA and the action was not limited to damages arising from violence.  *Id.* at 246-48.  If,

27  as defendants suggest, there were an exception to preemption for all laws regulating

28  business disruption, that exception would swallow the rule.

1    The cases defendants cite do not hold otherwise.  Defs.' MSJ at 15-16.  In *Sears,*

2    *Roebuck & Co. v. San Diego County Dist. Council of Carpenters*, 436 U.S. 180 (1978)

3    (Defs.' MSJ at 15), the Supreme Court held that an action brought under generally

4    applicable trespass law was not preempted, while reiterating that *Garmon* preemption "has

5    its greatest force when applied to state laws regulating the relations between employees,

6    their union, and their employer," such as SB 1363.  *Id.* at 193.  After *Garmon*, state labor

7    relations statutes, like SB 1363, are NLRA-preempted unless they deal solely with

8    violence.  359 U.S. at 247-48 and n.6.

9    Defendants' other cases, like *Sears*, involve traditional common law tort actions.

10   *See Helmsley-Spear, Inc. v. Fishman*, 900 N.E.2d 934, 938 (N.Y. Ct. App. 2008) (nuisance)

11   and  *Hill v. Peterson*, 201 Ariz. 363, 366 (Ct. App. 2001) ("tortious interference with

12   prospective business relations").  Because SB 1363 is a limited labor relations statute, not a

13   generally applicable common law tort, those cases are inapposite.  Moreover, the State's

14   purported interest in preventing business disruption is already addressed under pre-existing

15   law, because Arizona recognizes an action for tortious interference with prospective

16   business relations.

17   2.    A.R.S. §23-352, which makes an authorization for dues deduction

18   immediately revocable notwithstanding contractual agreements to the contrary, is also

19   preempted.  Pltfs.' MSJ at 28-29.  Defendants' argument to the contrary ignores that §23-

20   352 conflicts with the NLRA provision that expressly permits contractual limitations on

21   such revocations, 29 U.S.C. §186(c)(4), and is therefore preempted.  *See SeaPak v.*

22   *Industrial, Technical and Professional Employees*, 300 F.Supp. 1197, 1200-01 (S.D. Ga.

23   1969), *aff'd*, 423 F.2d 1229 (5th Cir. 1970), *aff'd*, 400 U.S. 985 (1971); Pltfs.' MSJ at 28-

24   29.  Defendants note that Arizona's right-to-work laws are not preempted, but that is beside

25   the point because §23-352 pertains to dues authorization, not mandatory union

26   membership, and, as defendants acknowledge, the NLRA expressly exempts right-to-work

27   laws from preemption.  Defs.' MSJ at 16 (citing 29 U.S.C. §164(b)).

28   3.    SB 1363's secondary boycott provisions are also preempted.  Pltfs.' MSJ at

16

27-28.  Defendants admit, as they must, that there is "conflict between A.R.S. §23-1323 and §303 of the LMRA," and that SB 1363 expands the remedies for §23-1323's secondary boycott provisions (Defs.' MSJ at 17), which only exacerbates the conflict with federal law. Defendants further acknowledge that the Seventh Circuit has held that "federal law preempts the field with respect to secondary boycotts."  *Id.  See Smart v. Local 702 Int'l Bhd. of Elec. Workers*, 562 F.3d 798, 808 (7th Cir. 2009).  Defendants also acknowledge that the Supreme Court held in *Local 20, Teamsters, Chauffeurs and Helpers Union v. Morton*, 377 U.S. 252, 261 (1964), that "state law has been displaced by §303 in private damages actions based on peaceful union secondary activities."  Defs.' MSJ at 17. Defendants, however, incorrectly assert that the Supreme Court "stopped short of saying that federal law preempted the field."  To the contrary, the Court explained that it was "necessary to determine whether by enacting §303, Congress occupied this field and closed it to state regulation," and ultimately concluded that Congress had done so.  377 U.S. at 258-62 (quotation omitted).

Defendants nonetheless contend that "without a concrete controversy, we are unable to rule out the possibility that there might be secondary boycott activity of a nature that it would be most appropriately remedied under state law."  Defs.' MSJ at 17.  Defendants misunderstand the nature of field preemption, which by definition precludes *all* actions encompassed within that field regardless of their particular facts.[7]

## CONCLUSION

For the foregoing reasons, Plaintiffs and Plaintiff-Intervenor SEIU Arizona respectfully request that the Court deny the State defendants' motion for summary judgment and instead grant plaintiffs' motion for summary judgment declaring SB 1363 invalid in its entirety and permanently enjoining its enforcement.

---

[7] To the extent defendants are suggesting that NLRA preemption does not facially invalidate statutes, they are wrong.  *See, e.g.*, *Chamber of Commerce of U.S. v. Brown*, 554 U.S. 60 (2008) (facially invalidating statute because preempted under *Machinists*). Plaintiffs facially challenge SB 1363 because it is preempted as to the private sector, and the statute falls in its entirety because it is not severable.  Pltfs.' MSJ at 34.

1    Respectfully submitted this 30th day of August, 2012.

2                                    Andrew J. Kahn AZ. (SBN 15835)
                                     Elizabeth A. Lawrence AZ (SBN 201537)
3                                    Davis Cowell & Bowe LLP
                                     2401 North Central Avenue 2nd Floor
4                                    Phoenix, Arizona 85004
5                                    Telephone: (800) 622-0641
                                     ajk@dcbsf.com
6                                    *Attorneys for Plaintiffs UFCW Local 99,*
7                                    *McLaughlin, and Colbath*

8                                    Gerald Barrett (SBN 005855)
                                     Ward, Keenan & Barrett, P.C.
9                                    3838 N. Central Avenue, Suite 1720
10                                   Phoenix, AZ 85012
                                     Telephone: (602) 279-1717
11                                   gbarrett@wardkeenanbarrett.com
                                     *Attorneys for Plaintiffs UA Local 469,*
12                                   *McNally, and Rothans*

13                                   Michael Rubin (*pro hac vice*)
14                                   Jonathan Weissglass (*pro hac vice*)
                                     Jennifer Sung (SBN 026119)
15                                   P. Casey Pitts (*pro hac vice*)
                                     Altshuler Berzon LLP
16                                   177 Post Street, Suite 300
17                                   San Francisco, CA 94108
                                     Telephone:  (415) 421-7151
18                                   mrubin@altshulerberzon.com
19                                   jweissglass@altshulerberzon.com
                                     jsung@altshulerberzon.com
20                                   cpitts@altshulerberzon.com

21                                        - and -

22                                   Stanley Lubin (SBN 003074)
                                     Lubin & Enoch P.C.
23                                   349 North 4th Avenue
                                     Phoenix, Arizona  85003-1505
24                                   Telephone:  (602) 234-0008
25                                   stan@lubinandenoch.com
                                     *Attorneys for SEIU Local 5*
26
                                     By   s/ Jennifer Sung_____
27                                           Jennifer Sung
28

                                         18

1

**CERTIFICATE OF SERVICE**

2

     I hereby certify that on August 30, 2012, I electronically transmitted the attached

3

document to the Clerk's Office using the CM/ECF System for filing and transmittal of a

4

Notice of Electronic Filing to all CM/ECF registrants.

5

6

7

                 s/ Sally Mendez Arevalo
                 Sally Mendez Arevalo

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PLTFS' AND PLTF-INTERVENOR SEIU ARIZONA'S JT. MSJ RE: SB 1363