Andrew J. Kahn (SBN 15835)
Elizabeth A. Lawrence (SBN 201537)
Davis Cowell & Bowe LLP
2401 North Central Avenue 2nd Floor
Phoenix, Arizona 85004
Telephone: (800) 622-0641
ajk@dcbsf.com
*Attorneys for Plaintiffs UFCW Local 99,*
*McLaughlin, and Colbath*

Gerald Barrett (SBN 005855)
Ward, Keenan & Barrett, P.C.
3838 N. Central Avenue, Suite 1720
Phoenix, AZ 85012
Telephone: (602) 279-1717
gbarrett@wardkeenanbarrett.com
*Attorneys for Plaintiffs UA Local 469,*
*McNally, and Rothans*

Stanley Lubin (SBN 003074)
Lubin & Enoch P.C.
349 North 4th Avenue
Phoenix, Arizona  85003-1505
Telephone:  (602) 234-0008
stan@lubinandenoch.com

Michael Rubin (*pro hac vice*)
Jonathan Weissglass (*pro hac vice*)
Jennifer Sung (SBN 026119)
P. Casey Pitts (*pro hac vice*)
Altshuler Berzon LLP
177 Post Street, Suite 300
San Francisco, California 94108
Telephone:  (415) 421-7151
mrubin@altshulerberzon.com
jweissglass@altshulerberzon.com
jsung@altshulerberzon.com
cpitts@altshulerberzon.com
*Attorneys for SEIU Local 5*

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| United Food & Commercial Workers Local 99, *et al.*, | Case No: CV11-921-PHX-GMS |
| Plaintiffs, | **PLAINTIFFS' AND PLAINTIFF-INTERVENORS' JOINT RESPONSE TO DEFENDANTS HORNE AND BENNETT'S STATEMENT OF FACTS** |
| - and - | |
| Arizona Education Association, *et al.* | |
| Plaintiff-Intervenors, | |
| vs. | |
| Ken Bennett, in his capacity as Secretary of State of the State of Arizona, *et al.*, | |
| Defendants. | |

Plaintiffs and Plaintiff-Intervenors hereby provide the following joint response to Defendants' Statement of Undisputed Material Facts in Support of Defendants' Motions for Summary Judgment:

**SB 1365**

| Defendants' Undisputed Material Facts and Supporting Evidence | Plaintiffs & Plaintiff-Intervenors' Response and Supporting Evidence |
|---|---|
| 1.      A Check-Off Authorization, by which members may authorize the deduction of union dues from their wages, is attached to the UFCW Local 99 membership application.<br><br>(Ex. 1 [UFCW Local 99 Membership Application].) | Undisputed. |
| 2.      The UFCW Local 99 Check-Off Authorization provides for the deduction of "an amount equivalent to dues and initiation fees" from a member's wages but does not indicate that any portion of the amount deducted will be used for political purposes.<br><br>(Ex. 1.) | Undisputed. |
| 3.      Over 99 percent of UFCW Local 99 members pay dues via payroll deduction.<br><br>(Ex. 2 [UFCW Local 99 Answer to Interrogatory 1].) | Undisputed. |
| 4.      An Authorization for Political Check-Off, by which members of UFCW Local 99 may authorize contributions to the UFCW 99 Arizona PAC to be deducted from their wages, is also attached to the UFCW Local 99 membership application.<br><br>(Ex. 1.) | Undisputed. |

| | |
|---|---|
| 5.      The UFCW Authorization for Political Check-Off states that the money received by the UFCW 99 Arizona PAC will be used "for political purposes including but not limited to making contributions to and expenditures for candidates for Arizona state and local offices only and for addressing political issues of public importance."<br><br> (Ex. 1.) | Undisputed. |
| 6.      Approximately 56 percent of UFCW Local 99 members have authorized a separate deduction to the union's PAC.<br><br>(Ex. 2 [UFCW Local 99 Answer to Interrogatory 2.) | Undisputed. |
| 7.      The authorizations for dues deductions to UFCW Local 99 state:<br><br>This authorization and assignment shall be irrevocable for a period of one (1) year from the date of execution or until the termination date of the agreement between the Employer and Local 99, whichever occurs sooner, and from year to year thereafter, unless not less than thirty (30) days and not more than forty-five (45) days prior to the end of any subsequent yearly period or termination date of the agreement between the Employer and Local 99, I give the Employer and Union written notice of revocation bearing my signature thereto.<br><br>(Ex. 1.) | Undisputed. |
| 7.      Over 99 percent of UA Local 469's members pay their dues via payroll deduction.<br><br>(Ex. 3 [Local 469 Answer to Interrogatory | Undisputed. |

| | |
|---|---|
| 1].) | |
| 8.      Approximately 90 percent of UA Local 469 members have authorized a separate deduction for the union's PAC.<br><br>(Ex. 3 [Local 469 Answer to Interrogatory 2].) | Undisputed. |
| 9.      Ninety percent of SEIU Arizona's members pay dues via payroll deduction.<br><br>(Ex. 4 [SEIU Answer to Interrogatory No. 1].) | Undisputed. |
| 11.     When asked what procedural rights are available to members of SEIU Arizona who object to the union's spending for political purposes, SEIU Arizona stated that members who object have the right to resign their memberships. (Ex. 4 [SEIU Answer to Interrogatory No. 3].) | Undisputed. |
| 12.     On March 17, 2011, AFSCME Local 3111 posted a statement on its website in reference to pending legislation to eliminate dues deductions: "Arizona state employees' dues monies are not used for political purposes, either locally or nationally, and in fact we are forbidden by law to do so. If a member of any organization wanted to contribute to a political cause through their organization, they would write a separate check to the organization for such a purpose. Local dues money of state employees is not being transmitted out of state to support campaign issues or causes."<br><br>(Ex. 5.) | Undisputed. |
| 13.     One hundred percent of the members of AFSCME Local 3111, Local 449, Local 2384, Local 2960, and Local 3282 pay their dues via payroll deductions. | Undisputed. |

| | |
|---|---|
| (Exs. 6-10 [AFSCME Local 3111 Answer to Interrogatory No. 1, AFSCME Local 449 Answer to Interrogatory No. 1, AFSCME Local 2384 Answer to Interrogatory No. 1, AFSCME Local 2960 Answer to Interrogatory No. 1, AFSCME Local 3282 Answer to Interrogatory No. 1].) | |
| 14.    Members of AFSCME Locals 3111, 449, 2384, 2960, and 3282 who object to the expenditure of any portion of dues for partisan political or ideological purposes have a right to apply for a rebate of that portion or, alternatively, they may resign their memberships.<br><br>(Exs. 6-10 [AFSCME Local 3111 Answer to Interrogatory No. 3, AFSCME Local 449 Answer to Interrogatory No. 3, AFSCME Local 2384 Answer to Interrogatory No. 3, AFSCME Local 2960 Answer to Interrogatory No. 3, AFSCME Local 3282 Answer to Interrogatory No. 3].) | Undisputed. |
| 15.    The percentage of Arizona Education Association members who pay dues via payroll deduction is .24.<br><br> (Ex. 11 [AEA Answer to Interrogatory 1].) | Undisputed. |
| 16.    The Arizona Education allows members to opt out of the portion of membership dues remitted to the AEA Education Improvement Fund, which makes expenditures to support or oppose legislation and ballot initiatives, and AEA members who object to the organization's spending for any purpose may resign their memberships.<br><br>(Ex. 11 [AEA Answer to Interrogatory 3].) | Undisputed. |
| 17.    The percentage of Arizona | Undisputed. |

| | |
|---|---|
| Federation of Teachers members who pay dues via payroll deduction is 94.5.<br><br>(Ex. 12 [AFT Answer to Interrogatory 1].) | |
| 18.     Members of AFT who object to the organization's spending for any purpose may resign their memberships.<br><br>(Ex. 12 [AFT Answer to Interrogatory 3].) | Undisputed. |
| 19.     As of February 2012, State officers or employees could authorize deductions for dues to seven associations: AFSCME 3111, Arizona Correctional Peace Officers Association, Arizona Highway Patrol Association, Fraternal Order of Police, Arizona Police Association, American Conference of Police and Sheriffs, and SEIU.<br><br>(Ex. 13 [Declaration of Stu R. Wilbur, ¶ 3].) | Undisputed. |
| 20.     The State employees who have authorized deductions for AFSCME 3111 include employees in the job classifications of Correctional Officer II, Correctional Officer III, CPS Specialist III, Dental Assistant, Fish Hatchery Mgr I, Laundry Worker II, Plumber, Senator, Youth Correctional Officer II, and many others.<br><br>(Ex. 13 [Declaration of Stu R. Wilber, ¶ 4].) | Undisputed. |
| 21.     The State employees who have authorized deductions for the Arizona Correctional Peace Officers Association (AZCPOA) include employees in the job classifications of ASH (Arizona State Hospital) Security Officer I, Buyer II, Clerk Typist II, Community Corrections Officer, Correctional Officer II, | Undisputed. |

| | |
|---|---|
| Correctional Officer III, Electrician, Natural Resources Mgr I, and many others.<br><br>(Ex. 13 [Declaration of Stu R. Wilbur, ¶ 5].) | |
| 22.    The State employees who have authorized deductions for the Arizona Highway Patrol Association (coded as DPS Dues) include employees in the job classifications of Administrative Assistant, Auto/Motorcycle Technician, Capitol PD Sergeant, Criminal Records Specialist, Officer, Police Communications Dispatcher, Roadside Motorist Assistant, Sergeant II, and many others.<br><br>(Ex. 13 [Declaration of Stu R. Wilbur, ¶ 6].) | Undisputed. |
| 23.    The State employees who have authorized deductions for the Fraternal Order of Police (FOP) include employees in the job classifications of ADMV Secretary II, AG Special Agent, Capitol PD Officer, Correctional Officer II, Correctional Sgt, EEO Officer/Investigator, Information Tech Specialist III, Officer, Senior Legal Assistant, Telecommunications Equipment Technician, and many others.<br><br>(Ex. 13 [Declaration of Stu R. Wilbur, ¶ 7].) | Undisputed. |
| 24.    The State employees who have authorized deductions for the Arizona Police Association (APA) include employees in the job classifications of ADMV Assistant II, Building Maintenance Specialist, Correctional Officer II, Criminal Special Investigator, Electrician, Local/Wide Area Network Specialist, Pharmacy Tech, Refrigeration Mechanic, Youth Correctional Officer I, and many | Undisputed. |

| | |
|---|---|
| others. (Ex. 13 [Declaration of Stu R. Wilbur, ¶ 8].) | |
| 25.    The State employees who have authorized deductions for the Arizona Conference of Police and Sheriffs (AZCOPS) include employees in the job classifications of Capitol PD Officer, Correctional Food Services Specialist, Correctional Substance Abuse Counselor Sr., Electrician, Natural Resources Mgr, Officer, Psychology Associate II, Youth Correctional Officer II, and many others.<br><br>(Ex. 13 [Declaration of Stu R. Wilbur, ¶ 9]. | Undisputed. |
| 26.    The State employees who have authorized deductions for SEIU include employees in the job classifications of Risk Management Loss Prevention Consultant, Clerk Typist III, CPS Specialist III, Economist II, Hwy Sign Fabricator II, Park Ranger II, Program Services Evaluator III, and many others.<br><br>(Ex. 13 [Declaration of Stu R. Wilbur, ¶ 10].) | Undisputed. |
| 27.    Of the 1600 union members at Salt River Project who pay union dues by payroll deduction, there are approximately 325 who have authorized contributions to the union's political action committee.<br><br>(Ex. 14 [Declaration of Ernie Mariner, ¶ 3].) | Undisputed. |
| 28.    Through the State Employees Charitable Campaign, employees of the State of Arizona may annually authorize payroll deductions for contributions to 501(c)(3) charitable organizations.<br><br>(Ex. 15.) | Undisputed. |

| | |
|---|---|
| 29.     Through the Maricopa County Employees Combined Charitable Campaign, employees of Maricopa County may annually authorize payroll deductions for contributions to 501(c)(3) charitable organizations.<br><br>(Ex 16.) | Undisputed. |

**SB 1363**

| Defendants' Undisputed Material Facts and Supporting Evidence | Plaintiffs' & Plaintiff-Intervenors' Response and Supporting Evidence |
|---|---|
| 30.     UFCW Local 99 picketed Wal-Mart in 2010 and since 2008 has assisted other unions in picketing on a few occasions.<br><br>(Ex. 17 [UFCW Answer to Interrogatory No. 1 re SB 1363].) | Undisputed. |
| 31.     During the past five years, UFCW Local 99 has on several occasions engaged in handbilling and other activities to publicize working conditions and labor practices of certain Arizona employers.<br><br>(Ex. 17 [UFCW Answer to Interrogatory No. 2 re SB 1363].) | Undisputed. |
| 32.     Since 2008, no member, employee, or agent of UFCW Local 99 has been arrested in connection with any picketing or other activity to publicize the working conditions or labor records of an Arizona employer.<br><br>(Ex. 17 [UFCW Answer to Interrogatory No. 3 re SB 1363].) | Undisputed. |
| 33.     In 2007, Bashas Grocery Stores filed an action in Superior Court seeking an injunction and alleging defamation against UFCW Local 99. | Undisputed. |

| | |
|---|---|
| (Ex. 17 [UFCW Answer to Interrogatory Nos. 4-5 re SB 1363].) | |
| 34.    Since 2010, UFCW Local 99 has not been charged by any prosecutor or grand jury with violating A.R.S. § 23-1322.<br><br>(Ex. 18 [UFCW Response to RFA 1 re SB 1363].) | Undisputed. |
| 35.    Since the passage of SB 1363, UFCW Local 99 has not been charged by any prosecutor or grand jury with violating A.R.S. § 23-1327.<br><br>(Ex. 18 [UFCW Response to RFA 2 re SB 1363].) | Undisputed. |
| 36.    Since the passage of SB 1363, UFCW Local 99 has not been charged by any prosecutor or grand jury with violating A.R.S. § 23-1328.<br><br>(Ex. 18 [UFCW Response to RFA 3 re SB 1363].) | Undisputed. |
| 37.    Since the passage of SB 1363, UFCW Local 99 has not been charged by any prosecutor or grand jury with violating A.R.S. § 23-1329.<br><br>(Ex. 18 [UFCW Response to RFA 4 re SB 1363].) | Undisputed. |
| 38.    Since the passage of SB 1363, UFCW Local 99 has not been sued for defamation of an employer.<br><br>(Ex. 18 [UFCW Response to RFA 5 re SB 1363].) | Undisputed. |
| 39.    No employer with whom UFCW Local 99 has a bargaining relationship is on a no trespass public notice list with the | Undisputed. |

| | |
|---|---|
| Secretary of State.<br><br>(Ex. 18 [UFCW Response to RFA 6 re SB 1363].) | |
| 40.     Since 2008, UA Local 469 has not engaged in any picketing activity.<br><br>(Ex. 19 [UA Local 469 Answer to Interrogatory 1 re SB 1363].) | Undisputed. |
| 41.     Since 2008, no member, employee, or agent of UA Local 469 has been arrested in connection with any picketing or other activity to publicize the working conditions or labor records of an Arizona employer.<br><br>(Ex. 19 [UA Local 469 Answer to Interrogatory No. 3 re SB 1363].) | Undisputed. |
| 42.     Since 2008, no Arizona employer has sought an injunction against UA Local 469. (Ex. 19 [UA Local 469 Answer to Interrogatory No. 4 re SB 1363].) | Undisputed. |
| 43.     Since 2010, UA Local 469 has not been charged by any prosecutor or grand jury with violating A.R.S. § 23-1322.<br><br>(Ex. 20 [UA Local 469 Response to RFA 1 re SB 1363].) | Undisputed. |
| 44.     Since the passage of SB 1363, UA Local 469 has not been charged by any prosecutor or grand jury with violating A.R.S. § 23-1327.<br><br>(Ex. 20 [UA Local 469 Response to RFA 2 re SB 1363].) | Undisputed. |
| 45.     Since the passage of SB 1363, UA Local 469 has not been charged by any prosecutor or grand jury with violating A.R.S. § 23-1328. | Undisputed. |

| | |
|---|---|
| (Ex. 20 [UA Local 469 Response to RFA 3 re SB 1363].) | |
| 46.     Since the passage of SB 1363, UA Local 469 has not been charged by any prosecutor or grand jury with violating A.R.S. § 23-1329.<br><br>(Ex. 20 [UA Local 469 Response to RFA 4 re SB 1363].) | Undisputed. |
| 47.     Since the passage of SB 1363, UA Local 469 has not been sued for defamation of an employer.<br><br>(Ex. 20 [UA Local 469 Response to RFA 5 re SB 1363].) | Undisputed. |
| 48.     The Secretary of State has promulgated rules to establish a no trespass public notice list and has created an application form for the list.<br><br>(Ex. 21 [Declaration of Jim Drake, ¶¶ 2-3].) | Undisputed. |
| 49.     As of July 19, 2012, no employers have filed to be on the Secretary of State no trespass public notice list.<br><br>(Ex. 21 (Declaration of Jim Drake, ¶ 4].) | Undisputed. |

Plaintiffs and Plaintiff-Intervenors submit the following additional undisputed material facts in Opposition to Defendants' Motions for Summary Judgment.

### SB 1365

| Plaintiffs' Undisputed Material Fact | Supporting Evidence |
|---|---|
| 1.     Plaintiff United Food and Commercial Workers Local 99R ("UFCW") is a labor organization. | Declaration of James McLaughlin, Doc. No. 19 (hereinafter "McLaughlin") ¶ 1.  Plaintiff James McLaughlin serves as the chief executive officer of the UFCW. *Id.* Plaintiff Roberta Colbath is a member of the UFCW. |

| | |
|---|---|
| 2.      The UFCW serves as the collective bargaining representative of employees working for over 23 different employers, most in the retail grocery industry. | McLaughlin¶ 1. |
| 3.      The UFCW has over 18,000 members. | McLaughlin¶ 1. |
| 4.      Plaintiff Local 469 of the United Association of Journeymen and Apprentices of the Plumbing and Pipefitting Industry of the United States and Canada ("Local 469") is a labor organization. | Declaration of Phillip McNally, Doc. No. 17 (hereinafter "McNally") ¶ 1. |
| 5.      Local 469 serves as the collective bargaining representative of employees working for over a multitude of mechanical and plumbing contractors and cooling service contractors. | McNally ¶ 9. |
| 6.      Local 469 has over 2,500 members. | McNally ¶ 9. |
| 7.      Each union operates by way of a constitution under which members elect officers and approve by secret ballot any and all dues assessments. | McNally ¶ 10 – 12, 20 -22; McLaughlin ¶4. |
| 8.      Each union conducts regular membership meetings and otherwise reports to its membership on its affairs. | McNally ¶¶ 11 – 14; 33; McLaughlin ¶ 5. |
| 9.      Each union spends treasury dollars on matters such as lobbying, ballot issues and other matters related to politics that will impact working conditions for the membership. | McNally ¶¶ 8, 15, 17, 18, 19; McLaughlin ¶ 5 - 8. |
| 10.      Each plaintiff union is party to collective bargaining agreements which provide for the employer to deduct union dues from employees who voluntarily sign authorization cards and remit those | McNally ¶¶ 23, 29, 30; McLaughlin ¶ 2. |

| | |
|---|---|
| amounts to the union. | |
| 11.      The vast majority of the members of each union voluntarily choose to pay their dues through checkoff procedures. | McNally ¶ 33. McLaughlin ¶ 2 |
| 12.      The authorization forms used by each union provide that the form is irrevocable for a period of not more than one year, or beyond the termination date of the applicable collective agreement, whichever occurs sooner. | McNally ¶ 29, McLaughlin ¶ 3. |
| 13.      The authorization form used by the UFCW provides that the form remains in effect for the year regardless of whether the employee desires to terminate membership sooner ("This Check-off authorization is separate and apart from the Membership Application and is attached to the Membership Application solely for convenience. * * * This authorization and assignment is voluntarily made in consideration for the cost of representation and collective bargaining and is not contingent upon my present or future membership in the Union."). In addition, UFCW's form sets a window period each year between 45 days and 30 days prior to its expiration when employees can call a halt to dues deductions. | McLaughlin ¶ 3 |
| 14.      The annual opt-in feature of SB 1365 will burden each union which will need to secure new cards from all of its members. | McNally ¶ 32; McLaughlin ¶ 5, 9 |
| 15.      The annual opt-in feature of SB 1365 will burden members who will be required to sign new cards each year. | McNally ¶ 31, 33. |
| 16.      The annual opt-in feature of SB 1365 will burden employers by requiring them to monitor each employee's status, as | McNally ¶ 31, 34. |

| | |
|---|---|
| each employee will have a different anniversary date. | |
| 17.    Because a portion of each plaintiff union's dues go to an international union which also spends a portion of its funds on lobbying, neither plaintiff union can eliminate the burdens of SB 1365 by choosing itself not to lobby. | McLaughlin ¶ 6; McNally ¶¶ 6 – 8. |

| Plaintiff-Intervenors' Undisputed Material Fact | Supporting Evidence |
|---|---|
| 1.    Arizona law prohibits unions from requiring bargaining unit members to join a union or to pay union fees or dues as a condition of employment. | See Ariz. Const. art. 25; A.R.S. §§ 23-1301 et. seq. |
| 2.    Arizona employees who pay union dues do so wholly voluntarily for the chosen purpose of being a union member. | Dkt. #75-1, Ex. A, Decl. of Sheryl Mathis, ¶6; *Id.*, Ex. B, Decl. of Declaration of Don Carr, ¶ 6; *Id.*, Ex. C, Decl. of Jerald Spreitzer, ¶ 6; *Id.*, Ex. D,  Decl.  of James P. Tierney II, ¶ 9; *Id.*, Ex. E, Decl. of Nancy Gray, ¶ 6; *Id.*, Ex. F., Decl. of Sheri Van Horsen, ¶ 7; *Id.*, Ex. G, Decl. of Roman W. Ulman, ¶ 8. |
| 3.    Before 2011, public employers in Arizona could deduct union dues from an employee's paycheck with the employee's consent and upon the employee's written request. | Dkt. #75-1, Ex. A, Mathis Decl. ¶ 7; *Id.*, Ex. B, Carr Decl. ¶ 7; *Id.*, Ex. C, Spreitzer Decl. ¶ 7; *Id.*, Ex. D, Tierney Decl. ¶ 10; *Id.*, Ex. E, Gray Decl. ¶ 7; *Id.*, Ex. F., Van Horsen Decl. ¶ 8; *Id.*, Ex. G, Ulman Decl. ¶ 9. See also A.R.S. § 23-352; Att'y Gen. Op. I86-49 (1986). |
| 4.    On January 31, 2011, SB 1365, the "Protect Arizona Employees' Paychecks from Politics Act," was introduced to the Arizona Senate. | See Ariz. State Legislature Website, SB 1365 Bill Status Overview, available at http://www.azleg.gov// FormatDocument.asp?inDoc=/legtext/50leg/ 1r/bills/sb1365o.asp&Session_ID=102. |
| 5.    SB 1365 requires all organizations collecting funds through payroll deductions—other than certain | A.R.S. § 23--361.02(B). |

| | |
|---|---|
| organizations and deductions specifically exempted from the law—either to affirm to the employers who process the deductions that none of their general fund is used for "political purposes," or to specify the percentage of their general fund so used. | |
| 6.     SB 1365 defines "political purposes" to mean "supporting or opposing any candidate for public office, political party, referendum, initiative, political issue advocacy, political action committee, or other similar group." | A.R.S. § 23-361.02(I). |
| 7.     Under SB 1365, employers may not remit the percentage of an employee's deduction used for political purposes to an organization covered by the law without written authorization from the employee, and the employee consent must be reauthorized each year. | A.R.S. § 23-361.02(B), (C). |
| 8.     An organization covered by SB 1365 that receives funds from payroll deduction is subject to a minimum civil fine of $10,000 if it spends more of its operating fund on political purposes than the percentage it reported to the employer. | A.R.S. § 23-361.02(D). |
| 9.     The penalty provision of SB 1365 contains no knowledge or intent requirement. | A.R.S. § 23-361.02(A), (D). |
| 10.    SB 1365 exempts a number of types of deductions from its scope, including, among others, deductions for the benefit of charitable organizations and organizations that provide employee health care, retiree or welfare benefits. | A.R.S. § 23-361.02(E). |
| 11.    SB 1365 also exempts all payroll deductions from "public safety" employees—which includes any "peace officer, firefighter, corrections officer, probation officer or surveillance officer." | A.R.S. § 23-361.02(H). |

| 12. On March 1, 2011, Sen. Frank Antenori (R-Tucson), the principal sponsor of SB 1365 and the amendment that created the exemption for "public safety" employees, stated that the exemption was included because:<br><br>[I]t is an agreement that was reached through various stakeholders that decided that that language would best meet both the desires of those listed in that [amendment] and those that are supporting this bill . . . They [*i.e.*, unions for "public safety" employees] asked to be exempted and they were discussing the issues with various entities involved and we agreed that those entities would be exempted from this bill for that purpose . . . It was just an agreement and that was pretty much it. | Ariz. State Legislature Website, Video of Senate Floor Session Part 4 - Comm. of the Whole #2, Mar. 1, 2011 at 9:35, 10:40, 11:26, available at http://azleg.granicus.com/MediaPlayer.php?view_id=13&clip_id=8654. |
|---|---|
| 13. On March 10, 2011, SB 1365, with some amendments, including the exemption for "public safety" employees, was passed by the Arizona Senate by a vote of 21-9. | Ariz. State Legislature Website, SB 1365 Bill Status Overview, available at http://www.azleg.gov//FormatDocument.asp?inDoc=/legtext/50leg/1r/bills/sb1365o.asp&Session_ID=102 |
| 14. On April 12, 2011, one of SB 1365's House sponsors, Rep. Javan Mesnard (R-Chandler) stated that the "public safety" employee exception was included because "there is a soft spot in most of our hearts . . . for public safety personnel." | Ariz. State Legislature Website, Video of House Republican Caucus, April 12, 2011 at 35:15, available at http://azleg.granicus.com/MediaPlayer.php?view_id=13&clip_id=9143. |
| 15. On April 18, 2011, SB 1365 was passed by the Arizona House of Representatives by a vote 39-19. | Ariz. State Legislature Website, SB 1365 Bill Status Overview, available at http://www.azleg.gov//FormatDocument.asp?inDoc=/legtext/50leg/1r/bills/sb1365o.asp&Session_ID=102. |
| 16. On April 26, 2011, Arizona Governor Brewer signed SB 1365 into law. | Ariz. State Legislature Website, SB 1365 Bill Status Overview, available at http://www.azleg.gov//FormatDocument.asp?inDoc=/legtext/50leg/1r/bills/sb1365o.asp&Session_ID=102. |

| | |
|---|---|
| 17.     SB 1365 was scheduled to go into effect on October 1, 2011. | A.R.S. § 23-361.02(A). |
| 18.     Each of the Plaintiff-Intervenor unions has voluntary, dues-paying members in Arizona who use payroll deduction systems administered by their employers to pay dues. | Dkt. #75-1, Ex. A, Mathis Decl. ¶¶ 2 & 8; *Id.*, Ex. B, Carr Decl. ¶¶ 2 & 8; *Id.*, Ex. C, Spreitzer Decl. ¶¶ 2 & 8; *Id.*, Ex. D, Tierney Decl. ¶¶ 2 & 10; *Id.*, Ex. E, Gray Decl. ¶¶ 1 & 8; *Id.*, Ex. F., Van Horsen Decl. ¶¶ 2 & 9; *Id.*, Ex. G, Ulman Decl. ¶¶ 2 & 10. |
| 19.     Each of the Plaintiff-Intervenor unions has used, and wishes to continue to use, member dues for "political purposes" as defined by SB 1365, including lawful expenditures for: lobbying; legislative and issue advocacy; advocating for the passage or defeat of ballot measures; issuing candidate guides; conducting get-out-the-vote drives; communicating with members to advocate for the election or defeat of candidates for office or to express the union's position on public issues of importance to those members. | Dkt. #75-1, Ex. A, Mathis Decl. ¶¶ 9-11; *Id.*, Ex. B, Carr Decl. ¶¶ 9-12; *Id.*, Ex. C, Spreitzer Decl. ¶¶ 9-11; *Id.*, Ex. D, Tierney Decl. ¶¶ 11-14; *Id.*, Ex. E, Gray Decl. ¶¶ 9-12; *Id.*, Ex. F., Van Horsen Decl. ¶¶ 10-13; *Id.*, Ex. G, Ulman Decl. ¶¶ 11-14. |
| 20.     Dues collected from the Plaintiff-Intervenor unions' Arizona members have been, and will continue to be, used by the unions' national affiliates—NEA, AFSCME, AFT, and SEIU—for independent public advertisements advocating the election or defeat of candidates for office and for communicating to members about issues of public importance. | Dkt. #75-1, Ex. A, Mathis Decl. ¶ 12; *Id.*, Ex. B, Carr Decl. ¶ 13; *Id.*, Ex. C, Spreitzer Decl. ¶ 11; *Id.*, Ex. D, Tierney Decl. ¶ 13; *Id.*, Ex. E, Gray Decl. ¶ 11; *Id.*, Ex. F., Van Horsen Decl. ¶ 12; *Id.*, Ex. G, Ulman Decl. ¶ 13. |
| 21.     Anticipating in advance the amount that the Plaintiff-Intervenor unions intend to spend on "political purposes" for a given year would require would limit their ability to respond to unanticipated political events. | Dkt. #75-1, Ex. A, Mathis Decl. ¶¶ 17-24; *Id.*, Ex. B, Carr Decl. ¶¶ 9-18; *Id.*, Ex. C, Spreitzer Decl. ¶¶ 9-13; *Id.*, Ex. D, Tierney Decl. ; ¶¶ 11-15; *Id.*, Ex. E, Gray Decl. ¶¶ 9-13; *Id.*, Ex. F., Van Horsen Decl. ¶¶ 10-14; *Id.*, Ex. G, Ulman Decl. ¶¶ 11-15. |
| 22.     Because the procedures necessary to comply with SB 1365 would rely greatly | Dkt. #75-1, Ex. A, Mathis Decl. ¶¶ 9-11; *Id.*, Ex. B, Carr Decl. ¶¶ 9-14; *Id.*, Ex. C, |

18

| | |
|---|---|
| upon how the vague term "political purpose" was construed by the Arizona Attorney General, the Plaintiff-Intervenors unions cannot make effective compliance preparations. | Spreitzer Decl. ¶¶ 9-13; *Id.*, Ex. D, Tierney Decl. ; ¶¶ 9-12; *Id.*, Ex. E, Gray Decl. ¶¶ 9-10, 13 & 16; *Id.*, Ex. F., Van Horsen Decl. ¶¶ 10-11, 14 & 16; *Id.*, Ex. G, Ulman Decl. ¶¶ 11-12, 15. |
| 23.     Implementing alternative methods for collecting member dues would impose significant costs on the Plaintiff-Intervenor unions and result in lost dues revenue. | Dkt. #75-1, Ex. A, Mathis Decl. ¶¶ 9-15, 18 & 21; *Id.*, Ex. B, Carr Decl. ¶¶ 9-19; *Id.*, Ex. C, Spreitzer Decl. ¶¶ 9-13 & 19; *Id.*, Ex. D, Tierney Decl. ¶¶ 17 & 21; *Id.*, Ex. E, Gray Decl. ¶¶ 15-16; *Id.*, Ex. F., Van Horsen Decl. ¶¶ 16, 19-20; *Id.*, Ex. G, Ulman Decl. ¶¶ 18 & 21. |
| 24.     Plaintiff-Intervenor SEIU Local 5 would cease lobbying and political activity completely to avoid the heavy penalties under SB 1365. | Dkt. #75-1, Ex. B, Carr Decl. ¶¶ 15-18. |
| 25.     During the 2012 legislative session, a bill that would have removed many of the exceptions from | A.R.S. § 23-361.02 was proposed and failed to win passage. Ariz. State Legislature Website, SB 1484 Bill Status Overview, available at http://www.azleg. gov//FormatDocument.asp?inDoc=/legtext/50leg/2r/bills/sb1484o.asp&Session_ID=107. |

**SB 1363**

| Plaintiffs' and Plaintiff-Intervenor SEIU Arizona's Undisputed Material Fact | Supporting Evidence |
|---|---|
| 1.     In April 2011, the Arizona Legislature enacted Senate Bill 1363 ("SB 1363") and Senate Bill 1365 ("SB 1365"). | *See* Arizona State Legislature Website, http://www.azleg.gov/FormatDocument.asp?inDoc=/legtext/50leg/1r/laws/0153.htm&Session_ID=102 |
| 2.     Senator Frank Antenori was a principal sponsor of SB 1363. | *See* Arizona State Legislature Website, http://www.azleg.gov/DocumentsForBill.asp?Bill_Number=SB1363&Session_ID=102. |
| 3.     Senator Frank Antenori was a principal sponsor of SB 1365. | *See* Arizona State Legislature Website, http://www.azleg.gov/DocumentsForBill.asp?Bill_Number=SB1365&Session_ID=102. |

| | |
|---|---|
| 4.      SB 1363's reference title is: "employer protections; labor relations." | SB 1363, available at Arizona State Legislature Website, http://www.azleg.gov/legtext/50leg/1r/bills/sb1363p.pdf. |
| 5.      SB 1363 was drafted by the Arizona Chamber of Commerce and the Arizona Manufacturers Council. | Traum Dec. (Doc. 160-1) ¶2.b. (Video of Senate Commerce and Energy Committee, February 9, 2011, at 52:42 and 56:06, available at http://azleg.granicus.com/MediaPlayer.php?view_id=19&clip_id=8282&meta_id=144231.) |
| 6.      On February 9, 2011, at a meeting of the Senate Commerce and Energy Committee, Marc Osborn, representing the Arizona Chamber of Commerce and the Arizona Manufacturers Council, stated regarding the drafting of SB 1363, "we also beef up the injunctive relief statutes in terms of illegal union organizing activities and there is language in the bill that does that." | Traum Dec. (Doc. 160-1) ¶2.c. (Video of Senate Commerce and Energy Committee, February 9, 2011, at 55:54, available at http://azleg.granicus.com/MediaPlayer.php?view_id=19&clip_id=8282&meta_id=144231.) |
| 7.      Mr. Osborn also stated regarding SB 1363: "This was really important for the Chamber because as we see the whole issue of federal card check, whether it's done administratively or if Congress ever acts, which right now it does not look likely, we're going to see increased pressure on employees in terms of, in the risk for inappropriate union organizing behavior, and I think these are some rational protections to provide for Arizona businesses." | Traum Dec. (Doc. 160-1) ¶2.d. (Video of Senate Commerce and Energy Committee, February 9, 2011, at 56:17, available at http://azleg.granicus.com/MediaPlayer.php?view_id=19&clip_id=8282&meta_id=144231.) |
| 8.      At the February 9, 2011 meeting of the Senate Commerce and Energy Committee, Senator Antenori stated regarding SB 1363:  "What we want to do is make sure that those rights to assemble and rights to free speech don't interfere with the standard conduction of businesses | Traum Dec. (Doc. 160-1) ¶ 2.e. (Video of Senate Commerce and Energy Committee, February 9, 2011, at 57:35, available at http://azleg.granicus.com/MediaPlayer.php?view_id=19&clip_id=8282&meta_id=144231.) |

| | |
|---|---|
| and try to interfere or disrupt businesses for the employer in which they may have a dispute in.  And basically all this bill does is put certain notices on that basically also protect and create sort of a buffer between people that are on strike and then people with regard to the business that is trying to continue their business while their negotiating with those people that are collectively bargaining on behalf of labor organizations." | |
| 9.      On March 24, 2011, at a meeting of the House Judiciary Committee, Senator Antenori described SB 1363 as "just a common sense bill to protect employers . . . ." | Traum Dec. (Doc. 160-1) ¶ 3.a. (Video of House Judiciary Committee, March 24, 2011, at 2:32:48, available at http://azleg.granicus.com/MediaPlayer.php?view_id=19&clip_id=8962&meta_id=158344 .) |
| 10.      SEIU Arizona has engaged in a variety of speech and expressive activities regarding public issues, including but not limited to health care reform, predatory lending, and labor disputes with Arizona employers. | Sept. 1, 2011 Carr. Dec. (Doc. 160-7) ¶¶2, 4-10, 13, 16. |
| 11.      SEIU Arizona has engaged in speech and assembly to communicate information and express its views regarding Arizona employers' practices, including but not limited to labor or business practices or conduct that SEIU Arizona considers unfair or objectionable. | Sept. 1, 2011 Carr. Dec. (Doc. 160-7) ¶¶4-6, 9-10, 13, 16. |
| 12.      In the course of engaging in speech and assembly, SEIU Arizona has asked others, such as consumers, legislators, and other businesses, to take action or show support by, for example, voting in a particular way on an issue or ceasing to do business with a particular entity. | Sept. 1, 2011 Carr. Dec. (Doc. 160-7) ¶¶4-5, 8-9, 10, 13. |
| 13.      SEIU Arizona has engaged in speech and assembly through a variety of means, such as handbilling, holding signs, | Sept. 1, 2011 Carr. Dec. (Doc. 160-7) ¶¶4-10, 13, 16. |

| | |
|---|---|
| picketing, rallying, chanting, using sound amplification equipment such as microphones or bullhorns, and marching. | |
| 14.     SEIU Arizona has engaged in picketing (i.e., assembly during which participants stand or walk holding signs or posters) of Arizona employers. | Sept. 1, 2011 Carr. Dec. (Doc. 160-7) ¶¶4, 6-8, 13. |
| 15.     SEIU Arizona has engaged in speech and assembly in a variety of Arizona forums, including but not limited to sidewalks adjacent to multi-tenant shopping centers or major streets, state buildings, and airports. | Sept. 1, 2011 Carr. Dec. (Doc. 160-7) ¶¶4-10. |
| 16.     SEIU Arizona has assembled and advocated on behalf of employees on private and public property. | Sept. 1, 2011 Carr. Dec. (Doc. 160-7) ¶¶4-10, 13-14. |
| 17.     SEIU Arizona desires and intends to continue engaging in the speech and assembly described in ¶¶10-16, but fears that it, and its members or supporters will be prosecuted under SB 1363 for exercising their First Amendment rights, or chilled from exercising their rights.  Sept. 1, 2011 Carr. Dec. (Doc. 160-7) ¶¶2, 17-20. | Sept. 1, 2011 Carr. Dec. (Doc. 160-7) ¶¶2, 17-20. |
| 18.     UFCW Local 99 has engaged in a variety of speech and expressive activities regarding public issues, such as the mistreatment of workers and other labor disputes with Arizona employers. | July 16, 2012 McLaughlin Dec. (Doc. 160-2) ¶¶7, 10-11. |
| 19.     UFCW Local 99 has engaged in speech and assembly to communicate information and express its views regarding Arizona employers' practices, including but not limited to labor or business practices or conduct that UFCW Local 99 considers unfair or objectionable. | July 16, 2012 McLaughlin Dec. (Doc. 160-2) ¶¶7-8, 10-11, 15. |

| | |
|---|---|
| 20.     In the course of engaging in speech and assembly, UFCW Local 99 has asked others, such as consumers, legislators, and other businesses, to take action or show support by, for example, voting in a particular way on an issue or ceasing to do business with a particular entity. | July 16, 2012 McLaughlin Dec. (Doc. 160-2) ¶¶7, 10-11. |
| 21.     UFCW Local 99 has engaged in speech and assembly through a variety of means, such as handbilling, picketing, rallying, using loud voices, playing musical instruments, and marching or parading. | July 16, 2012 McLaughlin Dec. (Doc. 160-2) ¶¶7-10. |
| 22.     UFCW Local 99 has engaged in picketing (i.e., assembly during which participants stand or walk holding signs or posters) of Arizona employers. | July 16, 2012 McLaughlin Dec. (Doc. 160-2) ¶7, 10. |
| 23.     UFCW Local 99 has engaged in speech and assembly in a variety of Arizona forums, including but not limited to sidewalks in front of stores or adjacent to multi-tenant shopping centers, parking lots, streets, and airports. | July 16, 2012 McLaughlin Dec. (Doc. 160-2) ¶¶8-10, 13. |
| 24.     UFCW Local 99 has assembled and advocated on behalf of employees on private and public property. | July 16, 2012 McLaughlin Dec. (Doc. 160-2) ¶¶8-10, 13-14. |
| 25.     UFCW Local 99 desires and intends to continue engaging in the speech and assembly described in ¶¶18-24, but has restrained or modified its speech and expressive activity for fear of prosecution under SB 1363, or expended resources to avoid prosecution under SB 1363. | July 16, 2012 McLaughlin Dec. (Doc. 160-2) ¶¶7-16. |
| 26.     In the experience of UFCW Local 99 President James McLaughlin, employers in Arizona have on numerous occasions made statements about UFCW Local 99 and its officials which were false. | July 16, 2012 McLaughlin Dec. (Doc. 160-2) ¶15. |

| | |
|---|---|
| 27.    In 2007, an Arizona employer, Bashas Supermarkets, put up a website and issued press releases criticizing UFCW Local 99, and Bashas employees assembled at and picketed UFCW Local 99's office with professionally-produced signs and T-shirts. | July 16, 2012 McLaughlin Dec. (Doc. 160-2) ¶15. |
| 28.    An Arizona employer, Benson Hospital, also has made public statements critical of UFCW Local 99. | July 16, 2012 McLaughlin Dec. (Doc. 160-2) ¶15. |
| 29.    UA Local 469 has engaged in a variety of speech and expressive activities regarding public issues, such as legislation to protect workers, labor disputes, and the standards of Arizona construction contractors regarding pay, safety, training, and quality of construction. | May 11, 2011 McNally Dec. (Doc. 160-5) ¶15; July 17, 2012 McNally Dec. (Doc. 160-4) ¶¶4-5. |
| 30.    UA Local 469 has engaged in speech and assembly to communicate information and express its views regarding Arizona employers' practices, including but not limited to labor or business practices or conduct that UA Local 469 considers sub-standard or objectionable. | July 17, 2012 McNally Dec. (Doc. 160-4) ¶¶4-7. |
| 31.    UA Local 469 has engaged in speech and assembly to communicate with craftsmen for the purpose of persuading them to become union members, including by picketing and distributing leaflets concerning the wages and benefits offered by non-signatory companies, their job safety record and other matters. | July 17, 2012 McNally Dec. (Doc. 160-4) ¶5. |
| 32.    UA Local 469 has engaged in speech to communicate with others, such as government regulators, project owners and developers, general contracts, construction end users, and the general public, regarding the advantages of using | July 17, 2012 McNally Dec. (Doc. 160-4) ¶6. |

summary

| | |
|---|---|
| unionized contractors as opposed to non-union contractors. | |
| 33.     UA Local 469 routinely visits construction worksites to communicate with and advocate on behalf of employees; such worksites are almost always owned by an entity other than the direct employer, and multiple employers and their employees are typically present. | July 17, 2012 McNally Dec. (Doc. 160-4) ¶¶10-11. |
| 34.     UA Local 469 desires and intends to continue engaging in the speech and assembly described in ¶¶29-33, but understands that UA Local 469 must comply with SB 1363's restrictions on speech and assembly by labor organizations when deciding the content and manner of its communications, and that SB 1363 may restrict UA Local 469's rights to engage in such speech and assembly. | July 17, 2012 McNally Dec. (Doc. 160-4) ¶¶4-9. |
| 35.     SEIU Arizona, UFCW Local 99, and UA Local 469 have collective bargaining agreements with employers that provide union representatives with access to the employers' property. | Sept. 1, 2011 Carr. Dec. (Doc. 160-7) ¶15; July 16, 2012 McLaughlin Dec. (Doc. 160-2) ¶14; July 17, 2012 McNally Dec. (Doc. 160-4) ¶10. |
| 36.     Most members of SEIU Arizona, UFCW Local 99, and UA Local 469 choose to pay their union dues through automatic paycheck deductions. | July 22, 2011 Carr. Dec. (Doc. 160-6) ¶8; May 11, 2011 McNally Dec. (Doc. 17) ¶33; May 23, 2011 McLaughlin Dec. (Doc. 160-3) ¶2. |
| 37.     When UA Local 469 and UFCW Local 99 members choose to pay dues through automatic paycheck deductions, they enter into agreements with their respective unions which authorize the deduction of dues from their paychecks and provide that the dues deduction authorization shall be irrevocable for a specified period of time. | May 11, 2011 McNally Dec. (Doc. 17) ¶¶27-30; July 16, 2012 McLaughlin Dec. (Doc. 160-2) ¶¶2-3, Ex. A. |

| | |
|---|---|
| 38.     UA Local 469 and UFCW Local 99 have collective bargaining agreements with employers that provide for paycheck deduction of dues. | May 11, 2011 McNally Dec. (Doc. 160-5) ¶29; July 16, 2012 McLaughlin Dec. (Doc. 160-2) ¶2, Ex. B. |
| 39.     For UFCW Local 99, the costs of filing breach of contract suits to enforce dues deduction authorization agreements far outweigh the amount of dues that could be recovered. | July 16, 2012 McLaughlin Dec. (Doc. 160-2) ¶5. |
| 40.     Prior to SB 1363, UFCW could enforce dues deduction authorization agreements by more cost-effective means, such as arbitration under the applicable collective bargaining agreement. | July 16, 2012 McLaughlin Dec. (Doc. 160-2) ¶5. |
| 41.     In 2010, grocery employers in Arizona pressured their employees to revoke dues authorizations to destabilize the grocery workers' union, UFCW Local 99, during contract negotiations. | July 16, 2012 McLaughlin Dec. (Doc. 160-2) ¶4. |

Respectfully submitted this 30th day of August, 2012.

Andrew J. Kahn AZ. (SBN 15835)
Elizabeth A. Lawrence AZ (SBN 201537)
Davis Cowell & Bowe LLP
2401 North Central Avenue 2nd Floor
Phoenix, Arizona 85004
Telephone: (800) 622-0641
ajk@dcbsf.com
*Attorneys for Plaintiffs UFCW Local 99,
McLaughlin, and Colbath*

Gerald Barrett (SBN 005855)
Ward, Keenan & Barrett, P.C.
3838 N. Central Avenue, Suite 1720
Phoenix, AZ 85012
Telephone: (602) 279-1717
gbarrett@wardkeenanbarrett.com
*Attorneys for Plaintiffs UA Local 469,
McNally, and Rothans*

1

Michael Rubin (*pro hac vice*)
Jonathan Weissglass (*pro hac vice*)

2

Jennifer Sung (SBN 026119)
P. Casey Pitts (*pro hac vice*)

3

Altshuler Berzon LLP

4

177 Post Street, Suite 300
San Francisco, CA 94108

5

Telephone:  (415) 421-7151
mrubin@altshulerberzon.com

6

jweissglass@altshulerberzon.com

7

jsung@altshulerberzon.com
cpitts@altshulerberzon.com

8

- and -

9

Stanley Lubin (SBN 003074)

10

Lubin & Enoch P.C.
349 North 4th Avenue

11

Phoenix, Arizona  85003-1505

12

Telephone:  (602) 234-0008
stan@lubinandenoch.com

13

*Attorneys for SEIU Local 5*

14

By  s/ Jennifer Sung

15

Jennifer Sung

16

17

18

19

20

21

22

23

24

25

26

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**CERTIFICATE OF SERVICE**

I hereby certify that on August 30, 2012, I electronically transmitted the attached

document to the Clerk's Office using the CM/ECF System for filing and transmittal of a

Notice of Electronic Filing to all CM/ECF registrants.


s/ Sally Mendez Arevalo
Sally Mendez Arevalo

PLTFS.'  AND PLTF.-INTERVENORS' JT. RESP. TO DEFS. HORNE AND BENNETT'S STMT OF FACTS