Thomas C. Horne
Attorney General

Michael K. Goodwin, Bar No. 014446
Christopher Munns, Bar No. 022611
Assistant Attorney General
1275 W. Washington
Phoenix, Arizona 85007-2997
Telephone: (602) 542-7674
Facsimile: (602) 542-7644
Michael.Goodwin@azag.gov
Christopher.Munns@azag.gov

Attorneys for State Defendants

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United Food & Commercial Workers Local 99, et al.,<br><br>   Plaintiffs,<br><br>- and –<br><br>Arizona Education Association, et al.<br><br>   Plaintiff-Intervenors,<br><br>vs.<br><br>Ken Bennett, in his capacity as Secretary of State of the State of Arizona, et al.,<br><br>   Defendants. | Case No: CV11-921-PHX-GMS<br><br>**DEFENDANT HORNE'S REPLY RE: MOTION FOR SUMMARY JUDGMENT (RE: SB 1365)** |

Defendant Tom Horne submits this reply to address several points in the Plaintiff-Intervenors' Opposition to Defendants' Motion for Summary Judgment Re: SB 1365 (doc. 171, cited herein as "Response.")

**I.     First Amendment**

   **A.     SB 1365 Isn't a Restriction of Speech.**

The Intervenors reiterate their contention that SB 1365 is subject to strict scrutiny on the ground that it is viewpoint discriminatory. (Response at 3-5.) As discussed in the next section, Defendant disagrees that the statute is discriminatory. But the more

1  immediate point is this: a statute is not subject to strict scrutiny unless it is a restriction
2  of speech. Even if a statute contains a content-based distinction, it is subjected to strict
3  scrutiny only if it restricts speech.
4      We use the term "restriction" here in a broad sense. This is, we use it to
5  encompass any law that bans, prohibits, regulates, places a ceiling on, or even burdens
6  speech. But that is not to say that any law that has an impact on speech is a restriction.
7  The Supreme Court has drawn a distinction between statutes that *restrict* speech and
8  those *fail to assist* speech. Up until this case, laws regulating payroll deductions had
9  always been treated as laws that fail to assist speech. *See, e.g., Ysursa v. Pocatella*
10  *Eduation Ass'n*, 555 U.S. 353 (2009); *Davenport v. Washington Educ. Ass'n*, 551 U.S.
11  177, 188-89 (2007); *Utah Educ. Ass'n v. Shurtleff*, 565 F.3d 1226, 1230-31 (10th Cir.
12  2009); *Toledo Area AFL-CIO Council v. Pizza*, 154 F.3d 307, 319-20 (6th Cir. 1997);
13  *South Carolina Educ. Ass'n v. Campbell*, 883 F.2d 1251, 1263 (4th Cir. 1989). Granted,
14  the Ninth Circuit treated a statute regulating payroll deductions as a restriction of speech
15  in *Pocatello Education Association v. Heideman*, 504 F.3d 1053, 1058 (9th Cir. 2007),
16  but its analysis was rejected and judgment reversed in *Ysursa*.
17      Plaintiffs cite to *Citizens United v. FEC*, 130 S. Ct. 876 (2010), as they have often
18  in this case, for the proposition that laws violate the First Amendment if they impose
19  restrictions on certain speakers. (Response at 2.) The proposition is generally sound, but
20  it has little application to this case. *Citizens United* was concerned with a restriction on
21  *spending* money. It was not concerned with *collecting* money.
22      The challenged statute, SB 1365, regulates the payment of wages and,
23  specifically, payroll deductions. It is not a restriction of speech. Consistent with *Ysursa*,
24  *Davenport*, and the other cases cited above, it is a statute that fails to assist speech and
25  should be analyzed accordingly.
26      **B.**    **SB 1365 is Viewpoint Neutral.**
27      Intervenors attempt to distinguish *Ysursa* by arguing that the Idaho statute
28  challenged there is different from SB 1365. (Response at 7-8.) This argument misses

the point.  The significance of *Ysursa* and similar cases is that they recognize the distinction between laws that restrict speech and laws that fail to assist speech.  When challenged, laws in the latter category are subjected to a lower level of scrutiny.  555 U.S. at 359.  Consequently, distinctions or exceptions that would be problematic in a statute restricting speech may be permissible in a statute that merely fails to assist speech.

*Ysursa* involved a challenge to a statute that prohibited payroll deductions for political activities.  The Supreme Court began its analysis of the statute by noting that content-based restrictions of speech are subject to strict scrutiny.  *Id.* at 358.  Although the statute obviously drew a distinction based on content, it was not subject to strict scrutiny because it was not a restriction of speech.  *Id.* at 359.  Similarly, in *Davenport*, the Court held that a Washington statute requiring public sector unions to receive affirmative authorization from agency fee-payers before using their agency fees collected through payroll deductions for political purposes was not a restrict of speech, despite the content-based distinction in the statute.  551 U.S. at 188-89.

In other words, a content-based distinction does not transform a statute that fails to assist speech into one that restricts speech.  Since viewpoint discrimination is a form of content discrimination, there is no basis in law or logic for saying that a viewpoint-based distinction converts a statute regulating payroll deductions into one that restricts speech.

*Ysursa* is not to the contrary.  *Ysursa* held that a facially content-based statute regulating payroll deductions did not call for strict scrutiny.  The Court observed in a footnote that the statute might be subject to an applied-challenge, although it did not say what degree of scrutiny would apply.  A statute that fails to assist speech should be upheld, even if does not treat all viewpoints the same, so long as it leaves alternate channels for speech.

A law that requires affirmative authorization for political deductions does not distinguish between viewpoints.  Nor does the fact that SB 1365 contains some

1 exemptions render it viewpoint discriminatory.  *See Cornelius v. NAACP Legal Defense*
2 *Fund*, 473 U.S. 788 (1985) (federal charitable campaign open to charitable organizations
3 but not political advocacy organizations was not viewpoint discriminatory on its face);
4 *Perry Educ. Ass'n v. Perry Local Educators Ass'n*, 460 U.S. 37 (1983) (mail system
5 open to one union but not another was not viewpoint discriminatory on its face).

      **C.**     **SB 1365 Furthers a Compelling State Interest.**

Intervenors open their Response by questioning the relevance of the quote from Thomas Jefferson and they pick up on this theme again in attacking the State's interest. (Response at 1, 8-9.)  As we have stated before, the statute protect an employee's right to make an informed and voluntary choice about whether to spend his wages for political purposes.

Intervenors say that Arizona's right to work laws ensure all employees who pay union dues do so voluntarily.  That is not necessarily true as a factual matter.  The law may prohibit forcing someone to join a union, but that does not mean it never happens. There are laws against driving too fast on the highway but people still do it. Nevertheless, we assume, for the sake of argument, that individuals who pay dues to a union do so voluntarily.  But an agreement to pay due to a union does not amount to a knowing and voluntary authorization for the union to spend those dues for political purposes.

"At the heart of the First Amendment lies the principle that each person should decide for himself or herself the ideas and beliefs deserving of expression, consideration, and adherence.  Our political system and cultural life rest upon this ideal." *Turner Broadcasting System, Inc. v. FCC*, 512 U.S. 622, 641 (1994).  This statement and many others like it attest to the concept of individual autonomy embodied in the First Amendment.  This notion that each person should decide for himself or herself applies to everyone.  Contrary to Intervenors' suggestion, Defendant understands the difference between union membership and the payment of agency fees.  (Response at 9.) We simply do not think the difference is legally significant insofar as it applies to the right to

form individual beliefs, to decide whether to speak or not speak, and to decide what political causes, if any to support.

The State's interest in protecting the right of individual employees to give or withhold consent to the use of their wages for political purposes is sufficiently compelling to withstand any level of scrutiny.  The law imposes a minor burden on entities and employees who would be subject to it.  The statute contemplates a simple statement by entities indicating only a maximum percentage of funds to be used for political purposes, and a simple authorization procedure that could be accomplished by the click of a mouse.

Respectfully submitted this 17th day of September, 2012.

Thomas C. Horne
Attorney General


s/Michael K. Goodwin
Michael K. Goodwin
Assistant Attorney General
Attorneys for Defendants


I hereby certify that on September 17, 2012, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to all ECF registrants.

 s/Michael Goodwin
#2865494