Roopali H. Desai (024295)
Coppersmith Schermer & Brockelman PLC
2800 North Central Avenue, Suite 1200
Phoenix, Arizona  85004-1009
Telephone:  (602) 381-5478
Facsimile:  (602) 772-3778
rdesai@csblaw.com

*Attorneys for Arizona Education Association; American Federation of State, County and Municipal Employees Locals 449, 2384, 2960, 3111, 3282*; *and Arizona Federation of Teachers*

[Additional Counsel for Plaintiff-Intervenors Listed Below]

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| United Food & Commercial Workers Local 99, *et al.*, <br><br>    Plaintiffs, <br><br>  - and - <br><br> Arizona Education Association, *et al.* <br><br>    Plaintiff-Intervenors, <br><br> vs. <br><br> Ken Bennett, in his capacity as Secretary of State of the State of Arizona, *et al.*, <br><br>    Defendants. | No. 2:11-cv-00921-GMS <br><br> **PLAINTIFF-INTERVENORS' REPLY TO DEFENDANTS' RESPONSE TO PLAINTIFF-INTERVENORS' MOTION FOR PARTIAL SUMMARY JUDGMENT RE: SB 1365** <br><br> **(Oral Argument Requested)** |

The Defendants' opposition to Plaintiff-Intervenors' motion for summary judgment regarding the constitutionality of SB 1365 largely fails to address either the arguments made in the motion or the legal analysis this Court applied in granting the preliminary injunction. As a result, this reply is confined to briefly rebutting only a handful of points raised in the opposition. Because Defendants present nothing new on Equal Protection, the reply does not address that claim.

{00068654.1 }

## I. FIRST AMENDMENT

### A. SB 1365 Is Not Narrowly Tailored to a Compelling State Interest

In ruling on the motion for preliminary injunction, this Court recognized that SB 1365 is "underinclusive and discriminates according to speaker" and is therefore "subject to strict scrutiny." *UFCW Local 99 v. Brewer*, 817 F. Supp. 2d 1118, 1126 (D. Ariz. 2011). Accordingly, the Defendants bear the burden of proving that SB 1365 "furthers a compelling interest and is narrowly tailored to achieve that interest." *Citizens United v. FEC*, 130 S. Ct. 876, 898 (2010) (citation and internal quotation marks omitted). Yet, in opposing the Plaintiff-Intervenors' motion for summary judgment, the Defendants thoroughly failed to justify either SB 1365's purpose or the manner in which that purpose is accomplished.

1. Defendants assert that the compelling interest furthered by SB 1365 is "protect[ing] employees from having their wages taken and used for political purposes without their consent."[1] (Dkt. # 178 at 2.) This supposed concern for the voluntariness of employee's dues deductions, however, is simply a non-issue in light of Arizona's "Right to Work" laws, which already provide that no employee can be compelled to join or give financial support to a union. *See* Ariz. Const. art. 25; A.R.S. §§ 23-1301, *et seq*. In other words, union membership and the payment of dues is entirely voluntary in Arizona as a matter of law, *see Kidwell v. Transp. Comm'ns Int'l Union*, 946 F.2d 283, 292-93 (4th Cir. 1991), so SB 1365 does nothing to promote or ensure that goal.

It is not the case, as Defendants assert, that "there are First Amendment interests on both sides." (Dkt. #178 at 2.) Rather, in assessing the constitutionality of SB 1365, the relevant First Amendment interests fall only on *one* side, and those interests weigh doubly in favor of the Plaintiff-Intervenors. To begin with, there is "no First Amendment

---

[1] Although the Defendants all but concede that union membership in Arizona is, by definition, voluntary, they speculate that "most employees" join unions solely for "economic reasons" and do not truly support unions' political activities. (Dkt. # 178 at 2-3.) Courts "have never accepted mere conjecture" of this nature "as adequate to carry a First Amendment burden." *Nixon v. Shrink Mo. Gov't PAC*, 528 U.S. 377, 392 (2000).

1  right to object to certain [union] expenditures where membership is not required as an
2  actual or de facto condition of employment." *Kidwell*, 946 F.2d at 299.
3        Moreover, SB 1365's discriminatory treatment of non-public safety employees
4  and their unions infringes on two distinct First Amendment interests. First, by targeting
5  only certain speakers and their associated viewpoints with burdensome regulations
6  related to their political speech, SB 1365 commits a "blatant" and "egregious" form of
7  discrimination prohibited by the First Amendment. *Rosenberger v. Rector & Visitors of*
8  *Univ. of Va.*, 515 U.S. 819, 829 (1995). Second, by seeking to force those disfavored
9  unions to allow members to "associate with the union on [their] own terms" and "without
10 regard to the [union's] requirements," SB 1365 interferes with the union's right—as an
11 "archetype of an expressive association"—to exercise its basic associational prerogative
12 to establish financial support of the union's democratically chosen political objectives as
13 a term of membership in the union. *Kidwell*, 946 F.2d at 299-301. Accordingly, the
14 interests advanced by SB 1365 do not just fall short of being sufficiently compelling to
15 survive strict scrutiny; they are *illegitimate* interests that are diametrically opposed to the
16 constitutional guarantees of free speech and association.
17       2.  Even on the overly generous assumption that the Defendants have articulated a
18 compelling interest served by SB 1365, they have still failed to meet their burden of
19 proving that the law is "narrowly tailored." Defendants have not—and cannot—justify
20 the tailoring of the many exemptions that render SB 1365 grossly underinclusive in
21 relation to its stated purpose. "Public safety" employees are no less vulnerable than other
22 employees to the imagined harm of supporting their unions' political activities through
23 paycheck deductions, yet they are completely exempt from SB 1365's coverage.
24 Similarly, although SB 1365 excludes a broad range of deductions—including for
25 charitable contributions; employee health care, retiree, or welfare benefits; and
26 contributions to political action committees, *see* A.R.S. § 23-361.02(E)—the recipients of
27 such deductions are just as likely as non-public safety employee unions to spend a portion
28

of employees' paycheck deductions for "political purposes," as broadly defined.[2] There is no conceivable justification for the law's discrimination that could be deemed compelling, or even legitimate.[3] Nor is there any way in which the law's crass underinclusiveness could be seen as a suitably tailored means of advancing a legitimate interest.

### B.     SB 1365 Is Not Constitutional Under *Ysursa*

Defendants persist in their claim that SB 1365 is valid under *Ysursa v. Pocatello Education Association*, 555 U.S. 353 (2009), even though this Court concluded in granting the motion for preliminary injunction that *Ysursa* is inapplicable because SB 1365 lacks the element of "evenhanded[ness]" that the Supreme Court deemed essential to upholding the Idaho law at issue in that case. *UFCW Local 99*, 817 F. Supp. 2d at 1126 (quoting *Ysursa*, 555 U.S. at 361 n.3).

---

[2] Defendants misleadingly assert that these exemptions "are for organizations that don't spend money for political purposes (such as 501(c)(3) charitable organizations)." (Dkt. # 178 at 4.) First, the exemptions are not limited to charities; they include insurance and financial service companies that provide pension, health, and welfare benefits and have no restriction on their political activities by virtue of their tax status. Second, even for charities, this Court has already recognized that those entities can engage in some of the activities SB 1365 defines as "political." *See UFCW Local 99*, 817 F. Supp. 2d at 1121 & n.1; *see also* Internal Revenue Service, *Frequently Asked Questions About the Ban on Political Campaign Intervention by 501(c)(3) Organizations: Contributions to Ballot Measure Committees* (noting that 501(c)(3) charities are permitted to contribute to committees advocating the passage or defeat of ballot measures), *available at* http://www.irs.gov/Charities-&-Non-Profits/Charitable-Organizations/Frequently-Asked-Questions-About-the-Ban-on-Political-Campaign-Intervention-by-501(c)(3)-Organizations:--Contributions-to-Ballot-Measure-Committees.

[3] As noted in the motion for summary judgment (Dkt. # 156 at 8-9), the only purpose for SB 1365's exemptions that can be gleaned from the legislative record is that they were enacted to protect favored speakers while burdening others. *See* Dkt. # 157 ¶ 12 (the public-safety exemption's principal sponsor stating that the exemption made at the request of public safety unions to "best meet [their] desires"); *id*. ¶ 14 (one of SB 1365's sponsors explaining that the public-safety exemption was included because "there is a soft spot in most of our hearts . . . for public safety personnel"). The Defendants assert that these statements cannot be considered in assessing SB 1365's constitutionality. (Dkt. # 176 ¶¶ 12, 14.). Yet, it is well established that courts may look to the legislative history of a law to determine whether the government has met its burden under strict scrutiny to show that the law was in fact meant to further the government's asserted compelling interest. *See*, *e.g.*, *Talley v. California*, 362 U.S. 60, 64 (1960); *Citizens for Clean Gov't v. City of San Diego*, 474 F.3d 647, 653 (9th Cir. 2007).

1     First, Defendants argue that, under *Ysursa*, the prohibition on viewpoint discrimination applies only to *restrictions* on speech, and that regulations that merely facilitate or assist speech according to viewpoint are reviewed under the deferential rational-basis standard. (Dkt. # 178 at 5.) That is not so. Strict scrutiny applies both when the government selectively *restricts* speech, *see Brown v. Entm't Merchs. Ass'n*, 131 S. Ct. 2729 (2011), as well as when it selectively *facilitates* speech, *see Rosenberger*, 515 U.S. at 834 (government "may not discriminate based on the viewpoint of private persons whose speech it facilitates"). Thus, even where the government has no obligation to facilitate speech or association and may decline to do so altogether, it cannot grant access to groups formed for the purpose of advancing one political, ideological, or philosophical perspective while denying similar access to groups formed for the purpose of advancing other perspectives. *See Good News Club v. Milford Cent. Sch.*, 533 U.S. 98, 106 (2001) (observing that, even where government can deny access to its facilities altogether, it "must not discriminate against speech on the basis of viewpoint").

Second, Defendants assert that a statute fails *Ysursa*'s evenhandedness requirement only if it is shown in an as-applied challenge that the law is *enforced* in a discriminatory manner. (Dkt. # 178 at 5.) SB 1365, however, lacks evenhandedness on its very face, so the statute cannot be enforced as written without discriminating against non-public safety employees and their unions. In such situations, where the very text of a statute clearly discriminates against particular speakers or viewpoints, courts have not hesitated to strike it down as facially discriminatory. *See*, *e.g.*, *Citizens United*, 130 S. Ct. at 892-96 (ruling on the facial validity of a statute where its constitutional defect is embedded in the statute's text and waiting for an as-applied challenge "would prolong the [statute's] substantial . . . chilling effect"). Thus, Defendants' request for a wait-and-see approach to determining SB 1365's constitutionality is unavailing.

## II.     VAGUENESS

Defendants argue that SB 1365's terms "political issue advocacy" and "other similar group" are not unconstitutionally vague. First, they contend that the vagueness

1. doctrine has no application to SB 1365 at all because the law does not prohibit any
2. speech. (Dkt. # 178 at 7.) What Defendants fail to recognize, however, is that SB 1365's
3. certification requirements effectively operate in some circumstances as a prohibition on
4. speech. As this Court explained in ruling on the motion for preliminary injunction: "Since
5. [non-public safety unions] would be bound by estimates they must make long before the
6. facts of any particular political season emerge with clarity, the provision places a $10,000
7. penalty on 'speech in situations where the communication was not, or could not have
8. been, prepared far enough in advance.'" *UFCW Local 99*, 817 F. Supp. 2d at 1126
9. (quoting *Ariz. Right to Life PAC v. Bayless*, 320 F.3d 1002, 1008 (9th Cir. 2003)).

10.       Second, Defendants argue that the term "political issue advocacy" is not vague
11. because it "describes forms of direct and indirect participation in political and election
12. campaigns." (Dkt. # 178 at 7.) According to Defendants, this term refers to "money spent
13. by an entity to communicate its view on campaign issues" but "does not cover lobbying
14. or collective bargaining activities" or communications that "expressly advocate the
15. election or defeat of a candidate." (*Id.*) That Defendants were able to extract this
16. convoluted definition, along with its several exceptions, from the language of the statute
17. is itself a clear indication SB 1365's ambiguous phrasing is constitutionally repugnant
18. because it has the effect of "delegat[ing] basic policy matters" to those who enforce the
19. law "for resolution on an ad hoc and subjective basis." *Grayned v. City of Rockford*, 408
20. U.S. 104, 108-09 (1972). Moreover, Defendants' attempt to clarify the disputed term
21. results in only more ambiguity: how can a union know when an issue of public concern
22. has become "a campaign issue" that cannot be mentioned publicly without risking the
23. imposition of a $10,000 fine? Such uncertainty is precisely why the Supreme Court has
24. repeatedly recognized the "difficulty of distinguishing between the discussion of issues
25. on the one hand and advocacy of election or defeat of candidates on the other" and
26. rejected attempts to regulate the former in the absence of criteria that are "objective . . .
27. rather than amorphous." *FEC v. Wis. Right to Life, Inc.*, 551 U.S. 449, 467-69 (2007)
28. (opinion of Roberts, C.J.). SB 1365 plainly fails this test.

1       Third, Defendants assert that the term "other similar group" is not vague because it
2 is a "catch-all term encompassing any committee or organization that takes in money and
3 spends it on elections." (Dkt. # 178 at 8.) Yet, this sweeping definition has precisely the
4 effect that the vagueness doctrine seeks to avoid where regulations are imposed "in an
5 area permeated by First Amendment interests." *Buckley v. Valeo*, 424 U.S. 1, 41 (1976).
6 Because the term "other similar group" is apparently meant to cover entities that are *not*
7 already required to register and report as political "committees" under Arizona law, a
8 union can only determine whether an entity falls within this "catch-all" provision by
9 conducting an independent investigation of the entity and whether it has spent some
10 unspecified amount of money "on elections." *See Wis. Right to Life*, 551 U.S. at 469
11 (reasoning that a term in a statute is vague if attempts at compliance "lead to a
12 burdensome, expert-driven inquiry, with an indeterminate result").

13 **III.   UNCONSTITUIONAL CONDITIONS**

14       Defendants argue SB 1365 does not impose an unconstitutional condition on the
15 government benefit of payroll deductions because the law "does not prohibit or restrict
16 political spending at all." (Dkt. # 178 at 9.) This argument is premised on a fundamental
17 misreading of the statute and the mechanics of how it applies.
18       As this Court has already recognized, SB 1365's certification requirements
19 effectively operate as a cap on speech because non-public safety unions making the
20 certification "would be bound by estimates they must make long before the facts of any
21 particular political season emerge with clarity." *UFCW Local 99*, 817 F. Supp. 2d at
22 1126. Because of the binding nature of that estimate, a union that makes the certification
23 is faced with a Hobson's choice. It may try to predict accurately its anticipated political
24 expenditures and accept that amount as a cap that "effectively prohibits speech in
25 situations where the communication was not, or could not have been, prepared far enough
26 in advance" to comply with the law. *Ariz. Right to Life PAC*, 320 F.3d at 1008. Or, it may
27 attempt to mitigate this restriction by drastically overestimating its political expenditures.
28 But in doing so, the union is compelled not just to speak, but to speak in a manner that

gives its members an inaccurate impression of its activities. This, in effect, compels the dissemination of a grossly inaccurate claim about the union's political activities, which the government may not do. *See Video Software Dealers Ass'n v. Schwarzenegger*, 556 F.3d 950, 967 (9th Cir. 2009), *aff'd sub nom. Brown*, *supra*. SB 1365 therefore violates the unconstitutional conditions doctrine.

## CONCLUSION

For the foregoing reasons stated above, Plaintiff-Intervenors' motion for summary judgment should be granted.

Respectfully submitted this 24th day of September, 2012.

**COPPERSMITH SCHERMER & BROCKELMAN PLC**

By  s/ Roopali H. Desai
         Roopali H. Desai

*Attorneys for Arizona Education Association; American Federation of State, County and Municipal Employees Locals 449, 2384, 2960, 3111, 3282*; *and Arizona Federation of Teachers*

- and -

Samantha Blevins (020381)
Arizona Education Association
345 East Palm Lane,
Phoenix, AZ 85004
(602) 264-1774 Telephone
(602) 240-6887 Facsimile
samantha.blevins@arizonaea.org

- and -

Alice O'Brien (admitted *pro hac vice*)
Jason Walta (admitted *pro hac vice*)
National Education Association
1201 Sixteenth Street, N.W.
Washington, D.C.  20036
Telephone:  (202) 822-7035
aobrien@nea.org
jwalta@nea.org

*Attorneys for Arizona Education Association*

- and -

David Strom (admitted *pro hac vice*)
American Federation of Teachers
555 New Jersey Avenue, NW
Washington, D.C.  20001
Telephone:  (202) 879-4400
dstrom@aft.org

*Attorneys for Arizona Federation of Teachers*

- and -

Michael L. Artz (admitted *pro hac vice*)
Jessica R. Robinson (admitted *pro hac vice*)
American Federation of State, County and
 Municipal Employees, AFL-CIO
1101 17th Street, Suite 900
Washington, D.C.  20036
Telephone:  (202) 775-5900
Facsimile:  (202) 452-0556
martz@afscme.org
jrobinson@afscme.org

*American Federation of State, County and Municipal Employees Locals 449, 2384, 2960, 3111, and 3282*

- and -

Stanley Lubin (003074)
Lubin & Enoch P.C.
349 North 4th Avenue
Phoenix, Arizona  85003-1505
Telephone:  (602) 234-0008
Facsimile:  (602) 626-3586
stan@lubinandenoch.com

By  s/ Stanley Lubin (w/permission)
         Stanley Lubin

- and -

Michael Rubin (admitted *pro hac vice*)
Jonathan Weissglass (admitted *pro hac vice*)
Jennifer Sung (026119)
P. Casey Pitts (admitted *pro hac vice*)
Altshuler Berzon LLP
177 Post Street, Suite 300
San Francisco, CA 94108
Telephone: (415) 421-7151
mrubin@altshulerberzon.com
jweissglass@altshulerberzon.com
jsung@altshulerberzon.com
cpitts@altshulerberzon.com

*Attorneys for SEIU Local 5*

{00068654.1}

9

**CERTIFICATE OF SERVICE**

I hereby certify that on September 24, 2012, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to all ECF registrants.

s/ Sheri McAlister