Andrew J. Kahn (SBN 15835)
Elizabeth A. Lawrence (SBN 201537)
Davis Cowell & Bowe LLP
2401 North Central Avenue 2nd Floor
Phoenix, Arizona 85004
Telephone: (800) 622-0641
ajk@dcbsf.com
*Attorneys for Plaintiffs UFCW Local 99,
McLaughlin, and Colbath*

Gerald Barrett (SBN 005855)
Ward, Keenan & Barrett, P.C.
3838 N. Central Avenue, Suite 1720
Phoenix, AZ 85012
Telephone: (602) 279-1717
gbarrett@wardkeenanbarrett.com
*Attorneys for Plaintiffs UA Local 469,
McNally, and Rothans*

Stanley Lubin (SBN 003074)
Lubin & Enoch P.C.
349 North 4th Avenue
Phoenix, Arizona  85003-1505
Telephone:  (602) 234-0008
stan@lubinandenoch.com

Michael Rubin (*pro hac vice*)
Jonathan Weissglass (*pro hac vice*)
Jennifer Sung (SBN 026119)
P. Casey Pitts (*pro hac vice*)
Altshuler Berzon LLP
177 Post Street, Suite 300
San Francisco, California 94108
Telephone: (415) 421-7151
mrubin@altshulerberzon.com
jweissglass@altshulerberzon.com
jsung@altshulerberzon.com
cpitts@altshulerberzon.com
*Attorneys for SEIU Local 5*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United Food & Commercial Workers Local 99, *et al*., | No. 2:11-cv-00921-GMS |
| Plaintiffs, | **PLAINTIFFS' AND PLAINTIFF-INTERVENOR SEIU ARIZONA'S REPLY IN SUPPORT OF JOINT MOTION FOR PARTIAL SUMMARY JUDGMENT REGARDING SB 1363** |
| - and - | |
| Arizona Education Association, *et al*., | Oral Argument Requested |
| Plaintiff-Intervenors, | |
| vs. | |
| Ken Bennett, in his capacity as Secretary of State of the State of Arizona, *et al*., | |
| Defendants. | |

# TABLE OF CONTENTS

TABLE OF AUTHORITIES .............................................................................................ii

INTRODUCTION ......................................................................................................... 1

ARGUMENT .............................................................................................................. 1

I.  SB 1363 Is Viewpoint Discriminatory ........................................................... 1

    A.  SB 1363 Discriminates Based On Viewpoint, Content, And Speaker Identity. 2

    B.  SB 1363 Is Not Justified By Interests Unrelated To Suppressing Expression ... 6

    C.  SB 1363 Restricts Speech, Assembly, And Other Expressive Activity ............ 7

II.  SB 1363 Is Also Overbroad and Vague ........................................................... 8

III.  SB 1363's Remedies Also Violate The First Amendment And Due Process ............ 15

IV.  SB 1363 Is Preempted ................................................................................ 16

V.  SB 1363's Wage Withholding Provision Also Violates The Contract Clause ........... 18

VI.  SB 1363 Is An Integrated Scheme That Should Be Enjoined In Its Entirety ............. 18

VII.  This Case Is Justiciable .............................................................................. 19

CONCLUSION ......................................................................................................... 20

# TABLE OF AUTHORITIES

## FEDERAL CASES

*A.C.L.U. of Nevada v. City of Las Vegas,*
    466 F.3d 784 (9th Cir. 2006) ................................................................ 6

*Ariz. Right to Life PAC v. Bayless,*
    320 F.3d 1002 (9th Cir. 2003) ............................................................ 19

*Arlington Heights v. Metropolitan Housing Development Corp.,*
    429 U.S. 252 (1977) ............................................................................ 1

*Associated Builders and Contractors v. Nunn,*
    356 F.3d 979 (9th Cir. 2004) ............................................................. 16

*Boos v. Barry,*
    485 U.S. 312 (1988) .......................................................................... 10

*Cal. Pro-Life Council, Inc. v. Getman,*
    328 F.3d 1088 (9th Cir. 2003) ............................................................ 19

*California Coastal Com'n  v. Granite Rock Co.,*
    480 U.S. 572 (1987) .......................................................................... 16

*Carroll v. President & Comm'rs of Princess Anne,*
    393 U.S. 175 (1968) .......................................................................... 16

*Chaker v. Crogan,*
    428 F.3d 1215 (9th Cir. 2005) ......................................................... 2, 3

*Chase v. Davelaar,*
    645 F.2d 735 (9th Cir. 1981) .............................................................. 8

*City of Cincinnati v. Discovery Network, Inc.,*
    507 U.S. 410 (1993) ........................................................................ 6, 7

*City of Renton v. Playtime Theaters, Inc.,*
    475 U.S. 41 (1986) .......................................................................... 6, 7

*Comite de Jornaleros de Redondo Beach v. City of Redondo Beach,*
    657 F.3d 936 (9th Cir. 2011) ................................................ 2, 8, 9, 10

*Edward J. DeBartolo Corp. v. Florida Gulf Coast Building & Const. Trades Council,*
    485 U.S. 568 (1988) ..................................................................... 9, 14

ii

*Farmer v. United Broth. of Carpenters and Joiners of America, Local 25,*
   430 U.S. 290 (1977)...................................................................................17

*Forsyth County, Ga. v. Nationalist Movement,*
   505 U.S. 123 (1992)....................................................................................6

*Grayned v. City of Rockford,*
   408 U.S. 104 (1972)...................................................................................11

*Green Mountain R.R. Corp. v. Vermont,*
   404 F.3d 638 (2d Cir. 2005) ......................................................................16

*Grove Press Inc. v. City of Philadelphia,*
   418 F.2d 82 (3d Cir. 1969) ........................................................................15

*Hoye v. City of Oakland,*
   653 F.3d 835 (9th Cir. 2011) ......................................................................5

*L.A. County Bar Association v. Eu,*
   979 F.2d 697 (9th Cir. 1992) .....................................................................20

*Leonardson v. City of E. Lansing,*
   896 F.2d 190 (6th Cir. 1990) .....................................................................11

*Local 20, Teamsters, Chauffeurs and Helpers Union v. Morton,*
   377 U.S. 252 (1964)........................................................................13, 14, 18

*Machinists v. Wisconsin Employment Relations Com'n,*
   427 U.S. 132 (1976)...................................................................................16

*Madsen v. Women's Health Ctr.,*
   512 U.S. 753 (1994).................................................................................9, 15

*Melugin v. Hames,*
   38 F.3d 1478 (9th Cir. 1994) .....................................................................10

*Milk Wagon Drivers Union of Chicago, Local 753 v. Meadowmoor Dairies,*
   312 U.S. 287 (1941).................................................................................8, 9

*Moss v. U.S. Secret Serv.,*
   675 F.3d 1213 (9th Cir. 2012) .....................................................................1

*NAACP v. City of Richmond,*
   743 F.2d 1346 (9th Cir. 1984) ...................................................................20

iii

*NAACP v. Claiborne Hardware Co.*,
    458 U.S. 886 (1982)................................................................................14

*NLRB v. Fruit and Vegetable Packers and Warehouseman, L. 760*,
    377 U.S. 58 (1964)................................................................................14

*NLRB v. Servette, Inc.*,
    377 U.S. 46 (1964)................................................................................14

*New York Times Co. v. Sullivan*,
    376 U.S. 254 (1964)................................................................................3

*Personnel Administrator v. Feeney*,
    442 U.S. 256 (1979)................................................................................1

*R.A.V. v. St. Paul*,
    505 U.S. 377 (1992)............................................................................3, 10

*Radich v. Goode*,
    866 F.2d 1391 (3d Cir. 1990) ...................................................................2

*Rhode Island Association of Realtors, Inc. v. Whitehouse*,
    199 F.3d 26 (1st Cir. 1999)......................................................................19

*Roulette v. City of Seattle*,
    97 F.3d 300 (9th Cir. 1996) .....................................................................8

*San Diego Building Trades Council v. Garmon*,
    359 U.S. 236 (1959)..........................................................................16, 17

*Saxe v. State College Area Sch. District*,
    240 F.3d 200 (3d Cir. 2001) ....................................................................3

*Schenck v. Pro-Choice Network*,
    519 U.S. 357 (1997)................................................................................9

*SeaPak v. Industrial, Technical and Professional Employees*,
    300 F.Supp.1197 (S.D. Ga. 1969) ....................................................... 17, 18

*Sorrell v. IMS Health Inc.*,
    131 S.Ct. 2653 (2011)..........................................................................5, 8

*State of Mo. v. National Organization for Women, Inc.*,
    620 F.2d 1301 (8th Cir. 1980) .................................................................4

iv

*Thornhill v. Alabama,*
    310 U.S. 88 (1940)...................................................................................8

*Turner Broadcasting System, Inc. v. FCC,*
    512 U.S. 622 (1994).............................................................................5, 6

*Watts v. United States,*
    394 U.S. 705 (1969)...............................................................................10

*Wurtz v. Risley,*
    719 F.2d 1438 (9th Cir. 1983) .........................................................9, 12

**STATE CASES**

*Baldwin v. Arizona Flame Restaurant, Inc.,*
    82 Ariz. 385 (1957)............................................................................5, 13

*Fiesta Mall Venture v. Mecham Recall Committee,*
    159 Ariz. 371 (1988).................................................................................2

*State v. Barr,*
    183 Ariz. 434 (App. 1995)........................................................................3

*State v. Steiger,*
    162 Ariz. 138 (1989)...............................................................................10

*Yes on Prop 200 v. Napolitano,*
    215 Ariz. 458 (App. 2007)......................................................................20

**FEDERAL STATUTES**

29 U.S.C. §158 .............................................................................13, 14

29 U.S.C. §186 .............................................................................17, 18

29 U.S.C. §187 ....................................................................................14

29 U.S.C. §411 ....................................................................................17

29 U.S.C. §413 ................................................................................... 17

**STATE STATUTES**

A.R.S. §12-1809 ..................................................................................19

A.R.S. §13-202 ........................................................................................... 10

A.R.S. §23-352 .......................................................................................... 18

A.R.S. §23-1321 ......................................................................................... 19

A.R.S. §23-1322 ......................................................................................... 19

A.R.S. §23-1324 ...............................................................................2, 3, 14, 20

A.R.S. §23-1325 ...........................................................................................3

A.R.S. §23-1327 ...........................................................................................9

A.R.S. §23-1328 ...........................................................................................2

**INTRODUCTION**

SB 1363 directly regulates speech and assembly by discriminating against the speech of labor organizations and employee advocates on the basis of viewpoint, content, and speaker identity.  *See* Pl. and Pl.-Intervenor SEIU Arizona's MSJ re: SB 1363 (Doc. 160) ("Pl. MSJ").  Defendants dispute that SB 1363 is facially discriminatory, State Def. Opp. to Pl. MSJ re: SB 1363 (Doc. 177) ("Def. Opp.") at 5-12, but cannot overcome the statute's plainly discriminatory language.

Defendants further contend that even if SB 1363 is facially discriminatory, it is "justified" by neutral interests.  *Id.*  But a statute that facially restricts speech on the basis of viewpoint, content, or speaker identity is subject to strict scrutiny regardless of motive. Defendants' post-hoc anti-violence rationale is also belied by SB 1363's facially discriminatory language, over- and under-inclusiveness, practical operation, and legislative history, which establish that it was enacted to suppress labor's viewpoint.  Pl. MSJ at 2-7.

Defendants' remaining arguments are equally flawed.  Because SB 1363 is facially invalid, plaintiffs' motion for summary judgment should be granted.

**ARGUMENT**

**I.  SB 1363 Is Viewpoint Discriminatory**

Plaintiffs have established that SB 1363 is viewpoint discriminatory both because "it distinguishes between types of speech or speakers based on the viewpoint expressed," and because it was "motivated by the desire to suppress a particular viewpoint," *Moss v. U.S. Secret Serv.*, 675 F.3d 1213, 1224 (9th Cir. 2012). *See* Pl. MSJ at 2-7.[1]

---

[1] Defendants do not dispute plaintiffs' analysis of SB 1363's legislative history, arguing only that it is not relevant.  Def. Resp. to Pl. Statement of Facts (Doc. 175).  But a statute motivated by the desire to suppress a particular viewpoint or content is discriminatory, and courts may discern legislative purpose from both direct and circumstantial evidence, including legislative history and contemporaneous statements by members of the decisionmaking body.  *See, e.g.*, *Arlington Heights v. Metropolitan Housing Development Corp.*, 429 U.S. 252, 266-68 (1977); *Personnel Administrator v. Feeney*, 442 U.S. 256, 279, n. 24 (1979).

1

**A.   SB 1363 Discriminates Based On Viewpoint, Content, And Speaker Identity**

1.   SB 1363's trespassory assembly provision is viewpoint discriminatory because it applies heightened criminal and civil sanctions to "a labor organization or individual or group that acts on behalf of employees," but to no other group, that trespasses while exercising its right of assembly, A.R.S. §23-1328.  Defendants argue that SB 1363 prohibits all persons, not just labor and other employee advocates, from engaging in trespassory assembly, Def. Opp. at 7, but ignore that §23-1328 explicitly states:  "A labor organization or individual or group that acts on behalf of employees shall not engage in trespassory assembly."  There would be no reason for the Legislature to include this specific prohibition if SB 1363 prohibited *all* persons from engaging in trespassory assembly.[2]  The narrowly focused §23-1328 is the operative substantive prohibition, as confirmed by A.R.S. §23-1324(B), which specifies the criminal liability faced by "a person who violates section . . . *23-1328* at a property listed on the no trespass public notice list."  (Emphasis added.)

In any event, defendants admit that SB 1363 singles out labor organizations and others advocating on behalf of employees for harsher criminal penalties under §23-1324(B).  Def. Opp. at 7.  That, too, is viewpoint discrimination, because a statute may not "single[] out certain speech within [a] category for special opprobrium based on the speaker's viewpoint."  *Chaker v. Crogan*, 428 F.3d 1215, 1227 (9th Cir. 2005).[3]

As plaintiffs have explained, it makes no difference that Arizona law generally prohibits trespass. Pl. MSJ at 17. "[R]egulations more protective than existing law . . . cannot be insulated from First Amendment challenge . . . based on the argument that they

---

[2] Defendants acknowledge that many groups other than labor unions trespass while exercising the right of assembly.  *See, e.g.*, Def. Opp. at 20, citing *Radich v. Goode*, 866 F.2d 1391 (3d Cir. 1990) (antiabortion protestors); *Fiesta Mall Venture v. Mecham Recall Committee*, 159 Ariz. 371 (1988) (petition signature gatherers).

[3] Defendants argue that SB 1363's trespassory assembly prohibition is a valid time, place, and manner restriction, Def. Opp. at 6, 16, but this argument fails because it is not viewpoint- and content-neutral.  *See, e.g.*, *Comite de Jornaleros de Redondo Beach v. City of Redondo Beach*, 657 F.3d 936, 947 (9th Cir. 2011).  All of the time/place/manner cases on which defendants rely involved content-neutral restrictions.  Def. Opp. at 5-6.

2

1   do no more than prohibit conduct that is already unlawful." *Saxe v. State Coll. Area Sch.*

2   *Dist.*, 240 F.3d 200, 210 (3d Cir. 2001).[4]

3       Even if SB 1363 did not impose harsher penalties on labor organizations and other

4   employee advocates, it still impermissibly punishes those who trespass while exercising

5   their First Amendment right of assembly more harshly than others. *See* A.R.S. §23-1324;

6   Pl. MSJ at 16 & n.8. There is no legitimate state interest in punishing trespass more harshly

7   only because it involves the exercise of First Amendment rights.[5]

8       2. Defendants admit that SB 1363's defamation provision, §23-1325, applies only to

9   false speech that is critical of *employers* – not of employees. Def. Opp. at 8-9. As such, it

10  is viewpoint- and content-discriminatory. Pl. MSJ at 4-5. Defendants point out that

11  employees and union officials can sue for defamation, but admit that SB 1363 provides

12  employers with "additional remedies," including criminal penalties, punitive damages, and

13  *ex parte* injunctions. Def. Opp. at 9. SB 1363 therefore unconstitutionally singles out

14  speech in an unprotected category based on viewpoint. *Chaker*, 428 F.3d at 1227. Because

15  SB 1363 imposes harsher sanctions for defamation based on the content and viewpoint of

16  the message expressed, it is invalid. *Id. See also R.A.V.*, 505 U.S. at 384 ("[T]he

17  government may proscribe libel; but it may not make the further content discrimination of

18  proscribing *only* libel critical of the government.") (emphasis in original); Pl. MSJ at 18.[6]

19

20  _____

[4] Defendants seem to contend that a regulation of expressive activity cannot be viewpoint

21  discriminatory. *See, e.g.*, Def. Opp. at 6. But the Supreme Court has "long held . . . that nonverbal expressive activity can be banned because of the action it entails, but not because

22  of the ideas it expresses." *R.A.V. v. St. Paul*, 505 U.S. 377, 385 (1992).

[5] Defendants incorrectly assert that SB 1363's trespassory assembly provision "does not in

23  any way restrict political speech or limit expressive activities on public property." Def.

24  Opp. at 16. As plaintiffs have explained, Pl. MSJ at 16, SB 1363 incorporates by reference Arizona's generally applicable criminal trespass statutes, which the Arizona Supreme Court

25  has held apply to public property, *State v. Barr*, 183 Ariz. 434 (App. 1995).

[6] Defendants also mischaracterize SB 1363 as prohibiting only defamation made

26  "maliciously." Def. Opp. at 17. Although §23-1325 defines "defamation of an employer"

27  as "maliciously making a false statement about the employer," it also expands the definition of "malice" in *New York Times Co. v. Sullivan*, 376 U.S. 254, 279-80 (1964), to include

28  "negligent[] disregard[]" of falsity. SB 1363 Sec. 8 (A.R.S. §23-1325(A)(2)).

3.  Defendants assert that SB 1363's no-trespass public notice list provision, §23-1326, "draws no distinctions between what is said or who may speak."  Def. Opp. at 9.  But the express language provides that:

> the responding peace officer may not require the employer to provide any further documentation to establish the employer's property rights before requiring *any labor organization or individual or group of individuals acting on employees' behalf* that are engaged in unlawful picketing, trespassory assembly or mass picketing to leave . . . .

§23-1326(F) (emphasis added).  This language discriminates on its face on the basis of viewpoint, content, and speaker identity.  *See* Pl. MSJ at 4-5.

4.  SB 1363's secondary boycott provision, §23-1321(4), prohibits boycotting one entity because another entity "uses goods, materials or services considered objectionable by a labor organization," which is viewpoint discrimination.  Pl. MSJ at 5.  Defendants make the circular argument that this prohibition is neutral because "a secondary boycott is an activity that by definition involves a labor organization."  Def. Opp. at 10.  But labor organizations are not the only type of organization that engage in "secondary boycotts." For example, the National Organization for Women organized a boycott of convention businesses in states that had not ratified the equal rights amendment, and that secondary boycott was protected by the First Amendment, notwithstanding its disruption of business. *State of Mo. v. Nat'l Org. for Women, Inc.*, 620 F.2d 1301, 1312, 1319 (8th Cir. 1980).

5.  Defendants also make the circular argument that SB 1363's picketing restrictions do not facially discriminate against labor organizations – even though those restrictions explicitly apply only to labor organizations – because only "labor organizations engage in labor picketing."  Def. Opp. at 11.  By this logic, the state could restrict "civil rights picketing" by "civil rights organizations," or "anti-abortion picketing" by "anti-abortion organizations."  Such discriminatory picketing restrictions are invalid.  Pl. MSJ at 5-6.

Defendants respond that SB 1363 restricts only "unlawful picketing, i.e., picketing contrary to valid public policies or for illegal purposes."  Def. Opp. at 11.  This is not what the statute says.  The Arizona Supreme Court has authoritatively construed §23-1322(A) as prohibiting "a union having less than a majority . . . from all peaceful picketing" "under all

4

circumstances, and *regardless of purpose*," and for that reason, it is unconstitutionally overbroad.  *Baldwin v. Arizona Flame Restaurant, Inc.*, 82 Ariz. 385, 391 (1957) (emphasis added).  Further, §23-1322(B) restricts picketing for purposes that are constitutionally protected.  Pl. MSJ at 23.  SB 1363 is not limited to coercion; it also prohibits picketing for the purpose of "induc[ing]" others to join a union, and the freedoms of speech and association protect a union's right to persuade others to join it.  *Id.*

6.  Other evidence of SB 1363's discriminatory objective includes that the speech and assembly restrictions are codified in Title 23, "Labor"; Chapter 8, "Labor Relations"; and Article 2, "Picketing and Secondary Boycotts."  Pl. MSJ at 6.  Defendants assert that the "headings" and agency liability provisions, which single out labor, do not discriminate because headings do not "regulate anything."  Def. Opp. at 12.  That misses the point.  These portions of SB 1363 show an anti-labor objective, *see* Pl. MSJ at 6, which defendants acknowledge.  *See, e.g.*, Def. MSJ (Doc. 165) at 19 (SB 1363 "constitutes a comprehensive scheme intended to minimize or prevent violence in the workplace and excessive disruption of business activities *as a result of labor demonstrations*") (emphasis added).

To the extent defendants suggest that a neutrally worded provision may never be deemed viewpoint- or content-discriminatory, Def. Opp. at 6, they are wrong.  *See* Pl. MSJ at 2-3; *Sorrell v. IMS Health Inc.*, 131 S. Ct. 2653, 2664 (2011) ("A government bent on frustrating an impending demonstration might pass a law demanding two years' notice before the issuance of parade permits.  Even if the hypothetical measure on its face appeared neutral as to content and speaker, its purpose to suppress speech and its unjustified burdens on expression would render it unconstitutional.").  Indeed, defendants' own cases confirm that "a regulation neutral on its face may be content based if its manifest purpose is to regulate speech because of the message it conveys."  *Turner Broadcasting System, Inc. v. FCC*, 512 U.S. 622, 645 (1994).  *See also Hoye v. City of Oakland*, 653 F.3d 835, 845-46 & n.8 (9th Cir. 2011) (facially neutral statute could impermissibly "incorporate

1  a subtle, content-based standard").[7]

2  **B.  SB 1363 Is Not Justified By Interests Unrelated To Suppressing Expression**

3  Defendants make no attempt to meet their burden of establishing that SB 1363's

4  facially discriminatory restrictions are narrowly tailored.  Instead, they argue that SB 1363

5  is neutral, even though it is facially discriminatory, because "it can be justified by interests

6  unrelated to the suppression of free expression."  Def. Opp. at 5, 9, 11.  Defendants argue

7  that SB 1363 is justified by interests such as preventing violence and protecting private

8  property.  But "mere assertion of a content-neutral purpose [will not] be enough to save a

9  law which, on its face, discriminates based on content."  *Turner Broad. Sys*, 512 U.S. at

10  642-43.  Rather, the state bears the burden of proving it had a neutral and compelling

11  justification "for its *selective* ban."  *City of Cincinnati v. Discovery Network, Inc.*, 507 U.S.

12  410, 429-30 (1993) (emphasis added).

13  Defendants cite statements taken out of context from cases that quote *City of Renton*

14  *v. Playtime Theaters, Inc.*, 475 U.S. 41, 48 (1986).  In *Renton*, a city ordinance imposed

15  zoning regulations on adult movie theaters.  *Id.* at 43.  Although the ordinance treated adult

16  movie theaters "differently from other kinds of theaters," and thus did not fall neatly into

17  the "content-neutral" category, the Court upheld the zoning ordinance because it was

18  "justified" not by an interest in suppressing adult films, but by the city's concern for the

19  "secondary effects" of such theaters on the surrounding neighborhoods.  *Id.* at 47-49.

20  Defendants' reliance *Renton* is misplaced for several reasons.  First, *Renton* applies

21  only if the statute is aimed at *secondary* effects.  *See, e.g.*, *Forsyth County, Ga. v.*

22  *Nationalist Movement*, 505 U.S. 123, 134 (1992).  SB 1363 addresses direct effects of

23  protests not non-speech effects.  Second, defendants do not cite any case holding that

24  *Renton's* secondary effects doctrine applies to statutes that facially discriminate on the basis

25  of viewpoint, as opposed to content.  Third, *Renton* did not hold that a facially content- or

26  _____

27  [7] SB 1363's facially discriminatory provisions are viewpoint- or content-based, regardless of the Legislature's motive.  *A.C.L.U. of Nevada v. City of Las Vegas*, 466 F.3d 784, 793

28  (9th Cir. 2006).

1   speaker-based statute is neutral whenever the statute serves a neutral interest.  Rather, it

2   held that the zoning ordinance was neutral, even though it treated adult movie theaters

3   differently, because the *distinction* it drew between adult and other movie theaters was

4   justified by differences in the secondary effects that happened to be associated with adult

5   movie theaters and not other theaters.  *Renton*, 475 U.S. at 47-49.

6       In *Discovery Network*, the Supreme Court rejected defendant's argument that a

7   city's facially content-based ordinance, which limited only *commercial* newsracks, was

8   neutral because it was "justified" by neutral interests.  507 U.S. at 425-29.  The Court

9   "agree[d] with the city that its desire to limit the total number of newsracks [wa]s 'justified'

10  by its interests in safety and esthetics," but this was not sufficient, because the city "ha[d]

11  not . . . limited the number of newsracks" generally, but instead, "it ha[d] limited (to zero)

12  the number of newsracks distributing *commercial publications*."  *Id.* at 429 (emphasis

13  added).  Unlike in *Renton*, "there [we]re no secondary effects attributable to [the

14  commercial] publishers' newsracks *that distinguish[ed] them* from the newsracks [the city]

15  permit[ted] to remain on its sidewalks."  *Id.* at 430 (emphasis added).  Thus, "the city's

16  newsrack policy [wa]s neither content neutral nor . . . 'narrowly tailored.'"  *Id.*  Here, too,

17  defendants have failed to establish that SB 1363's viewpoint- and content-based

18  distinctions are justified by neutral interests.  For example, although a generally applicable

19  restriction on trespass might be justified by an interest in protecting property rights, a

20  restriction against trespassory assembly that applies only to labor organizations is not.

21  There is no evidence that trespassory assembly by labor organizations is associated with

22  secondary effects that distinguish trespassory assembly by others.

23      **C.  SB 1363 Restricts Speech, Assembly, And Other Expressive Activity**

24      Defendants attempt to avoid application of First Amendment principles by

25  characterizing SB 1363 as a regulation of "conduct" that merely "incidentally" burdens

26  speech.  *See, e.g.*, Def. Opp. at 5-6, 21.  They concede, however, that some of SB 1363's

27  provisions do regulate "speech."  *See, e.g.*, *id.* at 8, 14.

28      Defendants argue that SB 1363's secondary boycott provisions restrict only

7

1   "conduct" because §23-1322(b) "addresses itself to 'an act, combination, or agreement."

2   *Id.* at 21.  "Act," however, is a broad term that unquestionably reaches the acts of speaking,

3   writing an article, posting a comment on the internet, passing out a leaflet, or holding a

4   sign. *See, e.g.*, *Comite*, 657 F.3d at 946.  Moreover, defendants acknowledge that the

5   secondary boycott restriction "applies to expressive activities, such as picketing."  Def.

6   Opp. at 21.  Because SB 1363 restricts picketing and assembly, which is "patently

7   expressive or communicative conduct," *Roulette v. City of Seattle*, 97 F.3d 300, 303 (9th

8   Cir. 1996) (quotation omitted), SB 1363 cannot be said to have only an "incidental" impact

9   on expression.  *See Chase v. Davelaar*, 645 F.2d 735, 739-40 (9th Cir. 1981).  SB 1363 also

10  "imposes more than an incidental burden on protected expression" because it regulates

11  expressive activity on the basis of content or speaker identity.  *Sorrell*, 131 S. Ct. at 2665.

12  **II.  SB 1363 Is Also Overbroad And Vague**

13      The Supreme Court held in *Thornhill v. Alabama*, 310 U.S. 88, 102 (1940), that

14  "[l]abor relations are not matters of mere local or private concern" and that "the

15  dissemination of information concerning the facts of a labor dispute must be regarded as

16  within that area of free discussion that is guaranteed by the Constitution."  Defendants

17  preface their responses to plaintiffs' overbreadth and vagueness claims by asserting that

18  "the Supreme Court significantly qualified [this] statement" in later cases and "that

19  expressive activities in the labor context enjoy" less than "full protection of the First

20  Amendment."  Def. Opp. at 12.  But that assertion grossly misrepresents the case law.

21      All of the cases defendants cite involved injunctions against picketing.  None

22  involved a First Amendment challenge to statutory restrictions.  And none categorically

23  limited the First Amendment protections accorded to labor speech and expressive activity.

24      Indeed, in *Milk Wagon Drivers Union of Chicago, Local 753 v. Meadowmoor*

25  *Dairies*, 312 U.S. 287 (1941), the Court expressly reaffirmed *Thornhill*, explaining that a

26  case addressing only the validity of an injunction "arising out of a particular controversy

27  and adjusted to it, raises totally different constitutional problems from those that would be

28  presented by an abstract statute with an overhanging and undefined threat to free

8

1  utterance," 312 U.S. at 292, like SB 1363.  "We do not qualify the *Thornhill* and *Carlson*

2  decisions.  We reaffirm them."  *Id.* at 297.  More recently, the Supreme Court rejected the

3  argument that the First Amendment affords lesser protection to union speech in *Edward J.*

4  *DeBartolo Corp. v. Florida Gulf Coast Bldg. & Const. Trades Council*, 485 U.S. 568, 576

5  (1988).  Thus, defendants' assertion that "expressive activities in the labor context"

6  *categorically* enjoy less First Amendment protection than expressive activities in other

7  contexts is both unfounded and offensive to the First Amendment.  *See also* Pl. MSJ at 5.

8  　　　2.  Defendants also suggest that plaintiffs must present more facts to establish SB

9  1363's overbreadth.  *See, e.g.*, Def. Opp. at 13.  This is incorrect.  "The party challenging

10  the law need not necessarily introduce admissible evidence of overbreadth."  *Comite*, 657

11  F.3d at 944.  Rather, it must "describe the instances of arguable overbreadth of the

12  contested law."  *Id.* (quotation omitted).  Plaintiffs have done so.  Pl. MSJ at 8-27.

13  　　　3.  Plaintiffs have established that SB 1363's "unlawful mass assembly" provision,

14  A.R.S. §23-1327, is overbroad and vague, Pl. MSJ at 8-15.  In response, defendants

15  contend that the speech restrictions in §23-1327(a)(1) and §23-1327(a)(4) are not overbroad

16  because §23-1327 as a whole "primarily regulates conduct," and the breadth of its speech

17  restrictions cannot be "substantial" when measured against the breadth of §23-1327 in its

18  entirety.  Def. Opp. at 14.  But when a particular clause of a statute is challenged, courts

19  measure the substantiality of its overbreadth by comparison to that clause's legitimate

20  reach, not to the reach of the statute as a whole.  *See, e.g.*, *Wurtz v. Risley*, 719 F.2d 1438,

21  1439-42 (9th Cir. 1983).

22  　　　Defendants also contend the restrictions against "threats" in §23-1327(a)(1) and §23-

23  1327(a)(4) are not overbroad because "threats may be proscribed."  Def. Opp. at 14.  That

24  contention ignores the cases plaintiffs cited, including *Wurtz*, 719 F.2d 1438, where the

25  Ninth Circuit struck down as overbroad a law that prohibited a threat to "commit any

26  criminal offense."  Pl. MSJ at 10-11.  Moreover, defendants' own cases are easily

27  distinguished.  *Schenck v. Pro-Choice Network*, 519 U.S. 357 (1997), and *Madsen v.*

28  *Women's Health Ctr.*, 512 U.S. 753 (1994), address only case-specific injunctions.  The

1    quoted dicta from *R.A.V.* refers only to "threats of violence," 505 U.S. at 388, not threats

2    generally.  The statute at issue in *Watts v. United States*, 394 U.S. 705 (1969), prohibited

3    only a "knowing[] and willful[]" threat "to take the life of or to inflict bodily harm upon the

4    President." *Id.*  Similarly, the statute at issue in *Melugin v. Hames*, 38 F.3d 1478 (9th Cir.

5    1994), on its face prohibited only "threaten[ing] anyone *with intent* to" interfere with

6    official proceedings, *id.* at 1483 (emphasis added), and was construed by state court as

7    "criminalizing only true threats involving threats of death or physical injury.'" *Id.* at 1485.

8         Defendants attempt to make §23-1327(a)(4) appear more narrow by quoting only the

9    first clause, which prohibits using "language or words threatening to do harm to a person."

10   Def. Opp. at 14.  But that provision also prohibits "language or words threatening to do

11   harm to . . . the person's real or intangible property or designed to incite fear in any person

12   attempting to enter or leave any property," which renders it overbroad.  Pl. MSJ at 13.

13        Defendants ask this Court to construe §23-1327(a)(1) and §23-1327(a)(4) "to mean

14   true threats, i.e., statements where the speaker means to communicate a serious expression

15   of intent to commit an act of unlawful violence to a particular individual or group."  Def.

16   Opp. at 14.  To limit SB 1363's reach to threats of "unlawful violence," this Court would

17   have to add words to a state statute, which a federal court may not do.  *Boos v. Barry*, 485

18   U.S. 312, 330 (1988).  *See also State v. Steiger*, 162 Ariz. 138, 146 (1989) (court may not

19   narrow a statute by "introducing words of limitation").  To limit SB 1363 to "true threats,"

20   this Court would have to add an intent requirement, contrary to Arizona law.  A.R.S. §13-

21   202(B).  Because the proposed narrowing construction is contrary to the statute's language,

22   it should be rejected.  *See, e.g.*, *Comite*, 657 F.3d at 945-46 (rejecting proposed narrowing

23   construction);.

24        Regarding §23-1327(a)(3), which prohibits a person from "obstruct[ing] or

25   interfer[ing] with the free and uninterrupted use of public roads, streets, highways,

26   railways, airports or other means of travel or conveyance," defendants argue only that its

27   "legitimate sweep" is "obvious," and that "it is difficult to see how it would suppress any

28   protected speech."  Def. Opp. at 15.  Defendants, however, do not dispute that virtually

every parade in the street to some extent interferes with the free and uninterrupted use of the street.  Further, because §23-1327(A)(3) has no *mens rea* requirement, persons engaged in expressive activity risk violating the statute even if they have no intent to interfere.

Defendants argue that none of §23-1327's terms are vague, because they are common terms, and "their meaning is sufficiently clear from the context in which they are used," citing *Grayned v. City of Rockford*, 408 U.S. 104, 108 (1972).  Def. Opp. at 15. Context can only give meaning to a vague term where it is sufficiently specific and distinct, such that "the special nature of a particular place or time" imposes limits.  *Leonardson v. City of E. Lansing*, 896 F.2d 190, 199 (6th Cir. 1990).  Although defendants are correct that SB 1363 is aimed at speech and assembly in the "context of labor relations" (Def. MSJ at 18), that context provides no defining attributes that could provide clarity as to what manner of speech and assembly is or is not prohibited by SB 1363.  Even where SB 1363's restrictions apply only to workplaces, that so-called "context" fails to provide any discernible limits because workplaces are so varied in nature.[8]

Defendants do not dispute that §23-1327(A)(1) is overbroad insofar as it restricts "mass assembly" (Pl. MSJ at 9-10); that §23-1327(A)(3) is not a valid time, place, or manner regulation (*id.* at 12); that §23-1327(A)(4) is overbroad and impinges on the right to petition because it restricts threats to "intangible property" (*id.* at 12-13); and that §23-1327(A)(4) is overbroad and vague because it also restricts any speech designed to "incite fear" (*id.* at 13-14).

4.  Defendants' arguments disputing the overbreadth of the "defamation of employer" provision, §23-1325, also lack merit.  Def. Opp. at 17-18.  First, defendants incorrectly assert that §23-1325's standard of fault is "actual malice."  *See supra* at 3 n.6.

Second, although defendants acknowledge that SB 1363 reaches public employers

---

[8] Defendants also contend that §23-1327(B) "makes it clear that, with respect to government property, the statute implements the First Amendment," Def. Opp. at 15, but they do not explain how it does so, or address plaintiffs' showing that this provision is too vague to cure §23-1327(A)'s vagueness and overbreadth.  *See* Pltfs' MSJ at 14-15.

1  and matters of public concern, and imposes special remedies including punitive damages

2  and criminal sanctions, they argue that SB 1363 is nonetheless not overbroad because "the

3  statute . . . entrusts courts to apply the correct legal standards." Def. Opp. at 17-18. The

4  Legislature may not enact a broad statute and leave it to the courts to narrow, especially

5  where, as here, the statute imposes criminal sanctions. *See* Pl. MSJ at 15.

6      Defendants concede that §23-1325 applies to public employers and authorizes

7  criminal sanctions, but argue these features do not make §23-1325 overbroad because, in

8  defendants' view, defamation suits by public officers and criminal prosecutions for

9  defamation are unlikely. Def. Opp. at 17-18. Defendants, however, provide no basis for

10  their assumption, and such scenarios are "not unduly hypothetical." *Wurtz*, 719 F.2d at

11  1442. *See, e.g.*, *New York Times*, 376 U.S. at 279-80 (defamation suit by public official).

12      5. Regarding SB 1363's concerted interference provision, §23-1321(1), defendants

13  do not dispute that it incorporates SB 1363's prohibitions on mass assembly, trespassory

14  assembly, and defamation of an employer, and is therefore unconstitutional for the same

15  reasons those other prohibitions are unconstitutional. Pl. MSJ at 20.

16      Section 23-1321(1) is also overbroad and vague because it regulates "threats of

17  unlawful activity," "destruction of intangible property," and uses the vague term "improper

18  purpose." Pl. MSJ at 20-21. Defendants argue that "'threats of unlawful activity' should

19  be construed as true threats," Def. Opp. at 19, but this narrowing construction is not

20  supported by the statutory language. *Supra*, at 10. Defendants also assert that the term

21  "improper purpose" is "commonly used and understood," Def. Opp. at 19, but fail to

22  address the authority holding comparable terms impermissibly vague. *See* Pl. MSJ at 21.

23      6. Defendants also fail to address plaintiffs' showing that SB 1363's "unlawful

24  picketing" provisions, §23-1322(A)-(B), are overbroad. Defendants argue that there is no

25  right to picket on private property, and that picketing for an unlawful objective may be

26  restricted. Def. Opp. at 20. But nothing limits §23-1322's restrictions to picketing by "a

27  labor organization" on private, as opposed to public, property. And, as discussed above,

28  §23-1322 restricts picketing for lawful purposes. *Supra*, at 4-5.

1    Defendants also assert that §23-1322 "does not . . . restrict picketing in connection

2    with a labor dispute." Def. Opp. at 20.  Defendants do not explain this interpretation,

3    which is contrary to the statute's plain language that on its face applies only to "a labor

4    organization." Defendants also ignore the Arizona Supreme Court's authoritative

5    construction of §23-1322(A) in *Baldwin*:  "The plain wording of section [23-1322(A)]

6    requires as a conditions precedent to a labor organization picketing the establishment of any

7    employer that there exists a bona fide dispute between such employer and a majority of his

8    employees." 82 Ariz. at 391.  Thus, any "picketing in connection with a labor dispute" that

9    does not involve a majority of the employer's employees is restricted.

10    7.  Defendants do not meaningfully dispute the breadth of SB 1363's secondary

11    boycott provision, §23-1321(4).  *See* Pl. MSJ at 25-27.  They assert that it is directed only

12    at "certain forms of conduct," Def. Opp. at 21, but that argument is both incorrect and

13    beside the point, because the First Amendment protects expressive conduct such as

14    picketing, assembly, and handbilling.  *Supra*, at 8.

15    Defendants wrongly claim that "[t]he Supreme Court has . . . concluded that

16    secondary boycott activities are not protected by the First Amendment." Def. Opp. at 21.

17    There is no such case.  Moreover, the Court has never held that the First Amendment

18    permits a statute that broadly bans all speech and expressive activity related to secondary

19    boycotts – much less one that, like SB 1363, prohibits any act that "directly or indirectly

20    causes, induces or compels another" to engage in a secondary boycott, regardless of

21    purpose or intent, *and* is viewpoint discriminatory.  *See* Pl. MSJ at 25-27.

22    Defendants' reliance on cases applying the NLRA's secondary boycott provision, 29

23    U.S.C. §158(b)(4) ("NLRA §8(b)(4)"), is also misplaced because that provision differs

24    from §23-1321(4) in several significant respects.  First, unlike SB 1363, federal labor law

25    does not prohibit labor organizations from engaging in secondary boycotts altogether, but

26    instead narrowly limits certain kinds of conduct, namely strikes and coercion.  *See, e.g.*,

27    *Local 20, Teamsters, Chauffeurs and Helpers Union v. Morton*, 377 U.S. 252, 259 (1964)

28    ("[A] union is free to approach an employer to persuade him to engage in a boycott, so long

13

as it refrains from the specifically prohibited means of coercion . . . ."); *NLRB v. Servette, Inc.*, 377 U.S. 46 (1964) (union may engage in handbilling in support of secondary boycotts, and threats to engage in such handbilling, because such activity is protected).

Second, defendants admit that §23-1321(4) expressly and directly restricts secondary "picketing" *per se*, including *non*-coercive, persuasive picketing.  Def. Opp. at 21.  The NLRA does *not* categorically prohibit secondary boycott "picketing" or other expressive activity, but instead prohibits labor organizations from "coerc[ing]" others.  *See* 29 U.S.C. §158(b)(4)(ii); *NLRB v. Fruit and Vegetable Packers and Warehouseman, L. 760*, 377 U.S. 58 (1964) ("*Tree Fruits*"); Pl. MSJ at 24.

Third, federal law authorizes only civil remedies for secondary boycott activity.  29 U.S.C. §187; *Local 20*, 377 U.S. at 260.  In contrast, SB 1363 imposes criminal sanctions. *See* A.R.S. §23-1324.  This requires stricter scrutiny.  *See* Pl. MSJ at 9.

Fourth, SB 1363's secondary boycott provisions are part of a discriminatory and unbalanced scheme that broadly restricts the First Amendment rights of labor organizations without protections for their freedom of expression or restrictions on employers' conduct. Pl. MSJ at 2-7.  In contrast, the NLRA's comprehensive labor relations scheme regulates *both* employers and labor organizations, *see, e.g.*, 29 U.S.C. §158(a), and strikes a "delicate balance between union freedom of expression and the ability of neutral employers, employees, and consumers to remain free from coerced participation in industrial strife." *NAACP v. Claiborne Hardware Co.*, 458 U.S. 886, 912 (1982) (quotation omitted). Indeed, the Supreme Court has narrowly construed the NLRA's secondary boycott provision, and refused to hold it prohibits secondary handbilling or non-coercive picketing, precisely because to construe it more broadly would "raise serious constitutional problems."  *DeBartolo*, 485 U.S. at 575-77; *Tree Fruits*, 377 U.S. at 63.[9]

_____

[9] None of defendants' cases uphold a law like SB 1363 that broadly bans, not only coercive picketing, but *all* speech and expressive activity that could even indirectly cause or induce a labor-related secondary boycott.  *See* Def. Opp. at 21.

### III.  SB 1363's Remedies Also Violate The First Amendment And Due Process

1.  Defendants contend that SB 1363 does not impermissibly authorize unconstitutional prior restraints because it "mostly regulates conduct."  Def. Opp. at 25. This argument is both wrong, *supra*, at 7-8, and beside the point, because defendants acknowledge that SB 1363 regulates *expressive* conduct, and that an injunction against such conduct "warrants scrutiny under the First Amendment."  Def. Opp. at 26.  *See, e.g.*, *Madsen*, 512 U.S. 753.  Because SB 1363 authorizes issuance of injunctions against speech and expressive activity, it must set forth a constitutionally permissible standard and provide procedural safeguards to prevent invalid prior restraints.  *See* Pl. MSJ at 30-31.[10]

Defendants assert that SB 1363 requires a party seeking a restraining order to attempt notice and the state court to so find.  Def. Opp. at 27.  But SB 1363 provides that notice requirements under "Rules 65(a)(1) and 65(e) of the Arizona rules of civil procedure do not apply," and no notice is required if a court finds "reasons supporting the plaintiff's claim that notice should not be given."  §§12-1809(e), 12-1810(e).  Defendants also assert that SB 1363 "require[s] that a hearing be held within ten days after the [enjoined party] requests."  Def. Opp. at 27.  Actually, SB 1363 provides that a court may delay a hearing for "compelling reasons."  §§12-1809(H), 12-1810(G).  Even if a hearing must be held in ten days, "there is no provision for a prompt *decision*."  *Grove Press Inc. v. City of Philadelphia*, 418 F.2d 82, 91 (3d Cir. 1969) (emphasis added).

2.  Defendants argue that SB 1363's no-trespass public notice list provision, §23-1326, does not violate due process because there is no First Amendment right to assemble on private property, and therefore no protected interest at stake.  Def. Opp. at 29. Defendants' argument, however, assumes that an unlawful trespass *is* occurring whenever an employer *alleges* that it is occurring.  *See* Def. Opp. at 29.  This assumption is unfounded.  *See* Pl. MSJ at 31-33.

---

[10] Defendants' cases only address the validity of case-specific injunctions, not the validity of a statute that authorizes ex parte injunctions against expression.  *See* Def. Opp. at 26.

1        3.  Defendants admit that SB 1363's prohibition against "publicizing enjoined

2    picketing or assembly," §23-1329, is "content-based."  Def. Opp. at 30.  But they make no

3    effort to establish that this content-based speech restriction is narrowly tailored to a

4    compelling state interest.  Nor could defendants do so, because this restriction is

5    unnecessary:  as defendants note, a court that enjoins assembly because it is unlawful may

6    also enjoin "publicizing" that assembly, if such speech is "integral" to the illegal conduct.

7    Plaintiffs do not dispute that speech integral to unlawful conduct may be restricted, but it

8    does not follow that a *statute* may *automatically* tack on to every injunction against

9    assembly a restriction against speech about said assembly.  Speech cannot be enjoined

10   unless it is necessary to further the injunction's purpose.  *Carroll v. President & Comm'rs*

11   *of Princess Anne*, 393 U.S. 175, 183-84 (1968).

12   **IV.  SB 1363 Is Preempted**

13       Defendants first argue that SB 1363 is not subject to a facial preemption challenge

14   because it may be validly applied to employees not covered by the NLRA.  *See, e.g.*, Def.

15   Opp. at 15, 18, 22, 28, 31.  But inclusion of some non-NLRA employees does not allow a

16   state to regulate matters exclusively covered by the NLRA.  Rather, SB 1363 is preempted

17   in its entirety if it conflicts with the federal scheme.  "*Garmon* preemption prohibits states

18   from regulating fields that Congress intended to occupy fully through the creation of a

19   continuum between conduct that is either protected or prohibited by the NLRA."

20   *Associated Builders and Contractors v. Nunn*, 356 F.3d 979, 987 (9th Cir. 2004) (citing *San*

21   *Diego Bldg. Trades Council v. Garmon*, 359 U.S. 236, 244 (1959)).  *Machinists* preemption

22   prohibits states from regulating in a zone that Congress intended to be "free of regulation

23   by the States."  *Machinists v. Wisconsin Employment Relations Com'n*, 427 U.S. 132, 155

24   (1976).  Where a state statute regulates in a field that Congress has either occupied or

25   intended to be free of all regulation, it "is in direct conflict with [the] federal statute," and it

26   is facially preempted, because "the focus is the act of regulation itself, not the effect of the

27   state regulation in a specific factual situation."  *Green Mountain R.R. Corp. v. Vermont*,

28   404 F.3d 638, 644 (2d Cir. 2005) (quotation omitted).  *See also California Coastal Com'n*

1  *v. Granite Rock Co.*, 480 U.S. 572, 589 (1987) (state law would be facially invalid

2  regardless of how applied if Congress had "occupied the field").

3      Defendants seek refuge in the exception to preemption for state laws involving

4  activity that "touched interests so deeply rooted in local feeling and responsibility that, in

5  the absence of compelling congressional direction, [the Court] could not infer that Congress

6  had deprived the states of the power to act," *Farmer v. United Broth. of Carpenters and*

7  *Joiners of America, Local 25*, 430 U.S. 290, 296-97 (1977).  *See, e.g.*, Def. Opp. at 15, 18,

8  22, 31.  But the claim that this exception applies to any "state regulations enacted under the

9  states' traditional police powers" (*id.* at 15) is unfounded, and would swallow the rule.

10  Defendants cite cases that "have allowed the States to grant compensation for the

11  consequences, as defined by the traditional law of torts, of conduct marked by violence and

12  imminent threats to the public order," *Garmon*, 359 U.S. at 247, (Def. Opp. at 16, 22), but

13  SB 1363 is aimed at labor.  In *Sears, Roebuck & Co. v. San Diego County Dist. Council of*

14  *Carpenters*, the Supreme Court reiterated that *Garmon* preemption "has its greatest force

15  when applied to state laws regulating the relations between employees, their union, and

16  their employer."  436 U.S. 180, 193 (1978).  After *Garmon*, state labor relations statutes are

17  NLRA-preempted unless they deal solely with violence.  359 U.S. at 247-48 & n.6.

18      Defendants also argue that SB 1363's wage withholding provision, §23-352, is not

19  preempted by LMRA §302(c)(4), 29 U.S.C. §186(c)(4).  But Congress has occupied the

20  field of dues deduction agreements.  *SeaPak v. Industrial, Technical and Professional*

21  *Employees*, 300 F.Supp. 1197, 1200-01 (S.D. Ga. 1969), *aff'd*, 423 F.2d 1229 (5th Cir.

22  1970), *aff'd*, 400 U.S. 85 (1971); Pl. MSJ at 28.  Defendants assert that *SeaPak* "is incorrect

23  because Congress and the courts have since recognized that states have authority to regulate

24  activities relating to wages and union dues," but defendants cite only 29 U.S.C. §§411 &

25  413 (Def. Opp. at 23), which were enacted in 1959, *before SeaPak* was decided.  Moreover,

26  those sections do not cast any doubt on *SeaPak*.  Section 411 sets out a union member bill

27  of rights, while §413 provides that nothing in the bill of rights "subchapter" shall limit

28  members "existing rights."  That subchapter does not include §302(c)(4) of the LMRA, 29

1    U.S.C. §186(c)(4), the provision that preempts A.R.S. §23-352(2).

2        Defendants argue that §23-352(2) is not preempted because §302(c)(4) "permits but

3    does not require check-off authorizations that are irrevocable up to one year."  Def. Opp. at

4    23.  Defendants misunderstand the nature of field preemption, which prevents a state from

5    prohibiting that which federal law permits.  *See, e.g.*, *Local 20*, 377 U.S. at 259-60.

6    **V.  SB 1363's Wage Withholding Provision Also Violates The Contract Clause**

7        Defendants do not dispute that §23-352 interferes with union-employee dues

8    checkoff agreements and union-employer collective bargaining agreements.  Def. Opp. at

9    24-25.  They argue that the impairment is not substantial because it is contingent on an

10    employee revoking an authorization, but defendants misunderstand plaintiffs' claim.  By

11    making checkoff agreements revocable at will, SB 1363 negates a form of security on

12    which unions rely to obtain some measure of income stability; regardless of whether an

13    employee actually revokes, unions can no longer count on that security when, for example,

14    setting an annual budget.  Pltfs. MSJ at 28-29; Doc. 162-2 ¶3.  Defendants' suggestion that

15    dues checkoff agreements are contrary to Arizona's right-to-work laws is also without

16    basis: when an employee voluntarily chooses to become a union member, and voluntarily

17    chooses to pay dues through paycheck deduction, she may also voluntarily agree not to

18    revoke her deduction authorization for a specified period, even if she chooses to withdraw

19    from membership in the interim.  State right-to-work laws are "a congressional

20    dispensation of grace," and "Congress did not conceive that checkoff of dues for a limited

21    time after an employee's revocation of authorization therefor would amount to compulsory

22    union membership as interdicted by" such laws.  *SeaPak*, 300 F.Supp. at 1200-01.

23    **VI.  SB 1363 Is An Integrated Scheme That Should Be Enjoined In Its Entirety**

24        SB 1363 is an integrated scheme, and its defects are so pervasive that they cannot be

25    severed.  Pl. MSJ at 34.  For example, all the speech and assembly restrictions are defined

26    as "harassment" and thereby linked to a uniform enforcement scheme.  *See* ARS §§12-

27    1809, 12-1810.  Defendants argue that SB 1363 is "an assortment of twelve statutes" that

28    "address different problems" and "have little to do with each other."  Def. Opp. at 32-33.

1  But defendants themselves recognize that "SB 1363 is a measure that regulates labor and

2  employment," Def. MSJ at 6, and "constitutes a comprehensive scheme," *id.* at 19.  If

3  defendants' new characterization of SB 1363 as twelve unrelated statutes is accurate, the

4  Legislature violated the single-subject rule of Arizona's Constitution (Art. IV, pt. 2, § 13).

5  **VII.  This Case Is Justiciable**

6        This Court has already held that plaintiffs have satisfied the requirements of Article

7  III, and that this case is "ripe for review."  Order Denying Mot. to Dismiss (Doc. 100) at 6

8  ("Dismiss Order").  Defendants do not point to anything new that would change the

9  analysis.  Defendants rehash their argument that there is no credible threat of prosecution.

10  Def. Opp. at 14.  But a credible fear of prosecution exists where, as here, the "intended

11  speech arguably falls within the statute's reach," *Cal. Pro-Life Council, Inc. v. Getman*, 328

12  F.3d 1088, 1095 (9th Cir. 2003), and defendants have not disavowed enforcement.  *Ariz.*

13  *Right to Life PAC v. Bayless*, 320 F.3d 1002, 1006-07 (9th Cir. 2003).  Further, plaintiffs

14  have self-censored in response to SB 1363.  SF 17, 25, 34.

15        Although the secondary boycott ban under A.R.S. § 23-1321 and the picketing ban

16  under A.R.S. § 23-1322(A) pre-date SB 1363, SB 1363 reaffirmed them and created new

17  incentives for enforcement by enhancing criminal penalties and expanding civil remedies

18  for violations of those prohibitions.  *See, e.g.*, A.R.S. §§12-1809(R); 23-1323; 23-1324.

19  These changes greatly increase the threat of enforcement.  That plaintiffs have not been

20  prosecuted under those restrictions *in the past* has no bearing on the credibility of their fear

21  of prosecution now.  *See Rhode Island Ass'n of Realtors, Inc. v. Whitehouse*, 199 F.3d 26,

22  32 (1st Cir. 1999) (finding credible threat of prosecution notwithstanding that "state ha[d]

23  never pursued criminal charges" under 20-year old statute).

24        Defendants' redressability arguments lack merit.  They claim that were the Court to

25  enjoin enforcement of the defamation of employer provision, "the ruling would have no

26  effect because [defendants] have nothing to do with enforcing that provision."  Def. Opp. at

27  3.  But defendants later admit that this provision, like SB 1363's other substantive

28  restrictions, are enforced by criminal sanctions, Def. Opp. at 17-18, and SB 1363

19

1    specifically requires the Attorney General to recover any criminal fines levied.  A.R.S. §23-

2    1324(A)-(C).  In any event, there is standing to sue state officials who contribute to the

3    harm caused by a statute, even if those officials are not the only cause and cannot alone

4    completely redress that harm.  *See, e.g.*, *L.A. County Bar Ass'n v. Eu*, 979 F.2d 697, 701

5    (9th Cir. 1992) (standing because "were this court to rule in [plaintiff's] favor, it is *likely*

6    that the alleged injury would be *to some extent* ameliorated") (emphases added).

7         Plaintiffs need not separately establish standing to bring an overbreadth claim.  *See*

8    Def. Opp. at 13-14.  Where a plaintiff claims "both that its own activity is protected by the

9    first amendment and that the [challenged statute] impermissibly suppresses the speech of"

10   others, "the court can entertain [its] claim without departing from traditional standing

11   concerns."  *NAACP v. City of Richmond*, 743 F.2d 1346, 1352 (9th Cir. 1984).  Plaintiffs

12   need only meet "the threshold standing inquiry," and whether SB 1363 is facially invalid as

13   substantially overbroad is a "determination . . . properly reserved for the merits."  *Id.*

14        This Court has held that the Eleventh Amendment does not prevent the Attorney

15   General and Secretary of State from being named as defendants.  Dismiss Order at 7-8.

16   Defendants point to nothing new.  Also, defendants admit that they have responsibility for

17   enforcing SB 1363.  Def. Opp. at 5.  Defendants argue they do not have a direct connection

18   with SB 1363's private enforcement provisions, but these are merely alternatives to the

19   public enforcement provisions.  They cite no authority stating that an official defendant

20   cannot be sued to prevent him from enforcing an allegedly unconstitutional law if it may

21   also be enforced privately.  Moreover, as this Court has explained, plaintiffs seek a

22   declaratory judgment that SB 1363 is unconstitutional, and "Arizona courts have uniformly

23   held that the Arizona Attorney General is an appropriate party to such cases."  *Yes on Prop*

24   *200 v. Napolitano*, 215 Ariz. 458, 469 (App. 2007).  Dismiss Order at 7.

25                                    **CONCLUSION**

26        For the foregoing reasons, plaintiffs and plaintiff-intervenor SEIU Arizona

27   respectfully request that the Court grant plaintiffs' motion for summary judgment declaring

28   SB 1363 invalid in its entirety and permanently enjoining its enforcement.

1 | Respectfully submitted this 24th day of September, 2012.

2

Andrew J. Kahn AZ. (SBN 15835)
Elizabeth A. Lawrence AZ (SBN 201537)
3

Davis Cowell & Bowe LLP
4

2401 North Central Avenue 2nd Floor
Phoenix, Arizona 85004
5

Telephone: (800) 622-0641
6

ajk@dcbsf.com
*Attorneys for Plaintiffs UFCW Local 99,*
7

*McLaughlin, and Colbath*

8

Gerald Barrett (SBN 005855)
Ward, Keenan & Barrett, P.C.
9

3838 N. Central Avenue, Suite 1720
10

Phoenix, AZ 85012
Telephone: (602) 279-1717
11

gbarrett@wardkeenanbarrett.com
*Attorneys for Plaintiffs UA Local 469,*
12

*McNally, and Rothans*

13

Michael Rubin (*pro hac vice*)
14

Jonathan Weissglass (*pro hac vice*)
Jennifer Sung (SBN 026119)
15

P. Casey Pitts (*pro hac vice*)
Altshuler Berzon LLP
16

177 Post Street, Suite 300
17

San Francisco, CA 94108
Telephone:  (415) 421-7151
18

mrubin@altshulerberzon.com
19

jweissglass@altshulerberzon.com
jsung@altshulerberzon.com
20

cpitts@altshulerberzon.com

21

- and -

22

Stanley Lubin (SBN 003074)
Lubin & Enoch P.C.
23

349 North 4th Avenue
Phoenix, Arizona  85003-1505
24

Telephone:  (602) 234-0008
25

stan@lubinandenoch.com
*Attorneys for SEIU Local 5*
26

27

By__s/ Jennifer Sung_____
            Jennifer Sung

28

21

PLTFS' AND PLTF-INTERVENOR SEIU ARIZONA'S JT. MSJ RE: SB 1363

1

**CERTIFICATE OF SERVICE**

2

I hereby certify that on September 24, 2012, I electronically transmitted the attached

3

document to the Clerk's Office using the CM/ECF System for filing and transmittal of a

4

Notice of Electronic Filing to all CM/ECF registrants.

5

6

7

s/ Erin Flannery
Erin Flannery

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PLTFS' AND PLTF-INTERVENOR SEIU ARIZONA'S JT. MSJ RE: SB 1363