WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United Food & Commercial Workers Local 99; *et al.* | No. CV-11-00921-PHX-GMS |
| Plaintiffs, | **ORDER** |
| -and- | |
| Arizona Education Association, *et al.* | |
| Plaintiff-Intervenors | |
| v. | |
| Ken Bennett, in his capacity as Secretary of the State of Arizona; *et al.* | |
| Defendants. | |

Pending before the Court are: (1) Plaintiffs' and Plaintiff-Intervenors' Motion for Attorneys' Fees and Related Non-Taxable Costs (Doc. 206), and (2) the State Defendants' Motion to Strike Supplemental Evidence and Assertions (Doc. 227). For the reasons stated below the Plaintiffs' and Plaintiff-Intervenors' Motion for Attorneys' Fees and Related Non-Taxable Costs is granted with respect to the various Plaintiffs and Plaintiff-Intervenors in the amounts listed below. The Motion to Strike Supplemental Evidence and Assertions is denied in part and granted in part. The motion to strike is denied, but the alternative motion to file the proposed sur-reply, attached as Exhibit 2 to that motion is granted. The Court did consider it in making this fee award.

## BACKGROUND

Plaintiffs and Plaintiff-Intervenors seek an award of their attorneys' fees pursuant to 42 U.S.C. § 1988(b), which allows this Court in appropriate cases, to award such fees. In 2011, two Arizona bills were signed into law: SB 1363 and SB 1365 (Doc. 8 at 2–3). Generally speaking, SB 1363 is a series of amendments and additions to existing law relating to harassment, trespass, assembly, and picketing in the context of labor relations. SB 1363, 50th Leg., 1st Reg. Sess. (Ariz. 2011). SB 1365 adds a new section to Chapter 2, Title 7 of the Arizona Revised Statutes relating to paycheck deductions. SB 1365, 50th Leg., 1st Reg. Sess. (Ariz. 2011).

On May 9, 2011, Plaintiffs, a group of unions and their officers and members, filed suit for injunctive and declaratory relief (Doc. 8 at 1, 5–6), Plaintiffs challenged both statutes as unconstitutional (*Id.* at 2). Plaintiff-Intervenors, a second group of public sector unions and members who also wished to challenge the two statutes, were granted permission to intervene on June 20, 2011 (Doc. 47).

Plaintiffs and Plaintiff-Intervenors both moved for preliminary injunctions to prevent SB 1365 from going into effect (Docs. 14, 77), and on September 23, 2011, this Court granted Plaintiff-Intervenors' Motion for Preliminary Injunction on the ground that they were likely to succeed on their claim that SB 1365 violated the First Amendment (Doc. 99). The Court further and finally granted a permanent injunction as it pertained to SB 1365 on the grounds that it was pre-empted as it pertained to private sector employees and unions and further enjoined it on the grounds that it was viewpoint discriminatory in violation of the First Amendment (Doc. 192).

## ANALYSIS

The County was not a defendant on Plaintiffs and Intervenors claims related to SB 1365. Nor do Defendants Bennett and Horne contest that Plaintiff-Intervenors are eligible for an award of attorneys' fees in their challenge to the validity of SB 1365. To the extent that Defendants argue, however, that Plaintiffs, as opposed to Plaintiff-Intervenors, are not eligible for an award of attorneys' fees for their challenge to the

validity of SB 1365, the Court is not convinced by that argument, as it simply ignores Plaintiffs' joinder in the argument of the Plaintiff-Intervenors. The Court notes, and does take into account, that Plaintiffs principally made the argument that SB 1365 was pre-empted "in its application to private sector employees and unions." Nevertheless, Plainitffs are non-public unions and union members.  Section 1983 provides a remedy for claims when federal labor law preempts state regulation and when that law was meant to protect "the interests of employees and employers against abridgment by a State." *Livadas v. Bradshaw,* 512 U.S. 107, 133 (1994); *see also Golden State Transit Corp. v. City of Los Angeles,* 493 U.S. 103, 110-11 (1989). That is the case here. *See SeaPAK v. Industrial, Technical and Professional Emp., Division of Nat'l Maritime Union AFL-CIO,* 300 F. Supp. 1197 (S.D. Ga. 1969). As a result, Plaintiffs are entitled as prevailing parties to a fee award under § 1983 for the pre-emption arguments made on behalf of private sector unions.

In arguing for a reduced fee as it relates specifically to the SB 1365 briefing, the Bennett and Horne Defendants note that the discovery period was stayed pending legislative action that might have mooted the case against SB 1365, and resumed when the Legislature took no such action. The case was, for all practical purposes, decided on cross-motions for summary judgment.  Although there was some document discovery in this case, all such discovery occurred between the Parties Plaintiff and the State Defendants; the county was not involved in discovery. Thus, Defendants assert the fees assessed involved only briefing and little to no discovery and this should be reflected in the fees awarded. They also make the arguments for a reduced fee enumerated below as it pertains to a reduced fee award for both SB 1363 and 1365.

As mentioned above, SB 1363 consists of a series of amendments to pre-existing statutes, as well as a few new statutes. The Plaintiffs and Plaintiff-Intervenors SEIU also sought to enjoin the provisions of SB 1363 from going into effect, but did not seek, nor did they receive, a preliminary injunction as to such provisions. The County was joined as a Defendant in this case. Nevertheless, pursuant principally to the briefing undertaken

by SEIU the Court did enjoin a considerable number of aspects of that statute from going into effect as being a violation of the First Amendment to the Constitution or pre-empted by the NLRA or both.

> Plaintiffs have demonstrated that A.R.S. §§ 23-1322, 23-1325, and 23-1329 are unconstitutional on their face. Also unconstitutional are parts of Subsection (A)(4) and all of Subsection (A)(5) of § 23-1327. Plaintiffs have further shown that A.R.S. §23-1321 is unconstitutional insofar as it relies on the unconstitutional parts of § 23-1327 in prohibiting unlawful mass assembly. Section 23-1321 is likewise unconstitutional to the extent that it prohibits action with an improper purpose. Finally, Plaintiffs have shown that § 23-352 and part of § 23-1321 are preempted by the NLRA. Plaintiffs First Amendment Constitutional and federal rights would be damaged if these laws were enforced against them.

Doc. 192 at 61-62.

Plaintiff-Intervenors did not prevail on summary judgment as to all of their claims raised against SB 1363. But, in those claims in which they did not prevail, the Court frequently gave a narrow construction to aspects of the statute, or determined that, while not being subject to a facial challenge given such narrow construction, the statute was still subject to an as-applied challenge that was not appropriate for decision on summary judgment. Accordingly, in most significant aspects, Plaintiff and Plaintiff-Intervenors SEIU are prevailing parties in their claims relating to SB 1363, and that the most significant element of those claims relates to whether the proposed statues resulting from SB 1363 violated the principles of the First Amendment. The Court is aware that Plaintiff-Intervenors SEIU carried the significant burden in the briefing on this topic, and will take that into account in determining a reasonable fee. Further, while there was not a great deal of discovery, the two bills did amend a considerable number of statutes which did require careful analysis in a number of different statutory settings.

The State Defendants further assert that in their request, counsel for Plaintiff - Intervenors SEIU failed to sufficiently comply with the requirements of the local rule in

disclosing their actual rates billed to the client in this case. *See, e.g.*, LRCiv 54.2(d)(2). Counsel for SEIU, Altshuler Berzon, a Bay area law firm, did indicate what their standard billing rate is for commercial non-contingent fee work in the San Francisco Bay area, and further indicated without specifying what it was, that they give SEIU a significant cut in the rates charged for work performed on SEIU's behalf. They also provided the amount billed to and paid by SEIU for services and charges as of the end of August 2013 that, if not fully paid, they expected to be paid for their services in this case. That amount is $185,182.00 in attorneys' fees and another $7,122.42 in costs for a total of $192,304.42. They also provided the amount of the fee they ask the Court to use as a lodestar for their various attorneys, law clerks, and paralegals who worked on the case.

The other attorneys who worked on the case essentially acknowledge that the fees they seek in setting the lodestar amount exceed the fees they actually charged their clients, and they supply the rate they charged their clients so that the Court may evaluate that. They too request fee amounts in excess of the amount they actually charged. In determining a lodestar amount, however, "a reasonable hourly rate is not made by reference to the rates actually charged the prevailing party." *United Steelworkers of America v. Retired Income Plan for Hourly-Rated Employees of ASARCO, Inc.,* 512 F.3d 555, 564 (9th Cir. 2008). Nevertheless the prevailing market rate is determined "in the forum in which the district court sits," *Prison Legal News v. Schwarzenegger,* 608 F.3d 446, 454 (9th Cir. 2010), which in this case is Phoenix, not San Francisco. In calculating a lodestar rate, it is appropriate to take into account the expertise, experience and reputation in the field. After consideration of all the materials set forth by the parties, the Court awards Mr. Rubin and Mr. Barrett a lodestar rate of $400 per hour, Mr. Kahn and Mr. Weissglass a rate of $375 per hour, Mr. Walta, Ms. Sung and Ms. Desai a rate of $285 per hour, Mr. Pitts a rate of $250 per hour, with law clerks being reimbursed at $150 per hour, and paralegals being reimbursed at $100 per hour.

Defendants Horne and Bennett, occasionally with an example, also assert that the case was overstaffed resulting in the billing of excessive, redundant and otherwise

1 unnecessary hours, over-conferencing, top heavy billing, inappropriate block billing and
2 inadequate descriptions provided within the billing.  To the extent that Defendants have
3 noted, and Plaintiff has acknowledged, a clerical error resulting in a 2 hour over-
4 assessment of Roopali Desai, the Court has taken it into account and made an appropriate
5 reduction.  Further, while the Court does see evidence of efforts to coordinate issues and
6 spend time efficiently, it is the Court's determination upon review, that there were
7 instances of excessive time spent in preparing some briefs, some issues were overstaffed
8 and that did result in some excessive consultation and inefficiencies.  The Court accounts
9 for all of those inefficiencies by generally deducting 15% of the time sought from the
10 hours billed by attorneys.  As a result the Court awards a total fee award of $493,804.65
11 with $5,000.00 in costs (reduced to reflect excessive office charges) for a total fee award
12 of $498,804.65.[1]  This amount is awarded against the Bennett and Horne Defendants in
13 their official capacities and, thus, against the agencies for which they are employed.  *See,*
14 *e.g., Hutto v. Finney,* 437 U.S. 678, 690-91 (1978).

15 After further review, the Court determines that, other than their early attempts to
16 be dismissed from this lawsuit the County Defendants had only nominal involvement in
17 this suit.  As a result the Court finds that the County Defendants are only jointly liable for
18 $15,000.00 of the above fee award.  *Jones v. Espy,* 10 F.3d 690, 691-92 (9th Cir. 1993).
19 Pursuant to *Hutto*, the Court awards $15,000.00 of the above fees as against the County
20 Defendants in their official capacity.

21 / / /
22 / / /
23 / / /
24 / / /
25 / / /

---

[1] The Court calculates the amount awarded per attorney as follows:  Rubin $26,990.00, Barrett $98,702.00, Kahn $67,186.13, Weissglass $39,078.75, Walta $80,669.25, Sung $116,013.52, Desai $26,362.50, Pitts, $18,168.75, law clerks, $16,638.75, and paralegals $3,995.00.

- 6 -

**IT IS THEREFORE ORDERED** granting Plaintiffs and Intervening Plaintiffs' attorneys' fees and costs requests as against the State of Arizona in the amount of $498,804.65, and ordering that Maricopa County is jointly liable for $15,000.00 of that amount.

**IT IS FURTHER ORDERED** granting in part and denying in part the State Defendants' Motion to Strike Supplemental Evidence ad Assertions in Plaintiff and Plaintiff-Intervernors' Reply in support of Motion for Attorneys' Fees, or Alternatively, for Leave to File Sur-Reply (Doc. 227). The Clerk of Court is directed to file the Sur-Reply attached as Exhibit 2 to the motion.

Dated this 6th day of March, 2014.

*A. Murray Snow*
G. Murray Snow
United States District Judge